IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:23-cv-81139-DMM

ADAM WERNER,
    Plaintiff,
v.

GORDON & PARTNERS, P.A.,
a Florida professional services corporation,
    Defendant.
_____/

**PLAINTIFF'S OPPOSING MEMORADUM TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND STAY LITIGATION [DE 21]**

Plaintiff, ADAM WERNER ("Werner"), by and through his undersigned counsel, hereby files this opposing memorandum to Defendant's, GORDON & PARTNERS, P.A.'s ("G&P"), Motion to Compel Arbitration and Stay Litigation [DE 21] (the "Motion to Compel"), and, in opposition states as follows:

**I.    SUMMARY OF ARGUMENT**

As an initial matter, notwithstanding the Arbitration Agreement, the Court may impose interim measures, such as the injunction Werner requests, to preserve the *status quo* pending arbitration because failing to do could frustrate the purpose and meaningfulness of the arbitration process. Absent this Court acting to preserve the *status quo,* the matters left for arbitration (i.e., how fees are split) will be the least of the parties' concerns as they determine how to handle any harm suffered by the VA Clients, and, in turn, harm suffered by Werner in the form of damage to reputation, malpractice claims, and possible disciplinary action, including possible loss of accreditation, that stem from G&P continuing to withhold access to the VA Clients' files. Interim relief from this Court is especially necessary considering an arbitrator has not yet been appointed.

Moreover, the Arbitration Agreement does not preclude such interim relief, and, notably, Rule 32 of the AAA Employment Rules[1] specifically state that "[a] request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate . . . ." As such, this Court may proceed with the requested interim relief despite Arbitration Agreement.

Additionally, Werner's claims in this case fall outside the purview of the Employment Agreement and Arbitration Agreement. Werner's claims stem from his attorney-client relationship with the VA Clients under federal law, the ethical duties of the parties to the VA Clients, and the overall public policy of protecting the interests of the VA Clients, each of whom are strangers to the Arbitration Agreement. There is thus not a "substantial relationship" between Werner's claims and the Arbitration Agreement to require granting the Motion to Compel.

Finally, G&P's extensive participation in discovery and litigation over the Injunction Motino has waived its right to have the Injunction Motion arbitrated.

## II. BACKGROUND

1. On August 4, 2023, G&P initiated an AAA Employment Arbitration case by filing a Demand for Arbitration. In the arbitration, G&P asserts its claim "center[s] on how G&P will be compensated for the attorneys' fees and costs G&P already incurred in case [Werner is] taking," which stems from the Employment Agreement between G&P and Werner.

2. As of the date of this filing, an arbitrator has not yet been appointed.

3. On August 11, 2023, Werner filed his Complaint [DE 1] against G&P for declaratory relief and tortious interference. In contrast to the Arbitration Case, Werner's Complaint focuses primarily on Werner's federally-created attorney-client relationship with the VA Clients

---

[1] The pending arbitration is pending in the AAA under the Employment Arbitration Rules.

and the obligations and rights that flow from that relationship, including his ability to comprehensively and timely represent them.

4. On August 14, 2023, Werner filed his Verified Expedited Motion for Preliminary Injunction [DE 8] (the "Injunction Motion") seeking, among other things, a preliminary injunction requiring G&P to restore access to the VA Clients' files housed within G&P's electronic case management system so that Werner, as the federally-recognized attorney for the VA Clients, can timely and comprehensively represent the VA Clients.

5. G&P previously had given such access to Werner and the Affiliated Attorneys after their departure on August 4, but G&P unilaterally terminated that access on August 10 without an adequate temporary solution (only on a case-by-case, immediate need basis), and without any long-term solution.

6. G&P did not file its Motion to Compel until August 24, 2023, after engaging in substantial discovery, including four depositions, multiple requests for production, and exchanges of hundreds of pages of documents.

7. The Court has set an evidentiary hearing for September 6, 2023 on the Injunction Motion, and the Court has directed Werner to respond to the Motion to Compel by September 4.

### III. MEMORANDUM OF LAW AND ARGUMENT

a. **The Court has the authority to grant interim relief, arbitration notwithstanding.**

Even when arbitration is pending, courts retain equity jurisdiction and are empowered to consider requests for injunctive relief in order to preserve the *status quo*. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCullen*, 95-14329-CIV-PAINE, 1995 WL 799537, at *1 (S.D. Fla. Dec. 13, 1995) ("despite such an agreement [to arbitrate], this court is not divested of equity jurisdiction and is empowered to consider requests for injunctive relief in order to preserve the

status quo"); *H20 To Go, L.L.C. v. Martinez*, 05-21353-CIV-LENARD, 2005 WL 2065220, at *3 (S.D. Fla. Aug. 22, 2005) ("In cases where the parties have agreed to arbitrate their dispute, a district court has the authority to issue a preliminary injunction only for the purpose of preserving the *status quo* pending arbitration."); *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986) ("a district court can grant injunctive relief in an arbitrable dispute pending arbitration, provided the prerequisites for injunctive relief are satisfied" because "the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, *ipso facto*, the meaningfulness of the arbitration process"); *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir. 1989) ("we do not construe [an arbitration] agreement as constituting a 'waiver' by either party of the right to seek preliminary injunctive relief necessary to prevent one party from unilaterally eviscerating the significance of the agreed-upon procedures"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055-54 (4th Cir. 1985) ("[W]here a dispute is subject to mandatory arbitration under the Federal Arbitration Act, a district court has the discretion to grant a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute if the enjoined conduct would render that process a "hollow formality." The arbitration process would be a hollow formality where 'the arbitral award when rendered could not return the parties substantially to the *status quo ante*.'").

The Eleventh Circuit likewise recognizes the availability of interim relief, a stay under Section 3 of the FAA notwithstanding. *See Am. Exp. Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (implicitly recognizing authority to enter preliminary injunction); *see also Variable Annuity Life Ins. Co. v. Laferrera*, 680 Fed. Appx. 880, 886 (11th Cir. 2017) (citing *Makarewicz* and *Bradley* with favor in finding that a stay under Section 3 of the FAA does not

preclude entry of a preliminary injunction). Florida's Arbitration Act also expressly recognizes the availability of interim judicial relief.

> Before an arbitrator is appointed and is authorized and able to act, the court, upon motion of a party to an arbitration proceeding and for good cause shown, may enter an order for provisional remedies to protect the effectiveness of the arbitration proceeding to the same extent and under the same conditions as if the controversy were the subject of a civil action.

§ 682.031, Fla. Stat. Ann.

Ultimately, the Court has the authority to enter the relief requested by Werner in his Injunction Motion. The Injunction Motion seeks a preliminary injunction to maintain the *status quo* amongst the parties, to ensure Werner, the VA Clients, and even G&P do not suffer harm as a result of the unique conundrum presented in which Werner, along with the Affiliated Attorneys, is the person authorized to represent the VA Clients, but G&P has the VA Clients' files. As explained in the Injunction Motion, absent restoration of access to the VA Clients' files and G&P ceasing taking action on the VA Clients' matters (including scheduling and rescheduling hearings, and making unauthorized filings under Werner's power of attorney), Werner and the Affiliated Attorneys are unable to properly and timely represent the VA Clients. Absent this Court acting to preserve the *status quo* (that is, giving Werner access to the VA Clients' files and ensuring only Werner is acting as the authorized attorney for the VA Clients), the matters left for arbitration (i.e., how fees are split) will be the least of the parties' concerns as they determine how to handle any harm suffered by the VA Clients, and, in turn, harm suffered by Werner in the form of damage to reputation, malpractice claims, and possible disciplinary action, including possible loss of accreditation.

### b. **The applicable AAA Rules recognize that interim relief from the Court is permitted.**

Where, as here, an arbitration agreement does not bar an application to a court for a preliminary injunction, the rules of the subject arbitration service provide additional guidance as to whether interim relief by a court is available. *See, e.g., Faiveley Transp. Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 116 (2d Cir. 2009). The *Faiveley* court explained as follows:

> We also agree with the District Court that the 1993 Agreement did not bar the plaintiff's application for a preliminary injunction. [The arbitration agreement] provides that disputes arising under the agreement are to be "finally settled" in arbitration, but it does not prohibit resort to appropriate forums for preliminary relief in aid of arbitration. In fact, the same paragraph of the [arbitration agreement] provides that the Rules of Conciliation and Arbitration of the International Chamber of Commerce ("ICC rules") govern disputes between the parties. In turn, the ICC rules expressly provide that, before the matter "is transmitted to the Arbitral Tribunal, and in appropriate circumstances even thereafter, *the parties may apply to any competent judicial authority for interim or conservatory relief.*" . . . That is precisely what Faiveley did in this case.

*Id.* (emphasis in original).

In this case, the Arbitration Agreement Werner signed does not preclude interim judicial relief. At most, it grants the arbitrator the authority to enter an injunction. However, this grant of authority is not exclusive to the arbitrator and the context suggests this grant of authority is for entry of permanent injunctive relief in the context of resolving the claims:

> [T]he arbitrator shall have the power to resolve the claim or claims and award any type of legal or equitable relief available in a court of competent jurisdiction including, but not limited to, attorney's fees, compensatory damages, punitive or exemplary damages and injunctive relief, to the extent such damages are available under applicable law.

[DE 7-1, p. 11, § 11]. Additionally, as in *Faiveley*, the AAA Rules of Employment Arbitration specifically contemplate this Court providing interim relief. Rule 32 states, in part:

> A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.[2]

Thus, there is nothing precluding this Court from hearing and granting the Injunction Motion.

### c. **The issues of the attorney-client relationship with the VA Clients falls outside of the Arbitration Agreement.**

Under the "significant relationship" test, Werner's claims concerning his federally-recognized attorney-client relationship with the VA Clients and the rights and obligations that come with that relationship fall outside of the scope of the Arbitration Agreement. The Eleventh Circuit, relying on *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013), has explained the test as follows:

> "A 'significant relationship' between a claim and an arbitration provision does not necessarily exist merely because the parties in the dispute have a contractual relationship." *Id.*; *see also Seifert*, 750 So.2d at 638 ("[T]he mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement."). Rather, a significant relationship exists between a claim and a contract "if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." *Jackson*, 108 So.3d at 593. In other words, a claim "arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship." *Id.* "[A] claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public." *Id.*

*Leidel v. Coinbase, Inc.*, 729 Fed. Appx. 883, 887 (11th Cir. 2018) (emphasis added). This analysis is consistent with this Court's prior decision in *Foley v. Morgan Stanley & Co., Inc.*, 11-CV-60348, 2011 WL 13267089, at *4 (S.D. Fla. Mar. 30, 2011), to which G&P cites. However, the analysis, when applied to Werner's claims, support a finding that Werner's claims concerning his federally-

---

[2] *See* https://www.adr.org/sites/default/files/EmploymentRules-Web.pdf (last accessed September 4, 2023).

recognized attorney-client relationship are not covered by the Arbitration Agreement, especially considering the fact that the claims implicate public policy and Werner's duty to third parties, the VA Clients.

Admittedly, there does not appear to be readily available case law concerning the circumstances presented here, but *Leidel* is at least somewhat analogous. In that case, the plaintiff sued for damages arising out of defendant Coinbase's failure monitor the use of its platform and prevent theft. The defendant's duties were alleged to arise out of the Bank Secrecy Act and its regulations "not for the protection of Defendant's customers [like plaintiff], but to detect money laundering and other suspicious or illegal activities by Defendant's customers." 729 Fed. Appx. at 888. "Because Leidel's claims rely on obligations allegedly imposed by law and in recognition of public policy to persons who are strangers to the User Agreements, his claims neither rely on nor bear a significant relationship to those agreements." *Id*.

Here, Werner's claims concerning his federally-recognized attorney-client relationship with the VA Clients and the rights and obligations that come with that relationship. Werner's coercive claims to ensure the parties are acting according to that relationship and that Werner has at least access to the VA Clients' files do not stem from the Employment Agreement or the Arbitration Agreement. Rather, Werner's claims stem from his attorney-client relationship under federal law, the ethical obligations of both Werner and G&P to the VA Clients, and the overall public policy concerning the protection of the interests of the VA Clients, each of whom are strangers to the Employment Agreement and Arbitration Agreement. Accordingly, Werner's claims are not subject to the Arbitration Agreement.

d. **The Court can and should grant the Injunction Motion.**

Werner has generally agreed that G&P is not waiving its right to arbitrate by responding to the Injunction Motion, which is consistent with the AAA Employment Rules, as noted above and as noted by G&P. However, G&P's substantial participation in discovery and delay in filing its Motion to Compel should be deemed as a waiver of its right to claim that the Injunction Motion should be directed to arbitration. While G&P may not have broadly waived its right to arbitrate the disputes between the parties, the same cannot be said as to the Injunction Motion. Werner, at G&P's adamant request, participated in extensive expedited discovery requested by G&P, including four depositions and hundreds of pages of documents exchanged in discovery. G&P taking advantage of the expedited discovery ordered by the Court [DE 14] is far more than necessary to present a defense to the Injunction Motion. *See Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("In this case, appellants' counsel had at least a weekend to prepare their opposition to the preliminary injunction. The district court did not find that they had insufficient time to prepare a defense. We do not view this as an abuse of discretion.").

Likewise, the parties agreed that G&P would file a response to the Injunction Motion after discovery had concluded. [DE 16]. The parties also agreed that they would be ready for an evidentiary hearing by August 25. *Id.* Despite this extensive participation in litigating the Injunction Motion, G&P asks the Court to send everything to arbitration, including interim relief. But G&P's extensive participation in this case means G&P "has acted inconsistently with the arbitration right" as to the Injunction Motion. *See Warrington v. Rocky Patel Premium Cigars, Inc.*, 22-12575, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023). Accordingly, G&P has waived the right to demand that the Injunction Motion be arbitrated. In light of this waiver, and especially in light of the need to immediately maintain the *status quo*, that an arbitrator has not even been

appointed, and that this Court has set a hearing for September 6, the Court should deny the Motion to Compel in connection with the Injunction Motion.

## IV. CONCLUSION

WHEREFORE, Plaintiff respectfully requests the Court deny the Motion to Compel, or, at the very least, deny it in respect to the Injunction Motion, and grant Plaintiff such other relief as is necessary and just.

DATED this 4th day of September, 2023.

Respectfully submitted,

**Winderweedle, Haines, Ward & Woodman, P.A.**
329 Park Avenue North
Second Floor
Winter Park, FL 32789
(407) 423-4246
*Attorneys for Plaintiff*

By: */s/ C. Andrew Roy*
C. Andrew Roy, Esq.
Florida Bar No.: 91629
aroy@whww.com
spollard@whww.com
Timothy J. Kiley, Esq.
Florida Bar No.: 44352
tkiley@whww.com
acothran@whww.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means via CM/ECF on September 4, 2023 on all counsel or parties of record on the Service List below.

/s/ *C. Andrew Roy*
C. Andrew Roy, Esq.

## SERVICE LIST

Scott W. Atherton, Esq.
scott@athertonlg.com
Terence M. Mullen, Esq.
terence@athertonlg.com
Brittany A. Tarazona, Esq.
btarazona@athertonlg.com
**Atherton Galardi Mullen**
**& Reeder PLLC**
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: (561) 293-2530
Facsimile: (561) 293-2593
**Attorneys for Defendant,**
**Gordon & Partners, P.A.**

Nicole K. Atkinson, Esq.
natkinson@gunster.com
mmargolese@gunster.com
eservice@gunster.com
Amy S. L. Terwilleger, Esq.
aterwilleger@gunster.com
**Gunster Yoakley & Stewart, P.A.**
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401-6194
Telephone: (561) 655-1980
**Attorneys for Defendant,**
**Gordon & Partners, P.A.**