```
1                        UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF FLORIDA
2
                              CASE NO. 23-CV-81139
3
     ADAM WERNER,
4                                           West Palm Beach, Florida
                    Plaintiff(s),
5                                           September 6, 2023
               vs.
6                                           1:36 p.m. - 3:23 p.m.
     GORDON & PARTNERS, P.A.,
7
                    Defendant(s).      Pages 1 - 88
8    -----------------------------------------------------------

9                            MOTION HEARING
                  BEFORE THE HONORABLE DONALD M. MIDDLEBROOKS
10                     UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   FOR THE PLAINTIFF(S):  CHRISTOPHER ROY
                            Winderweedle, Haines,
13                          Ward & Woodman, P.A.
                            390 North Orange Avenue
14                          Suite 1500
                            Orlando, FL 32801
15
                            TIMOTHY KILEY
16                          Winderweedle, Haines,
                            Ward & Woodman, P.A.
17                          329 Park Avenue North
                            Second Floor
18                          Winter Park, FL 32789

19
     FOR THE DEFENDANT(S):  SCOTT W. ATHERTON
20                          BRITTANY A. TARAZONA
                            Atherton Galardi Mullen & Reeder, P.A.
21                          224 Datura Street
                            Suite 815
22                          West Palm Beach, FL 33401

23

24

25
```

```
 1    APPEARANCES:  (Continued)

 2    FOR THE DEFENDANT(S):   NICOLE K. ATKINSON
                              Gunster Yoakley & Stewart
 3                            777 S. Flagler Drive
                              Suite 500 E
 4                            West Palm Beach, FL 33401

 5
      REPORTED BY:            JILL M. WELLS, RMR, CRR, CSR
 6                            Official Court Reporter
                              400 N. Miami Avenue
 7                            Miami, FL 33128
                              jill_wells@flsd.uscourts.gov
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   (Case called to order of the court at 1:23 p.m.)

 2              THE COURT:  This is the case of Adam Werner v.

 3   Gordon & Partners, Case Number 23-81139.

 4              Could we please have appearances.

 5              MR. ROY:  Good afternoon, your Honor.  Andrew Roy, on

 6   behalf of the plaintiff, Mr. Werner, who is seated.  Also with

 7   me is Tim Kiley from my office.

 8              MR. ATHERTON:  Scott Atherton from Atherton, Galardi,

 9   Mullen & Reeder, here with my co-counsel Nicole Atkinson, from

10   the Gunster firm.

11              Also at counsel table is our corporate representative,

12   Mr. Bob Gordon.

13              THE COURT:  Good afternoon.

14              Well, this was set for a hearing on a preliminary

15   injunction.  I guess I have got a couple of initial questions

16   for both sides.  It's not at all clear to me why there's

17   federal jurisdiction here.  I am not sure I see the substantial

18   federal issue.

19              Normally, conduct of lawyers withdrawing from a firm,

20   and procedures for dealing with that, is a, seems to be, a

21   quintessential state law issue.  That's my first threshold

22   question.

23              Then, second, apparently there's an arbitration

24   agreement, and it looks like the arbiter could order

25   preliminary relief.  And so why is there anything else
```

1    necessary?

2              And I guess my other question, why is there a need to

3    do anything?  Don't the bar rules suffice to deal with these

4    situations?

5              So those are my initial questions.  Let me hear from

6    both sides as to those issues before we get into taking

7    evidence.

8              MR. ROY:  Thank you, your Honor.

9              In respect to the federal question concept, the reason

10   this falls outside of the ordinary purview of the Florida Bar

11   rules and state law is because Mr. Werner is the Title 38

12   authorized representative for each of these VA clients.

13             And what Title 38 provides and what we briefed is that

14   regardless of whether the lawyer changes firms, there is one

15   authorized individual accredited attorney who represents each

16   of these clients.  There is no such thing as a firm under

17   Title 38.

18             So regardless of whether Mr. Werner is at a firm or

19   Mr. Werner has departed that firm and gone to another firm,

20   Mr. Werner remains the VA-accredited authorized representative

21   for each of these clients.  So that's different from Florida

22   law or standard bar rules.

23             So if this was an ordinary personal injury client, the

24   firm could continue to represent that client even if a lawyer

25   left, and then as between the firm and the departing attorney,

1    they send out a joint letter, or a unilateral letter, if that's

2    necessary, and then the client chooses who to ultimately go

3    with.

4         And then, in the interim, the law firm can continue to

5    represent that client by filing a notice of appearance and

6    continue to represent that client in the case.

7         The VA side of things is different, and that's the

8    whole reason why we are here, because it kind of flips it on

9    its head.

10        THE COURT:  I don't see what's so different about it.

11   If you want to practice in the Southern District of Florida,

12   and you have got to be admitted to the Southern District of

13   Florida, and if you file a complaint, you have got to either be

14   a member of the bar or admitted pro hoc vice, and you are the

15   lawyer in that case.  I don't see how that somehow means that

16   the Florida Bar rules are not pertinent.

17        If you are a member of the Supreme Court Bar and you

18   file a complaint, something that -- you file an appeal with the

19   Supreme Court and you leave your firm, you are still the

20   lawyer, but I don't think that somehow invalidates the Florida

21   Bar rules as to how you deal with departing lawyers or files or

22   any of that.

23        So it just -- I guess I don't see the substantial

24   federal question.

25        MR. ROY:  The substantial federal question stems from

1    Mr. Werner's rights in respect to these attorneys -- not just

2    his rights but his obligations to represent these parties.

3            The difference is, is Gordon & Partners, as a law firm

4    and any of its attorneys, are not authorized to represent any

5    of these clients.  So they cannot take action on these cases

6    until such time as the client chooses Gordon & Partners and

7    affirmatively signs a new Form 21-22 alpha with a VA-accredited

8    individual.

9            So that the uniqueness here stems from Title 38 not

10   recognizing the existence of the law firm.  So even before

11   Mr. Werner left Gordon & Partners --

12           THE COURT:  Well, they do say, as I read their rules,

13   that any member of the law firm with permission can work on it

14   including paralegals and the like.

15           MR. ROY:  That's correct, Judge, and that would be

16   indicated in the Form 21-22.

17           THE COURT:  But has somebody somehow stopped him from

18   representing a client before the VA?

19           MR. ROY:  Well, Gordon & Partners has taken action as

20   if they represent the clients, and that's part of the reason

21   why we sought an injunction.

22           THE COURT:  But that's not what the rule deals with.

23   He apparently, for those people for whom he has signed a form

24   and the client has signed the form, and assuming that the form

25   doesn't authorize other people at the law firm to work on it,

1  he is the lawyer.  So has somebody interfered with his ability

2  to be the lawyer?

3      MR. ROY:  Yes, Judge, in the sense of the files that

4  are necessary in order to represent these clients remain at

5  Gordon & Partners.

6      Initially, Gordon & Partners had granted access to

7  those files to Mr. Werner and those affiliated with him and

8  continued to work on those matters, but eventually, within a

9  week of him leaving, they terminated that access and

10  substituted it with a more ad hoc basis, case-by-case basis

11  which is, frankly, impractical given the volume of clients.

12      And the ATO access, the live, real-time access

13  actually allows Mr. Werner and his affiliated attorneys to

14  actually give clients the appropriate advice they need

15  versus -- this is all in the papers -- the access to the VA

16  system, VBMS --

17      THE COURT:  He has access to that, right?

18      MR. ROY:  He does have access to that, Judge, but it

19  does not give access to things that the clients have

20  communicated to him.  Those would all be in ATO.

21      So client correspondence, client directives, any notes

22  associated with the clients, any private medical exams that

23  have not yet been filed with the VA, any statements by the

24  client, any buddy statements, all of those types of files

25  remain at Gordon & Partners, and while there is some access

1    granted on a case-by-case basis if there's a hearing coming up,

2    if a VA client currently calls Mr. Werner, or one of the other

3    affiliated attorneys, they don't have access to their file in

4    order to properly advise them.

5          There's some examples that Mr. Werner can give on an

6    evidentiary basis, but one of those examples is that, if there

7    is a compensation and pension exam that the VA will be

8    conducting, only the client gets notice of that.  So the VA

9    calls the client directly and then schedules that.  And it can

10   happen within a week, or even sooner than that.

11         If the client calls and says am I supposed to go to

12   this exam, the only way that Mr. Werner or his affiliated

13   attorneys can give them proper advice on that is if they have

14   access to what's in ATO.

15         What's in VBMS will not tell them whether that client

16   should go to that medical exam or not because it may be that

17   that medical exam, if they go to it, could actually result in a

18   reduction of benefits.  The only way to know how to properly

19   advise that client is through the information that's available

20   in ATO.

21         Coming back to the federal question concept, Judge, is

22   the reason why this is different than just ordinary state law

23   side of things is because under Florida Bar rules, if we don't

24   hear from a client, then the client is deemed to be defaulted

25   back to the firm.  So the firm retains that client.

1            In this circumstance, that is not legally possible if

2    we don't hear from a client.  The client remains Mr. Werner's

3    client for VA purposes, and he continues to represent them for

4    that purpose.

5            So the whole reason behind filing this was primarily

6    to get just access to the records even on a limited basis so

7    that Mr. Werner and the affiliated attorneys have the

8    information they need in order to represent the VA clients.

9            THE COURT:  So why couldn't an arbitrator -- you mean

10   an arbitrator could grant preliminary relief.  It looks like

11   you agreed -- both sides agreed to arbitration.  So why

12   wouldn't that suffice?

13           MR. ROY:  Judge, it's possible for an arbitrator to

14   enter in interim relief, but we came to this court because we

15   believe that there was a substantial federal question that was

16   appropriate to be addressed on an expedited basis.  And this

17   was the route that we chose, and it's not prohibited by the

18   arbitration concept.

19           THE COURT:  Well, there's some cases saying -- but a

20   lot of the cases you cite, there are provisions which allow

21   either side to seek injunctive relief.  Here, there isn't that

22   language.  Is there?

23           MR. ROY:  Judge, there is not something specific that

24   authorizes the interim relief outside of the incorporation of

25   the employment rules.  The AAA employment rules allow for this

1   type of relief to be sought.  It says it's not inconsistent

2   with the arbitration agreement.

3          There is not specifically -- I would admit, Judge,

4   there is not specifically a grant for seeking interim relief,

5   but there is not a prohibition against it.

6          THE COURT:  Does he have a list of those clients for

7   whom who signed a consent for him to represent them before the

8   VA?

9          MR. ROY:  Yes, Judge.

10         THE COURT:  So he's already got that?

11         MR. ROY:  Yes.

12         THE COURT:  He knows who those are?

13         MR. ROY:  We have a very good idea of who all those

14   clients are.  The parties are still engaging in obtaining

15   client choice.  So we don't believe that this process actually

16   interferes, necessarily, with clients choosing who they want to

17   go to.  But if we don't hear from a client, or if the client,

18   say, for instance, chooses Gordon & Partners but doesn't sign a

19   new Form 21-22 alpha, until that time Mr. Werner remains

20   responsible for representing them in front of the VA.

21         That responsibility, that grant of authority that the

22   client gave Mr. Werner, is to prepare, present, and prosecute

23   all the claims before the VA, which is why having the records

24   is really necessary.

25         It's not an ownership of records.  It's just access.

```
1   All we are looking for is restoring the access that was
2   previously given.
3           That's the interim relief that we are really here to
4   seek, Judge, and that allows the arbitration to go forward
5   after that, after this interim relief is granted, with access
6   to these records.
7           THE COURT:  How many are there?  How many clients did
8   these lawyers have signed forms with the VA in terms of
9   representation?
10          MR. ROY:  As of the date Mr. Werner departed
11  Gordon & Partners is approximately 8,700.
12          THE COURT:  That he had -- that -- and those are
13  clients who had signed and where he was the designated lawyer?
14          MR. ROY:  That's correct, Judge.  The Form 21-22 alpha
15  is signed by the client appointing him as the representative
16  and is filed with the VA.
17          Some of those numbers have changed since that time
18  because some new Form 21-22 alphas have been signed and filed
19  appointing somebody new at Gordon & Partners.  That number has
20  dwindled a little bit, but it doesn't make the access to the
21  records any less necessary.
22          THE COURT:  It looked, to me, like the VA tries to
23  honor the rules of the respective bar organizations.  I was
24  looking through one of them.  It talks about --
25          MR. ROY:  That is correct, Judge, and that's primarily
```

```
 1    in the concept of accreditation dealing with -- an attorney who
 2    is accredited by the VA is still expected to comply with the
 3    rules.  But where there is a fundamental conflict between the
 4    federal law and Florida Bar rules is dealing with that default
 5    concept.
 6         So 4-5.8 defaults clients who don't respond back to
 7    the law firm.  That is not something that is possible under the
 8    federal law.
 9         THE COURT:  It says:  An attorney shall not, in
10    providing representation to a claimant before the VA, engage in
11    behavior or activities prohibited by the rules of professional
12    conduct of any jurisdiction in which the attorney is licensed
13    to practice law.
14         I mean, it looks like the VA's rules all seem to defer
15    to the local bar regulations and admission practices.  It looks
16    like -- to be admitted to the VA don't you just have to be a
17    lawyer in good standing with a bar?
18         MR. ROY:  Yes, Judge.  Actually, you don't even have
19    to necessarily be a lawyer to be VA-accredited.
20         THE COURT:  We are talking about lawyers here.
21         MR. ROY:  That's correct.  That's primarily what that
22    provision is addressing, is that by incorporating the bar
23    rules -- and, really, if your Honor is to look at Title 38
24    itself in addition to the regulations, it was intended to
25    incorporate the model rules, the ABA model rules.
```

1           In order to establish some type of grounds for

2     appropriate behavior by the lawyers, when it comes to this

3     default concept, where if you don't hear from a client when

4     sending out the requests for client choice, that's not

5     necessarily something that is a conduct concept.  It's just --

6     what Florida did is, it says we need to establish some type of

7     rule that if we don't hear from a client, what's going to

8     happen.

9           If I recall, Judge, the ABA model rules actually don't

10    have that default rule.  Only the Florida Bar rules do.  That's

11    where the rub is with Title 38 is because the only way a lawyer

12    can be relieved of responsibility, is no longer obligated to

13    represent a client, is if, one, that client actually revokes

14    the power of attorney through a filing with the VA; the

15    attorney withdraws -- and they have to do that just the way

16    they would withdraw here.  There can't be a detriment to the

17    client -- or third, a new Form 21-22 alpha is actually signed

18    and filed appointing a new individual representative.

19          And the regulations treat that new Form 21-22 alpha as

20    a new power of attorney to replace the old one unless the power

21    of attorney says differently.

22          THE COURT:  So is the only place you think that there

23    is a conflict between what the VA rules and the Florida Bar is

24    this default rule?

25          MR. ROY:  That is correct, Judge.

```
 1              THE COURT:  So the only spot.

 2              MR. ROY:  That's correct, Judge.

 3              THE COURT:  Everything else is consistent.

 4              MR. ROY:  I think Mr. Werner would agree that he is

 5    supposed to comply with the Florida Bar rules.

 6              THE COURT:  And you think that's a substantial federal

 7    question.

 8              MR. ROY:  I do, Judge.  And we stated in our papers,

 9    especially with respect to Mr. Werner's ability to actually

10    represent the VA clients, these records are needed, and the

11    records themselves are something that's necessary in order to

12    comply with what the structure of representation is under

13    federal law.

14              And so the coercive action, using the language of

15    those cases dealing with dec actions and whether something is a

16    substantial federal question based off a defense, the coercive

17    action belongs to Mr. Werner here because of this unique

18    conflict between Florida law and Title 38 in respect to what

19    happens with the clients.

20              Because under Florida law, if an attorney leaves, the

21    firm can still act and can still do things in the best interest

22    of the clients.  They don't actually -- the firm doesn't have

23    to immediately transfer --

24              THE COURT:  If the firm appeared, I guess.  I don't

25    know.  If a lawyer is the lawyer on a file, for example, in my
```

1  earlier examples, if the lawyer is representing a criminal

2  defendant, and that lawyer leaves the firm, isn't that lawyer

3  still responsible?

4          MR. ROY:  I would --

5          THE COURT:  And I don't know that the default -- how

6  does the default rule -- I mean, I can't imagine that somebody

7  in that circumstance wouldn't respond.

8          How many of these VA people do you think are not going

9  to respond?  How long do these cases last?

10          MR. ROY:  Judge, there is a decent chance that we will

11  not hear from half of them.  We have been at this for 30 days,

12  and I think we have heard from less than half of these folks.

13  And part of that is because of the nature of the, I guess, the

14  constituency.  Most of these folks are disabled.  And so it is

15  entirely possible we won't hear from them.

16          But even if that's the case, during the interim --

17          THE COURT:  Do they have cases pending?

18          MR. ROY:  They do.  All of them have cases or claims

19  pending.  The length of time can vary in terms of the stage of

20  the case.  There's various sets of appeals.

21          Like, usually an attorney doesn't get involved unless

22  there is, first, a determination of benefits by the VA.  Once

23  there is a determination, that's when the attorney will get

24  involved to appeal whether that was a complete denial of

25  benefits or whether there should be an increase in benefits.

1    And then there's multiple different procedures.  There's

2    something called a higher-level review.  There is a board of

3    veteran appeals.  That's actually a full-on appeal.  Some of

4    those things, like a board of veteran appeals case, can take,

5    on average, about 3 to 4 years.

6          So these things are pending for a period of time.  And

7    during that time, clients will call in, and there's also things

8    that have to be done on the case in terms of preparing for a

9    hearing, or preparing for a filing, or preparing to submit new

10   evidence to the VA for an increase in benefits.  All of those

11   things are still pending even if there's not an immediate

12   deadline coming up, especially if a client calls in and is

13   requesting advice.  That's where these files are needed in the

14   interim.

15         In your example, Judge, if -- you talked about a

16   criminal case, a criminal defense attorney.  They are the

17   representative.  They are the attorney of that criminal

18   defendant.

19         When the criminal defendant retains that attorney,

20   they are not just retaining that attorney; they are retaining

21   the firm.  There is an engagement letter for the firm.  So the

22   firm can act on their behalf too.

23         That is different here.  That's not the same

24   circumstance here.  When -- because of federal law, only an

25   individual is recognized as representing the attorney -- the --

```
 1            THE COURT:  So there are no engagement letters?  When

 2   these VA guys come to Gordon & Partners, they don't sign

 3   anything?

 4            MR. ROY:  There is a fee agreement, and that fee

 5   agreement is also with Mr. Werner individually.  So there is

 6   not only a power of attorney that appoints Mr. Werner

 7   individually, but there is a fee agreement that also appoints

 8   him as their attorney representative.

 9            So when we talk about this, it's almost as if

10   Mr. Werner is his own law firm housed within a law firm.

11            THE COURT:  Well, there's something that said they

12   were employees; they weren't partners.  Is that right?

13            MR. ROY:  Well --

14            THE COURT:  There was something in one of the filings

15   that claimed that they were employees of the law firm.

16            MR. ROY:  That's right.  Mr. Werner and Mr. Hoffman,

17   who are the folks, two of the folks who left, were associates.

18   They were potentially partners in name, but they did not have

19   any ownership interest in the firm.

20            THE COURT:  Well, I guess going back, I am looking at

21   this *Grable & Sons Metal Products*.

22            It says:  It's a constant refrain that federal

23   jurisdiction demands not only a contested federal issue, but a

24   substantial one, indicating a serious federal interest in

25   claiming the advantages thought to be inherent in a federal
```

1    forum.

2         Then they also say:  A state law claim always raises

3    the possibility of upsetting the state-federal line drawn (or

4    at least assumed) by Congress; the presence of a disputed

5    federal issue and the ostensible importance of a federal forum

6    are never necessarily dispositive; there must always be an

7    assessment of any disruptive portent in exercising federal

8    jurisdiction.

9         And they talk about how a federal forum may entertain

10   without disturbing any congressionally approved balance of

11   state and federal judicial responsibilities.

12        It just seems -- I guess my reaction is that

13   interfering with a state's ability to regulate the practice of

14   law.  It's hard for me to imagine that when Congress passed

15   this, that they were -- they wanted the federal courts getting

16   involved in that.

17        MR. ROY:  Judge, there is actually some case law we

18   cited wherein the context of the special VA representation,

19   that even the VA believes that Congress intended to supersede

20   the representation concepts under state law.

21        THE COURT:  I mean, they did -- they cap fees, don't

22   they?  I mean, I saw something about how they regulate fees and

23   that that might supersede state law.

24        MR. ROY:  That's right, Judge.

25        Also, something else that supersedes state law is the

1   recognition of just one individual at any given time as the

2   person who is the --

3           THE COURT:  Where is the case on that?

4           MR. ROY:  Judge, that's in Title 38.  That's the

5   different regulations.  We have 38 CFR 14.629.  We have

6   38 U.S.C. 5904, and primarily 38 CFR 14--

7           THE COURT:  I have got those rules.  Just tell me

8   where there's some indication that they are trying to supplant

9   the State Bar.

10          MR. ROY:  The concept under 38 CFR 14.631(e)(1) is

11  that only one organization, which is not a law firm,

12  representative, agent, or attorney will be recognized at one

13  time.

14          So under federal law, there is no such thing as a law

15  firm representation.  It is one individual, and that is

16  different than Florida law.

17          THE COURT:  So the law firm -- they talk about

18  organizations, like veterans for -- you know, veterans -- or

19  the Veterans for the Blind, I thought was one organization.

20          So you can have that kind of organization, but a law

21  firm itself can't be the designated?

22          MR. ROY:  That's correct, Judge.  An organization like

23  the example you gave, it's primarily nonprofits.  And in fact,

24  an organization cannot charge a fee.  So if a law firm were to

25  pursue that as an organization, they wouldn't be able to charge

1    a fee to the client.

2              THE COURT:  Where is that other rule I was curious

3    about?

4              So if a claimant -- this talks about representations

5    by attorneys, law firm, law students, and paralegals, and it

6    says:  Upon accreditation an attorney may represent a claimant.

7    If the claimant consents in writing, an attorney associated or

8    affiliated with the claimant's attorney of record, or employed

9    by the same legal services office as the attorney of record,

10   may assist in representation of the claimant.

11             Has that been done in this case in any of these?

12             MR. ROY:  Yes, Judge.  There is a box on Form 21-22

13   alpha that designates other individuals who can assist

14   Mr. Werner in the preparation, prosecution, and presentation of

15   the claims on behalf of the VA's clients.

16             I would point out the importance of the language of

17   "associated" or "affiliated with" Mr. Werner.  So once he

18   departs the law firm, the folks who remain at the law firm are

19   no longer affiliated or associated with him, and they cannot

20   work on the file because they are no longer under his

21   supervision.

22             THE COURT:  So you think associated or affiliated

23   somehow ends when he chooses to leave?

24             MR. ROY:  Yes, Judge.

25             THE COURT:  Despite the fact that the client agreed?

1          MR. ROY:  The client agreed in the sense that if

2     Mr. Werner is actually associated or affiliated with them, then

3     they can continue to act in connection with the claims.

4          THE COURT:  Have you sought any kind of help from the

5     VA or the Office of General Counsel?

6          MR. ROY:  No, Judge, we have not.

7          Primarily, the issues that we are looking at here

8     are -- involving the VA might actually slow things down in some

9     way, shape, or form.

10          THE COURT:  You don't think you have to do that?  You

11     don't think you have to exhaust any remedies you might have

12     with the VA?

13          MR. ROY:  It doesn't appear that there would be a

14     remedy that we could ask the VA about, Judge.  It does not

15     appear that there would be an administrative remedy available

16     for Mr. Werner.

17          Again, we are primarily talking about Mr. Werner's

18     ability to represent these clients on a continuing basis.

19     Because of the unique federal issue here, where he is the

20     individual representative for these clients, and remains as

21     such regardless of whether he's working at Gordon & Partners,

22     or somewhere else, and because of that uniqueness, his need to

23     have the access to the files is of paramount importance for him

24     to be able to service these clients.

25          The only reason why this was even in dispute is

1    because of the existence of Title 38 and all of its policies

2    concerning the recognition of only one individual.  And the

3    fact that -- I am going to quote from 14.629.

4              "All transactions concerning the claim will be

5    conducted exclusively with the recognized organization,

6    representative, agent, or attorney of record until notice of a

7    change, if any, is received by the appropriate office of VA."

8              So it's that part there that "until notice of a

9    change, if any, is received by the appropriate office of VA"

10   means that Mr. Werner continues to be these VA clients'

11   attorney under federal law, because that's what federal law

12   says, and because of that, that's what brings it out of the

13   context of an ordinary PI-type case or criminal defense case,

14   where the firm has no authority to actually act on cases with

15   the VA.

16             So if Mr. Werner is the only person authorized to act

17   on behalf of these VA clients but the law firm is the one that

18   actually has the clients' files, it seems like there is a

19   mismatch here where the best thing to do, in order to protect

20   the clients' interests, is to allow the person authorized to

21   act to have access to the files so he can act.

22             THE COURT:  I saw somewhere a case, and it was

23   veterans -- the appellate body for these veteran appeals, and

24   somebody apparently argued, and I think they were -- it was

25   somebody who worked for one of these organizations.  And I

```
 1  guess you could be a lawyer working for one of these veterans'
 2  groups.
 3          And this lawyer -- or the client, in this instance, I
 4  guess, filed the action saying that the VA's recognition of
 5  these organizational bodies was somehow harmful to the client's
 6  ability to designate an individual to represent him.
 7          And the court of appeals, for the veterans' group,
 8  said -- they sought mandamus.  They said, well, you need to go
 9  to the VA first.
10          You don't think there is any need to do that here?
11          MR. ROY:  Judge, I don't think -- we are not
12  necessarily challenging the constitutionality of what Title 38
13  says or does in terms of its structure and representation.
14          What the issue is, is how does Title 38 in its
15  exclusive grant of authority to Mr. Werner as the individual
16  representative of these VA clients in its interaction with him
17  departing a law firm, what does that mean for his ability to
18  actually continue to represent these clients in a meaningful
19  way?
20          It primarily comes back to Gordon & Partners shouldn't
21  be acting on these files because they are not authorized to do
22  so.
23          Even more importantly is, if Gordon & Partners has the
24  files of these clients that are necessary for Mr. Werner to
25  continue under his obligations under federal law, that's where
```

```
 1    we are just looking for access to those records in order to

 2    continue to service the VA clients as federal law recognizes.

 3              THE COURT:  Okay.

 4              Let me hear from the defendants on these same issues.

 5              MR. ROY:  Thank you, Judge.

 6              MR. ATHERTON:  Well, thank you, Judge.  Judge, Scott

 7    Atherton, for the defendant.  My co-counsel and I split up our

 8    presentation a bit, where I was handling fact issues and the

 9    ethical conundrums I will express to the court.  She was

10    primarily handling subject matter jurisdiction and arbitration.

11    But I think I can directly address several of the questions the

12    court had with respect to those matters.

13              On the first question the court asked, whether there

14    is a substantial conflict with federal law as described in

15    *Grable & Sons*, the defendant respectfully submits there is not.

16              The operative Bar Rule 4-5.8 states that when a lawyer

17    departs a firm, the firm that previously served the client

18    remains obligated to that client, and there is nothing inherent

19    in that Bar rule that conflicts with anything that my opposing

20    counsel just said.

21              A great way to articulate that is to analogize the

22    argument being presented today in the context of the VA cases

23    to how every case works in matters before this court.

24              When a lawyer appears before this court, that lawyer

25    is responsible for the matter.
```

```
1              THE COURT:  Well, is there a difference?  I mean, the

2    rule, as you read it to me just now, when it talks about -- it

3    talks more about a law firm representation, doesn't it?

4              MR. ATHERTON:  What it talks about is not the

5    representation.  It states that the client remains a client of

6    the law firm.

7              And the distinction here is that both what the

8    plaintiff is articulating and how it would normally work in any

9    court proceeding both remain true.  It may be --

10             THE COURT:  Well, you use the word "remain" though.

11   "Remain a client of the firm."

12             I guess the question is, are these people ever a

13   client of the firm?

14             MR. ATHERTON:  They are.

15             THE COURT:  Why?  According to him, there is a consent

16   to be represented by an individual lawyer and there is a fee

17   agreement with that individual lawyer, is what I understood

18   what he said.

19             Is there an engagement letter with the law firm?

20             MR. ATHERTON:  There absolutely is an engagement

21   letter.  It is on Gordon & Partners' letterhead.  It does have

22   Mr. Werner's name on it, but it says "Adam Werner of

23   Gordon & Partners."  It is one of several documents that these

24   clients signed during the Gordon & Partners' intake process.

25             Another one of the documents they signed is this 21-22
```

```
 1    alpha, counsel referred to.  Even in that form, in Box 18, on
 2    the lower left-hand side of the first page, it lists
 3    Gordon & Partners and Gordon & Partners' address.
 4          And so to directly answer your Honor's question, do
 5    these clients believe that Gordon & Partners is their
 6    attorneys?  We respectfully submit the answer is undoubtedly
 7    yes.  When these clients come to Gordon & Partners, they sign
 8    paperwork.  During the intake process that makes that clear.
 9    We have provided an exemplar statement from a client, that was
10    a recorded call, that is an example of that.
11          And that is an example not of a substantial conflict
12    of federal law, because it could be true that Mr. Werner is the
13    attorney of record in these VA matters, and these clients
14    reasonably believe they are clients of Gordon & Partners.  Both
15    of those could be true with no conflict.
16          We suggest what we have here is not a conflict of
17    federal law but conundrums of state ethics laws.  And one
18    reason there are conundrums is that, we agree in part with what
19    counsel says.  You know, in a typical case where you don't have
20    the idiosyncrasies of VA law, when a lawyer departs a firm,
21    counsel is right, it's a relatively easy matter for a new
22    lawyer from the firm to appear.  And what the rule contemplates
23    is that with respect to the clients' files, that never moves.
24    The file never moves to the new firm unless the client
25    consents.
```

1          So that's, sort of, the quintessential example of how

2     things would work as contemplated by the rules, but that

3     doesn't fit neatly here for reasons that are not substantially

4     related to federal law.

5          The major tension point here is that the clients that

6     are at stake are not the 3,000 clients who have already

7     confirmed in writing they want to stay with Gordon & Partners.

8     Those are not at issue here.  From what we understand, there

9     may be approximately 1,000 more that have confirmed, in some

10    manner, that they want to go with the Werner, Hoffman firm.

11    And those are not at issue because Gordon & Partners confirmed

12    before this case was filed and has, in conformity with that,

13    actually provided transfers of the files where clients

14    indicated they wanted to move to the Werner, Hoffman firm.

15         In addition to that, if these undecided clients, which

16    we think, we are approximating, to be roughly half of these

17    8,700, those undecided clients, during the process by which

18    they are figuring out what they want to do, if something

19    immediate comes up, something --

20         THE COURT:  You are saying undecided.  Does that mean

21    not -- haven't responded yet?

22         MR. ATHERTON:  That's correct.  They have not

23    responded yet with a further writing indicating their

24    instructions.

25         So in those cases, if there is an immediate need for a

```
 1    client, we are just giving that file to Mr. Werner so he can do
 2    what is appropriate.  We require a written certification from a
 3    lawyer.  But like Mr. Werner, we want to make sure that these
 4    clients are protected during this choice period.
 5         THE COURT:  How do you identify those, that they need
 6    immediate help?  He used this example of some sort of exam or
 7    test, or something, that was going to happen in a week, and
 8    that that would be sent to the client, and Mr. Werner might not
 9    know about it.
10         So how do you deal with that?
11         MR. ATHERTON:  Well, that is actually --
12         THE COURT:  Does that come to the firm too, or not?
13         MR. ATHERTON:  If it comes to the firm, to the
14    Gordon & Partners firm, it's easy to address.  But I think his
15    hypothetical illustrated exactly how this should work.
16         In his hypothetical, a client calls Mr. Werner's firm
17    and says, hey, I just got information from the VA, there may be
18    a hearing in a week.  So in this hypothetical --
19         THE COURT:  That client, who would they call?  They
20    would call Gordon & Partners?  Who would he know who to call,
21    this client?
22         MR. ATHERTON:  In their example they called
23    Mr. Werner.  But this would apply to whether they called
24    Mr. Werner or Gordon & Partners.
25         This is a helpful instance where a client is not an
```

```
 1    undecided, unreachable client.  This is a client who has

 2    reached out to one or both the firms with a question.  And that

 3    is an opportune time to advise the client, in conformance with

 4    the Florida Bar rules, of this departure and provide the client

 5    with an opportunity to choose who their counsel is going to be.

 6    At least in my mind, Judge, this is a very simple example to

 7    resolve.

 8          Likewise, counsel said there are instances where

 9    clients contact the Werner, Hoffman firm not because they have

10    an imminent hearing, or because there is an imminent need, but

11    they have questions about the status of their case.

12          In those instances, that, too, would be a prime

13    example to advise the client of the attorney separations and

14    have them make a choice.  And if they choice the WHG firm, as

15    we are referring to it, Gordon & Partners honors that and

16    provides the file to counsel.

17          So even here we don't believe there is a substantial

18    conflict of federal law.  In fact, there is not even an ethical

19    conundrum because these are instances where clients can direct

20    Gordon & Partners.

21          The conundrums arise in this, approximately, half of

22    the client population who are not calling the firms, who are

23    not responding to emails, and who have not communicated any

24    choice.  We have not heard from at all.  And the reason those

25    create state law ethical concerns is all the ethics rules are
```

1   centered around a client's directive.

2          So, for example, if a client were to call

3   Gordon & Partners and say I want my file transferred to this

4   new law firm, there are rules and ethics opinions that explain

5   the procedure on how that works.

6          The conundrum we have here is, this is not a request

7   from the clients.  The conundrum is even more complicated for

8   at least two reasons.

9          One is, these are not, what I would consider, typical

10  attorney-client relationships.  You know, a quintessential

11  relationship is, a client hires a lawyer.  They talk to the

12  lawyer.  They know the lawyer's name.  They have a

13  relationship.

14         That is unlike what is at issue here.  As explained in

15  our papers, Mr. Werner has, and conceded at his deposition,

16  that among the approximately 8,700 or so VA clients at the time

17  he separated, he maybe spoke to hundreds of them.

18         So the first state law ethical conundrum we face is

19  providing client files to a lawyer that these clients never

20  spoke to, whose name they probably don't know, understanding

21  that when they came to the Gordon & Partners law firm, they

22  signed a lot of documentation confirming that they were hiring

23  the Gordon & Partners firm.

24         So that's challenge one that is not addressed by the

25  Florida Bar rule.

1          THE COURT:  Was he identified as the lawyer who would

2     be representing them?

3          MR. ATHERTON:  He is identified in two documents, yes.

4     He is identified in this Form 21-22 alpha, but he conceded at

5     his deposition, as is plainly shown on that document, nothing

6     in that form tells clients that Mr. Werner is his own law firm,

7     which is what you heard today, or that he can change law firms

8     whenever he wants and take their client files with him without

9     the clients' knowledge or consent, which is what they are

10    attempting to do.

11         So, yes, his name on there, but so, too, is

12    Gordon & Partners' name, consistent with the clients'

13    reasonable expectation that they are hiring the

14    Gordon & Partners law firm, and that before their case moves to

15    another firm they would be consulted.

16         THE COURT:  How did -- I mean, have these people met

17    any lawyer?  When they came in initially, did they have to come

18    in to sign this stuff, or did they just respond somehow to

19    advertising or something?

20         MR. ATHERTON:  Well, I think on that point, the way

21    they come in is in various ways.  A good portion are from

22    advertising, others might be referrals from other lawyers, and

23    I don't believe it is the case that at the time they sign all

24    these papers that they meet with a lawyer.

25         So, for example, we asked Mr. Werner about that at his

1    deposition:  Are you involved in the client intake process?

2    And the answer was no; maybe hundreds of times over the course

3    of thousands of these cases.

4         We also asked:  Does anyone tell the clients when they

5    sign this form, this 21-22 alpha, that it means Mr. Werner can

6    leave the firm whenever he wants and take the case with him and

7    take their files with him without even telling the client?  And

8    he candidly admitted no, he is not aware of anyone ever telling

9    clients that.

10        But subsequent in the process, once they complete the

11   intake procedures, which involves a lawyer reviewing their case

12   to determine if there is a likelihood of a benefit being

13   delivered to the VA clients, then they do speak to a lawyer.

14   And so that does occur.

15        Now, it turns out, Mr. Werner is not the attorney that

16   they speak to.  He is the attorney who puts his name on the

17   paperwork, is what the record has shown, but he is not the one

18   who is handling majority of these hearings or having direct

19   client contact, at least not in any material way.

20        THE COURT:  Are there -- these 4,300 -- you said about

21   half -- a little over 4,000 people who haven't responded, has

22   something been filed on their behalf to seek benefits, or is it

23   still in the intake process?

24        MR. ATHERTON:  I believe those are clients where

25   something has been filed.  They are at various stages in the VA

1    process.  And so they are existing clients.

2            I don't believe -- and counsel on either side can tell

3    me if I am wrong -- that the population of clients we are

4    talking about are folks who were just in intake.  I think these

5    are all claims pending at some stage.

6            THE COURT:  Who is responsible, then, for, I guess, if

7    he's filed this 21-22a, he has some responsibility for

8    providing competent representation to them.

9            MR. ATHERTON:  Yes, we believe he does.

10           THE COURT:  Does the firm as well?  I mean, if nobody

11   does something, and these people lose out on some rights, who

12   is on the hook?

13           MR. ATHERTON:  Our concern is that they will say

14   everyone is on the hook.  The bar rules seem to give some

15   support to that, and that is one of the state ethical

16   conundrums that is presented by this.

17           The conundrum is a little more complicated than that

18   because it's not only a unique case where a lawyer is asking

19   for client files without the client instruction, and it's not

20   only a case where the lawyer is doing that having never met or

21   spoke to the clients.  But there is also record evidence, we

22   have presented, that we know what they intend to do with the

23   files with respect to this hedge fund diligence process, which

24   we respectfully submit is not consistent with the rules and

25   further triggers our duty to try to protect these clients from

1    those sort of disclosures.

2         So none of that implicates federal law.  At least it's

3    our view it doesn't implicate federal law.  It does implicate

4    complicated ethics rules.  And so that is, sort of, the needle

5    we are attempting to thread, candidly, among the parties, and

6    in threading that needle, we may ultimately need an

7    arbitrator's assistance.

8         THE COURT:  I thought I heard or saw something that an

9    arbitrator doesn't work because there is an obligation to

10   appeal.

11        Is there something about that?

12        MR. ATHERTON:  Well, it doesn't mean an arbitrator

13   doesn't work.  An arbitrator certainly does.  The parties have

14   agreed to that and the law supports that.

15        The obligation to appeal is something different.  It

16   is, essentially, a mechanism in the bar rules to make sure

17   lawyers don't collude to get a judge to sign an order that

18   would prejudice clients' confidentiality rights.

19        So, for example, if lawyers were to appear before you

20   and make an argument that results in the court saying, okay,

21   well, confidentiality is basically waived for these 8,700

22   clients.  The bar rules make clear, lawyers have a duty to

23   safeguard.

24        If an order like that were entered for some reason,

25   they would still have an obligation to appeal.

1          It's described in two ways in Rule 4-1.6.  One is

2     under Subparagraph (e) where it talks about "may appeal."  So

3     it's not mandatory as a matter of obligation, you know, duty.

4     But in the notes to the rule, what it talks about is taking

5     reasonable efforts under the circumstances, essentially.

6          So there could be an order that is entered that is

7     consistent with the law, that is narrowly tailored, that does

8     not unnecessarily violate anybody's confidentiality rights, and

9     then a judgment would have to be made by the attorneys who are

10    being asked to disclose that information, is that duty to

11    appeal triggered or not, and that is, essentially, another

12    state ethnics determination.

13         THE COURT:  Has there been any evidence -- I mean, my

14    reaction on these 4,000 people is, both sides have a bit of a

15    stake in it.  You both have some exposure if somebody's case is

16    mishandled.

17         From the client standpoint, they sign some documents

18    with Gordon & Partners.  On the other hand, they apparently

19    also signed one of these forms that designated Mr. Werner as

20    their lawyer with the VA.

21         So by just going that far down the road, you both have

22    some responsibility and exposure, I would think.  I don't know

23    what fees -- how the fee part works.  When do you get paid?  At

24    the end of this, at the handling, is this a -- who pays the fee

25    on these cases?

```
 1              MR. ATHERTON:  They are contingency fee cases.  The
 2    way it's supposed to work is, the VA is supposed to segregate
 3    the 20 percent payable to the law firm if there's a recovery,
 4    and pay 80 percent to the veteran.
 5              Now, it doesn't always work that way.  There are
 6    instances, more common than the lawyers would like, where the
 7    VA pays everything to the veteran, and the lawyer has to follow
 8    up with them.
 9              In addition to fees where they might have to seek
10    reimbursement of fees accidentally paid to the veteran, there
11    are also costs in many of these cases.  They are contingent
12    recovered costs, and the client has an obligation to reimburse
13    those costs if there's a recovery.
14              So that is, generally, how it works in the fee
15    agreement they sign with Gordon & Partners and the way it would
16    work going forward.
17              The idea of how the fees will work after these lawyers
18    have departed is a bit complicated and so now, too, are costs.
19    We think those would, again, primarily involve state law
20    issues.
21              There is a contract that indicates 50 percent of the
22    fees that are recovered by Mr. Werner after he leaves on
23    clients that were Gordon & Partners' clients is payable to
24    Gordon & Partners.  Mr. Werner believes, under state ethics
25    rules, that that is invalid.  And if he's right, then that
```

1    means the state law quantum meruit calculus has to be done for

2    thousands of cases, which is difficult, but if that is what the

3    parties have to do, then that is what they have to do.

4         With respect to costs, typically the costs are paid by

5    the client, but there has been factual developments in this

6    case that an arbitrator would also have to consider.

7         One of them is that Gordon & Partners has had a number

8    of staff making calls, probably into the thousands, and

9    indicated that Werner, Hoffman & Greig will address any costs

10   with Gordon & Partners, that these clients don't have to pay

11   Gordon & Partners' costs, which is contrary to the engagement

12   letter.  But, again, this is a state-law-driven issue that we

13   think an arbitrator can certainly decide.

14        THE COURT:  I guess you both, perhaps, pointed to a

15   gap in the bar rules as to how you deal with -- well, I guess

16   they say that you keep the client if there is a default, the

17   default is to the firm.  How that would work in this setting

18   with these VA forms is unclear.

19        Has there been any effort by either side to get any

20   advice by the bar?

21        MR. ATHERTON:  I have spoken to Florida Bar ethics

22   counsel at least four times.  Once litigation is filed, their

23   ability to provide assistance is more limited, understandably,

24   because at that point there is a judge who can decide the

25   issues or an arbitrator in appropriate case.

1          But yes, I have been in contact personally with the

2     Florida Bar ethics hotline several times throughout the course

3     of this case.

4          THE COURT:  Can they answer this kind of question

5     assuming -- I mean, I understand your point on litigation, but

6     is there an answer somewhere?

7          MR. ATHERTON:  Unfortunately, the way the hotline

8     works, they don't give legal advice.  What they can do is

9     direct you to rules and opinions and other white papers in this

10    jurisdiction, and in others, that have addressed similar

11    issues.

12         The rule that is on point here, 4-5.8, makes clear

13    that when a lawyer leaves a law firm, the client remains a

14    client of the law firm.  That's as far as rule 4-5.8 goes.  It

15    does not preclude the departing lawyer from being the attorney

16    of record.  It does not exclude the attorney who departed from

17    having obligations.  It just makes clear that the law firm that

18    had the client originally, the client still remains a client of

19    that law firm.

20         So it is the defendant's view that there is not a

21    conflict on that point.  And to be candid, I did not explore

22    the idea of a conflict there with the bar.  I think the bar

23    rule makes clear that at least Gordon & Partners -- these

24    clients remain clients of Gordon & Partners until that

25    attorney-client relationship is severed.

1           THE COURT:  Well, that may be the case, but there's

2     also the VA seems to say that until something happens, he's the

3     only person authorized to handle the case, although, perhaps,

4     what was it, Box 18 may make a difference on that.

5           What's your view of that?  He says when he leaves,

6     this provision which allows other lawyers and paralegals to

7     work on the case is terminated.

8           Do you think it does, or does that ability continue?

9           MR. ATHERTON:  I don't believe it terminates by

10    operation of law.  I believe that it does continue.  In fact,

11    you could imagine an emergent case arising from circumstances

12    like these where it may actually be necessary to protect the

13    veteran's interest for that to remain in place.

14          In addition, that form that you are referring to, this

15    21-22a, that lists the additional authorized professionals who

16    are in addition to Mr. Werner.

17          That is not a document that Mr. Werner can

18    unilaterally change.  It is a document that requires the

19    client's signature.  And this is an important point.

20          Right now, these thousands of, what we are calling,

21    the undecided clients, right at this moment there is an

22    operative 21-22a on file with the VA that lists people that

23    still work at Gordon & Partners.

24          So that is a further addition to, what I regard, the

25    state ethical conundrum, the state ethics conundrum, where

1    regardless of what Mr. Werner's view is on the importance of

2    this form, in the client's reasonable view they may still

3    believe Gordon & Partners has a responsibility to them.

4             Now, when counsel --

5             THE COURT:  Did all of them sign this Box 18 or some

6    not sign and some signed?

7             MR. ATHERTON:  They are all signed.  I want to be

8    specific in what I am referring to.

9             We are talking about the point in time where

10   Mr. Werner resigned.  I think there was approximately 8,700 of

11   these VA clients where he signed this form, Mr. Werner signed

12   this form.  Each and every one of those listed people from

13   Gordon & Partners in that form.

14            THE COURT:  Lawyers, or paralegals, or both?

15            MR. ATHERTON:  It was both, lawyers and paralegals,

16   and maybe even other professionals.

17            Now, I believe it's the case --

18            THE COURT:  Are they named by name, or does it --

19            MR. ATHERTON:  They are --

20            THE COURT:  Does it just refer to the law firm?

21            MR. ATHERTON:  No, they are named by name.  It is a

22   specific list of, let's say, ten or so professionals besides

23   Mr. Werner.

24            So that is another reason why we think that there are

25   ethical challenges here that need to be addressed aside from

1    the federal law.  Because this is -- I think the question is

2    what is the reasonable objective and expectation of the client?

3    Who do they think their counsel is?  If these are people who

4    signed all Gordon & Partners intake documents and signed an

5    engagement letter on their letterhead, and, yes, it had

6    Mr. Werner's name, but it was of Gordon & Partners, and they

7    have been dealing with Gordon & Partners' staff and receiving

8    tons of emails with Gordon & Partners' signature blocks,

9    et cetera, et cetera, that these people reasonably believed

10   that they are Gordon & Partners' clients.

11         And I would agree with your Honor.  That means that

12   the lawyers at both firms are incentivized to work together, to

13   make sure that these clients' interests are protected, but the

14   way in which they are doing so is a bit different because they

15   are looking at these clients' interests differently.

16         Mr. Werner is looking at his narrow interest of, since

17   I am the authorized VA representative, which doesn't mean he is

18   the only person that can handle the case; it means he is the

19   only person who can transact directly with the VA.  That is as

20   far as that goes.  It does not mean he has an exclusivity

21   provision that no one can discuss VA matters with these

22   clients.  It means that for something to be filed, he has to

23   approve it and file it.

24         So he has focused narrowly on that point.  And I don't

25   fault him for that.  But Gordon & Partners is looking at a

broader perspective of these clients' interests.  And we think
some of these clients' interests will be harmed by just giving
over all these files to Mr. Werner for the reasons I explained.
They hired Gordon & Partners.  They do not know who he is.  He
never bothered calling them in the years that he purportedly
represented them.  And there is information that suggests he
intends to do things with the files that are contrary to the
rules, and he's doing all this without the clients' knowledge,
or consent, or directive.

So in addition to the liability that both firms share,
as your Honor is directly pointing out, Gordon & Partners has
additional liability concerns, that, again, they don't arise
under state law.  But our concern is, if we give over thousands
of files to a lawyer these clients never heard of to be used
for a purpose that is not in furtherance of representing the
clients, then we will have further exposure by providing that
access.

So this is why we are trying our best to thread an
ethical needle here, and we have put a lot of work into trying
to do this correctly, and we believe we have a plan to do so.
But we would like an independent, objective arbiter to review
that and ensure, after full briefing and argument and
consideration, that all of these clients' interests are
protected.  Not just Mr. Werner's interests and his new law
firm, but the broader interests of these clients.  And that is

1    where the primary tension point has been on access to these

2    files.

3          Now, there's many other reasons why we think

4    injunctive relief is inappropriate and not necessary, it's a

5    mandatory injunction, it's a high standard.  But getting to the

6    heart of the true tension point in the case, I believe that is

7    it from the defendant's perspective.

8          THE COURT:  I had a question on my mind and I am

9    trying to remember what it was.  It will come to me.  I had a

10   question to ask you, and then I was paying attention to what

11   you were saying to me and it momentarily escaped me.

12          I know what it was.  Where are you at with

13   arbitration?

14          MR. ATHERTON:  So we filed an arbitration before this

15   case was commenced, and we have been trying to expedite it as

16   best we can.  Mr. Werner finally provided a list of arbitrators

17   this past Friday.  Two of the arbitrators on his list match our

18   list.  So we think an arbitrator is going to be appointed

19   imminently.

20          Prior to that, after we let the court know that we

21   think we figured out a way to navigate all these ethical

22   landmines, we filed a document, which has been filed now in

23   this court docket, asking the arbitrator to set an immediate

24   hearing to determine all of these issues we have just presented

25   on an expedited basis.

1          Because one thing we agree with opposing counsel on,

2     that these matters should be handled expeditiously.  Not so

3     quickly that certain rights are trampled or that the issues are

4     not fully vetted, but we believe it should happen as quickly as

5     reasonably possible.

6          THE COURT:  Okay.  But what we have now, as I

7     understand it, there was a complaint filed.  You filed a motion

8     to stay and a motion to compel arbitration.  And then there is

9     the preliminary injunction, a request for that.

10         I guess I think there's a real, as I told both sides,

11    a real issue as to whether or not there is a substantial

12    federal claim and whether Congress's choice of -- Congress

13    would intend that the statute -- well, the statute doesn't

14    say -- it doesn't go nearly as far as the rule, that Congress

15    somehow intended a federal court to get involved and,

16    basically, bar determinations.  I think that's hard for me to

17    see how this is an appropriate case for federal court.

18         On the other hand, and assuming I believe that's a

19    threshold issue, it would impact whether or not anybody could

20    show a preliminary -- a likelihood of success on the merits,

21    but there is not a motion to dismiss pending.

22         If their complaint doesn't present a federal question,

23    I don't think I even could reach your motion to compel

24    arbitration because I wouldn't have jurisdiction.

25         So I wonder whether, in terms of what you all want to

1    do in trying to get to arbitration, if that's what you want to

2    do, what's the best way forward?

3         I don't see how -- I guess I could sua sponte deal

4    with this jurisdiction issue, but probably the most normal

5    avenue would be for me to find no likelihood of success on the

6    merits as to that issue.

7         It also seems to me that arbitration could solve this

8    problem at least as, I don't want to say better, but at least

9    they could do it in a timely fashion.  Federal courts of course

10   are obliged to honor arbitration agreements.

11        So what's your reaction?  How should we proceed?  And

12   did you give up trying to resolve it with the other side?

13        MR. ATHERTON:  We will never give up until, you know,

14   we have addressed these issues.

15        But if the court were to determine it did not have

16   subject matter jurisdiction, which in turn meant it could not

17   compel arbitration, from a practical perspective, that would

18   not slow the progress of this matter.

19        This Friday, two days from now, there is the first

20   administrative conference before the AAA with respect to these

21   disputes, and we intend to ask them again to expedite this

22   quickly.  We are committed to doing that regardless of whether

23   this court has jurisdiction or compels arbitration or not.

24        THE COURT:  Can't they -- I thought there was

25   something about how they could deal with a request for

1    preliminary relief quickly, I thought I saw somewhere within

2    three days, or something, in one of the opinions I saw under

3    the arbitration, whatever they call that, the code, or whatever

4    they use to -- their rule, the rules of arbitration.

5          Is that not the case?  How quickly can they act?

6          MR. ATHERTON:  In all candor, I don't recall seeing a

7    three-day rule, and I don't know how quickly they can act.  But

8    I believe both counsel, if this matter was determined to be in

9    arbitration, would join forces to make sure it's addressed as

10   quickly as reasonably possible.

11         THE COURT:  All right.  Thank you.

12         MR. ATHERTON:  Thank you, Judge.

13         THE COURT:  Okay.  Let me turn back to the plaintiff.

14         What do you want to do?  Do you all want to forge

15   forward?  I probably told you some strong inclinations.  I have

16   a hard time seeing the federal issue.  You've narrowed it to

17   this default rule, but it's hard to see how Congress meant to

18   step in and have federal courts get involved in what are,

19   essentially, bar ethical rules on lawyers leaving firms and

20   their respective obligations with respect to the clients.

21         MR. ROY:  Judge, if I -- may I take one last attempt?

22         THE COURT:  Sure.

23         MR. ROY:  I think the discussion by defense counsel

24   with your Honor about all of the different issues and the

25   questions that are raised in terms of client choice.  A client

1  may believe objectively that they are a client of

2  Gordon & Partners.  All of that discussion about the client's

3  objective belief and how the attorney-client relationship is

4  established, and maybe there is some type of bifurcated

5  attorney-client relationship, or there is some relationship

6  with Gordon & Partners, all of that -- the only reason why we

7  are having that discussion is because Adam Werner, under

8  federal law, remains the responsible attorney for them

9  regardless of what the client actually thinks.  That's what

10  federal law says, and that's --

11             THE COURT:  Well, I would have to accept, then, on

12  this Box 18 your argument that it automatically terminates when

13  he leaves the firm.  I think I would go against you on that

14  issue in terms of affiliation or association.

15             If I were a plaintiff's lawyer, I would certainly want

16  to sue them, too, if something goes wrong.

17             MR. ROY:  Judge, may I show you the Form 21-22 alpha,

18  please?

19             THE COURT:  Sure.

20             MR. ROY:  This is an exemplar of the Form 21-22 alpha.

21  Of course we didn't want to involve clients' names.  So this

22  is -- Judge, I am not sure if you can see this.  This is our

23  Exhibit P-1, and the title of this form, this is the 21-22

24  alpha, is Appointment of Individual as Claimant's

25  Representative.  And down here, in Box 15, is Mr. Werner's

```
 1   name.  So he is the -- he is the individual as representative.

 2          Box 18 is just Mr. Werner's address.  And so when we

 3   look at this box, it does say Gordon & Partners, 4114

 4   Northlake, Palm Beach Gardens.

 5          This box is just Mr. Werner's address.  This does not

 6   appoint Gordon & Partners as the representative of these

 7   clients, nor it can't.

 8          THE COURT:  He mentioned they often have the names of

 9   lawyers and paralegals.  Is that in 18, or is that on the next

10   page?

11          MR. ROY:  That is in a different box.

12          I'd like to point out the conditions of appointment on

13   the following page under conditions of appointment.  This is a

14   statement by the VA client.

15          I, the person named in Item 1 or 10, hereby appoint

16   the individual named in Item 15A -- that's Mr. Werner -- as my

17   representative to prepare, present, and prosecute my claims for

18   any and all benefits from the Department of Veterans Affairs

19   based on the service of the veteran named in Item 1.

20          If we skip a few sentences, because the rest of it

21   kind of deals with a non-fee type of arrangement, but the

22   last -- this last sentence here, this is the extent of what

23   these individuals can do.

24          I authorize VA to release any and all of my records

25   other than as provided in Items 19 and 20 -- that's above -- to
```

```
 1   that individual appointed as my representative.  That's
 2   Mr. Werner.  And if the individual in Item 15A is an accredited
 3   agent or attorney, this authorization includes the following
 4   individually named administrative employees of my
 5   representative.
 6          And so these are the administrative employees of
 7   representative.  That's of Mr. Werner.  That's Michael Hoffman,
 8   who is an attorney; Heather Hartley, an attorney.  Both of them
 9   went with Mr. Werner to WHG.
10          I am not entirely sure who Mr. Stratton is.  I am not
11   sure if he's even employed by Gordon & Partners anymore.
12          Ms. Campos is not employed by Gordon & Partners
13   anymore.
14          Robert Fanning, Esquire, is employed now with WHG, as
15   is Mr. Golan.
16          Rana Lattimore is also a paralegal at WHG.
17          Marielena is a paralegal at WHG.
18          That's about the extent of my knowledge.  There's
19   other people as well.
20          But the important part here is, they have to be
21   administrative employees of my representative.
22          THE COURT:  Of course they weren't when he signed
23   this, were they?
24          MR. ROY:  They weren't strictly employees.
25          THE COURT:  They weren't at all.  I mean, if you are
```

1    arguing they have to be employees, somebody filled this thing

2    out incorrectly, I guess would be the kind way of saying it.

3           MR. ROY:  In any event, Judge, these folks are

4    recognized by the VA for acting on behalf of the VA client

5    under Mr. Werner's power of attorney.

6           So if, according to defense's position on this,

7    somebody who might be at Gordon & Partners, say Urie Pierre, I

8    believe is still at Gordon & Partners as an administrative

9    employee or paralegal.

10          If that person is going to act on behalf of a VA

11   client, they have to do that under Mr. Werner's power of

12   attorney under this form, and Mr. Werner is not supervising

13   Mr. Pierre, right?

14          So it is logical that if Mr. Werner is no longer

15   associated with Gordon & Partners and the people listed on here

16   remain at Gordon & Partners, they should not be able to act

17   under this power of attorney.

18          But, again, this comes back to, all of these

19   discussions we are having, Judge, the only reason why we are

20   having these discussions is because of Title 38 and its

21   uniqueness and how it does have a conflict with the Florida Bar

22   rules in the context of representation.

23          And if these were ordinary personal injury cases, I am

24   not even sure Mr. Werner would have the ability to go to state

25   court and be like, you know, Gordon & Partners, you need to

1    turn over all of the files.  No.  Because clients have to make

2    their choice first, and if they don't make a choice, they

3    default to the law firm.

4         Here, because of Title 38, it is flipped on its head.

5    Mr. Werner remains as the solely responsible attorney for these

6    attorneys -- for these clients regardless of whether he is at

7    Gordon & Partners or not, and because of that he has a right to

8    those clients' files as a matter of federal law in order to

9    prepare, present, and prosecute their claims.

10        That's why federal law is so entrenched into this

11   lawsuit and is so entrenched in the preliminary injunction and

12   why your Honor does have a substantial federal question here.

13        THE COURT:  You agree it's down to 4,000 people?  He

14   said 3,000 picked them, 1,000 picked your client, and 4,000

15   have yet to be heard from.

16        Is that right?

17        MR. ROY:  It may be a little bit more than that,

18   Judge.  I think we all still need to kind of collect our heads

19   on who we have left, basically.

20        And when it comes to the folks who have chosen

21   Gordon & Partners and have a Form 21-22 alpha on file for a

22   VA-accredited representative at Gordon & Partners, I mean, we

23   don't have a dispute there.  That client has made their choice,

24   and they have executed the procedure under federal law to

25   actually change their counsel.

```
 1              THE COURT:  Has anyone at Gordon & Partners filled out
 2    these 21-22a forms?  Had they ever listed anyone else other
 3    than the people who Mr. Werner and the people that left with
 4    him?
 5              MR. ROY:  Yes, Judge.  I believe in -- starting in
 6    June or July of this year, Mr. Gordon, who is a VA-accredited
 7    attorney, started becoming the 21-22 alpha for clients who were
 8    signing up.
 9              In that respect, you know, again, we are not arguing
10    on those because under federal law, Mr. Gordon is the
11    authorized representative for those clients.
12              THE COURT:  Is it true that -- I mean, people came in
13    through various ways and didn't meet with Mr. Werner or
14    Mr. Gordon.  They met with some intake people and signed up,
15    so.
16              MR. ROY:  That's right.  That's the nature of the
17    personal injury world.  Usually, when somebody calls in, they
18    don't talk to an attorney.  They talk to an intake person.
19    Eventually they get signed up and eventually talk to an
20    attorney.
21              It is not correct to say that Mr. Werner does not have
22    involvement in these cases.  He supervises each of the people
23    who work under him.  It is true that, say, for instance,
24    Mr. Hoffman, Ms. Hartley, Mr. Golan, Mr. Fanning, all of them
25    are VA-accredited attorneys, those are the people who usually
```

1    have the direct interaction with the clients and actually go

2    and prosecute the hearings.

3          Mr. Werner has done that as well, but he's primarily

4    now in a supervisory capacity in that way.  But Mr. Hoffman,

5    Ms. Hartley, Mr. Golan, Mr. Fanning, all of those are now

6    working at Gordon & Partners under Mr. Werner's power of

7    attorney.  And so they are authorized to do -- to act for the

8    VA client as well.

9          Again, coming back to the whole reason why we are even

10   having this discussion is not because of ethical conundrum

11   solely dealing with whether there is client confidentiality

12   involved; it's because we are talking about the ability of

13   Mr. Werner because of his obligations under federal law to

14   prepare, present, and prosecute these claims.

15         There's also some additional regulations, Judge,

16   independent of the Florida Bar rules by the VA, that impose

17   upon Mr. Werner the duty to competently represent his clients.

18         So in addition to what is incorporated under Florida

19   law, the VA rules specifically require Mr. Werner to

20   competently represent his clients.

21         I would like to point out, Judge, under 4-5.8 under

22   Subsection A, it talks about the contractual relationship

23   between law firms and clients.  And it's important to note

24   that --

25              THE COURT:  I didn't follow.  Are you looking at this

1    document?

2        MR. ROY:  No, Judge, I am looking at the ethics rules.

3        THE COURT:  Go ahead.

4        MR. ROY:  Under 4-5.8(a), it says that nothing in

5    these rules creates or defines those relationships.  Let me

6    read the whole rule.  This is under (a), contractual

7    relationship between law firm and clients.

8        "The contract for legal services creates the legal

9    relationships between the client and law firm and between the

10    client and individual members of the law firm, including the

11    ownership of the files maintained by the lawyer or law firm.

12    Nothing in these rules creates or defines those relationships."

13        So when it comes to the rest of that rule, the rest of

14    that rule doesn't govern the relationship between a lawyer and

15    a client.  What it does is, it governs the procedure for a

16    lawyer to depart the law firm.  That's what 4-5.8 does.  And

17    beyond what the model rules provide, Florida goes a step

18    further and talks about this default rule.  It's not under the

19    model rule.  The default rule says if you don't hear from a

20    client, that client is treated as staying with the law firm for

21    future legal services.

22        THE COURT:  Don't you -- I mean, that's a funny rule

23    because it seems like at some point you have to hear from the

24    client unless they have abandoned their claim.

25        How often does that happen in these VA cases?

1          MR. ROY:  Honestly, Judge, I don't think I could

2     actually answer that question, but I think there are instances

3     that I have heard of where if a client will never return a

4     phone call, that client, you know, there's a withdrawal at some

5     point.  Right?

6          But just because we don't hear from a client and

7     respect a client choice doesn't necessarily mean that is the

8     next logical step because it may be that they are just

9     difficult to get ahold of and not really looking out for this

10    type of notice.

11         THE COURT:  I guess that's why I was asking it.  It

12    seems if they have a claim and they want to continue it, at

13    some point you hear from them.  You might not have heard from

14    them yet, but at some point somebody is going to hear from

15    them, I would think.

16         MR. ROY:  Which is our point.

17         The reason why we have this issue is because during

18    that period of time Mr. Werner remains responsible for them.

19         THE COURT:  So do they, probably.

20         MR. ROY:  And that might be also a question of federal

21    law or -- federal or state law.  But certainly --

22         THE COURT:  I think -- I'm pretty sure it's state law,

23    unless they live in Arkansas.

24         MR. ROY:  As it relates to Mr. Werner, he remains

25    obligated under federal law regardless of whether the client

1    believes they are also represented by Gordon & Partners.

2            THE COURT:  What are the size of these cases?  Are

3    they substantial in terms of -- what are you trying to get?

4            MR. ROY:  I do want to be clear on what Mr. Werner's

5    hoping to achieve.

6            THE COURT:  I don't mean him.  A client.  Are they

7    suing to get their veterans benefits or something at the

8    hospital?  What are these claims?

9            MR. ROY:  It's dealing with disability benefits,

10   Judge.  And I will admit, I am not an expert on this, but I

11   feel like I have learned quite a bit about it.

12           If there is a decision -- so a VA client will file a

13   claim.  And they can file a claim on their own.  Usually they

14   don't -- an attorney is not required to file the claim.

15           A claim is for VA benefits based on a particular

16   service-connected disability.  So if there's a disability that

17   resulted from some type of service-connected issue, then they

18   can file a claim with the VA and asking for VA disability

19   benefits related to that disability.

20           If, in the process of presenting that claim, the VA

21   either denies the benefits or says it's a 20 percent

22   service-connected disability benefit instead of 100 percent,

23   for instance, that client then has the ability to appeal that

24   decision in a few various ways, and that's when the lawyer

25   usually gets involved, is to help present that appeal.

1          HLR is, it's called a higher-level review, and it

2     concerns -- it's basically a discussion with a higher-level

3     administrator at the VA about why should there be greater

4     benefits awarded.

5          THE COURT:  So is the application to a hearing officer

6     or to some -- to a VA employee, or how does it work?

7          MR. ROY:  It is all strictly administrative law, but

8     it is probably even lower level than administrative law,

9     because it's not until the board of veteran appeals where

10    there's truly administrative law involved, because then beyond

11    that, that's when, potentially, there could be an exhaustion of

12    administrative rights.

13         But initial, like the HLR is like, they are a hearing

14    officer in the sense that they are just a higher-level up in

15    the VA for determining whether additional benefits should be

16    awarded.

17         THE COURT:  Are lawyers involved in the initial

18    stages, the initial filing, or only when there is an appeal?

19         MR. ROY:  A lawyer can be involved in the claims

20    filing process.  And so, for instance, historically, if a VA

21    client has retained Mr. Werner as this 21-22 alpha authorized

22    representative, they will assist him with filing a claim, but

23    there is not compensation associated with that.  It's pretty

24    much a pro bono thing.

25         So just filing the claim itself is not usually

1  compensable.  It's only if there is an increase in benefits

2  through the appellate stage.

3          Whatever the increase in benefits, the past due

4  benefits, that's how compensation is paid to the attorney.

5  It's 20 percent of that amount of increased benefits.

6          THE COURT:  Are most of these handled by lawyers?  It

7  doesn't look like you have to be a lawyer to file these

8  requests.

9          MR. ROY:  That's right, Judge, but a lawyer can do

10  this.

11          THE COURT:  Do you have any idea what percentage are

12  lawyers?

13          MR. ROY:  I am not entirely sure.  I wouldn't be able

14  to answer that question.

15          In the context of this, this is all primarily driven

16  by VA-accredited attorneys.  I believe even Gordon & Partners

17  has hired some additional VA-accredited attorneys, just in the

18  same way that Werner, Hoffman & Greig has seven or eight

19  VA-accredited attorneys who service these clients.

20          So, no, it's not necessary under Title 38 to be an

21  attorney, but you do have to be VA-accredited in order to

22  represent.  And you have to be an individual, unless you are an

23  organization.

24          THE COURT:  They apparently accept bar membership for

25  most of it.  Do you still -- I mean, there's something about

1    three hours of CLE.  Do you have to do that?

2          MR. ROY:  That's right, Judge.  There is some

3    additional requirements that go into just -- into the VA

4    accreditation.  It's not just because they are a licensed

5    attorney they become a VA-accredited attorney.  There are some

6    additional procedures to go through.  CLE is one of those

7    things.

8          Also, most VA-accredited attorneys go through the

9    process of obtaining credentials to be able to access VBMS,

10   which is the Veterans Benefit Management System.  That is a

11   single-portal system.  There is a special PIV card that the

12   attorney would use to access those.  You don't have to be an

13   attorney to get a PIV card, either.

14         But what I will say is that system is a single-portal

15   access.  It's not like, you know, just because Mr. Werner has

16   access to it doesn't necessarily mean everybody else in the

17   firm has immediate access to it.  It is a single-portal system.

18         THE COURT:  Is it only for that client?  So he could

19   access the information about his clients.  Is that it?

20         MR. ROY:  That's right, Judge.  My understanding is

21   that if there is a Form 21-22 alpha on file for that client

22   with Mr. Werner as the power of attorney, he can access that

23   client's VBMS file.

24         THE COURT:  And Gordon & Partners can't?

25         MR. ROY:  That's right.

```
 1              THE COURT:  For those people?

 2              MR. ROY:  For those folks.

 3              THE COURT:  So the only thing they have in their files

 4     that he can't get might be some correspondence with a client?

 5              MR. ROY:  It's not just correspondence, Judge.  It's

 6     kind of a litany of things.  It's anything that has not been

 7     filed with the VA.  So what's in VBMS is what has been provided

 8     to the VA, or has been created by the VA.

 9              And when I say what has been provided, it either has

10     been filed, or the VA, through some other process, has actually

11     requested from a branch of service the medical records from,

12     say, for instance, the Department of Navy.  Those things don't

13     automatically populate in VBMS.

14              In terms of what is in VBMS versus the ATO, the case

15     management system, the stuff that is in ATO that is not in VBMS

16     is the client intake information, there's client

17     correspondence, there's notes about client directives.  For

18     instance, saying, you know, hey, I want to make sure that we

19     are prosecuting this particular appeal.  There can actually be

20     multiple appeals at any given time for one client based on

21     different types of strategies, different types of benefits, and

22     different type of service-connected disability.  So it might be

23     that one of these appeals is the better one to prosecute versus

24     another one, and that would be something that's loaded in ATO.

25     Notes and case status, a private medical exam, like an IME,
```

1   independent medical exam.  If that has not been filed with the

2   VA, that would only be in ATO.

3       There is client statements.  There is also buddy

4   statements, which is evidence to help support the disability

5   claim as well.  And then there's, of course, work product and

6   drafts of pleadings, things liking that.

7       THE COURT:  Do you agree they are providing, on an

8   individual basis, any file he asked for?

9       MR. ROY:  I would not say it's any file that is asked

10  for.  There usually -- this process is set up in a way where

11  attorneys at Werner, Hoffman & Greig can email the IT person at

12  Gordon & Partners and make a plea to that IT person that, hey,

13  we need X, Y, and Z file, and we need it by this time because

14  of this hearing or this deadline.  And that process has worked

15  in some ways, but it has not been adequate.  In fact, sometimes

16  it has taken longer than would be necessary for actually

17  getting to the file.

18      I will give an example.  A file was requested for a

19  hearing that was seven days out, and the file was not given

20  until the day before the hearing, which makes it difficult to

21  time how preparation will go.  It's not a perfect system, but

22  there are elements of it that are working.

23      But in terms of the ability to actually service all of

24  these files over a period of time, even if we did this manual

25  system 24 hours a day, I think something that we calculate is,

```
 1    it would take six months to actually transfer the files over.

 2              That's another thing.  The preliminary injunction, in

 3    terms of the request for restoring this case management system

 4    access, is only to get us to a point where we can get to a

 5    permanent solution for the transfer of those files for those

 6    clients who ultimately stay with Mr. Werner, or default to

 7    Mr. Werner because of the unique federal representation.

 8              THE COURT:  Have they already sent you the thousand?

 9              MR. ROY:  No, Judge.

10              THE COURT:  You don't have those either?

11              MR. ROY:  We do not have those.

12              THE COURT:  What's the hold-up on that?

13              MR. ROY:  We believe that Gordon & Partners is

14    mandating that we provide access, or we provide written

15    confirmation of each of these clients' choices.

16              THE COURT:  What do you want to do?  Do you want to

17    put on some evidence or -- we have covered a lot of ground.  I

18    understand the case better.  Tell me what you want to do.

19              MR. ROY:  Judge, I would say, if your Honor is going

20    to find that there is not subject matter jurisdiction, then I

21    don't see the need to proceed forward.

22              If your Honor is going to take that piece under

23    advisement, maybe we can present a little bit of evidence.

24              May I have one more moment just to illustrate where we

25    are at in terms of trying to find an agreement?
```

```
 1              THE COURT:  Right.

 2              MR. ROY:  Where we stand in terms of how the parties

 3      have tried to navigate these issues is the latest filing by

 4      Gordon & Partners that kind of demonstrates where we are at is

 5      Docket Entry 25.  That's where Gordon & Partners effectively

 6      made a proposal for how to address this issue.  And

 7      Gordon & Partners requested that this be done through the

 8      arbitrator and then ultimately confirmed by a state court

 9      judge.

10              What is being presented is, effectively,

11      Gordon & Partners acknowledging that Mr. Werner needs access to

12      these files.  But the promise given by Gordon & Partners is

13      that this ATO access will be given only as reasonably -- as

14      soon as practicable.  And it's been over a week that this

15      suggestion has been made.  We still don't have a solution as to

16      when that will happen.  So the timing is important.

17              There are restrictions that they presented for ATO

18      access, and those restrictions are absolutely acceptable to

19      Mr. Werner.

20              There's been discussion about sharing these files with

21      a hedge fund.  All of that discussion about a hedge fund was

22      dealing with the potential for financing and buying out the

23      cost that Gordon & Partners has incurred in connection with the

24      clients that will ultimately remain with Gordon & Partners.

25              It's a red herring.  It's not an issue.  We have
```

1    agreed that we will not do anything with the files that the

2    Florida Bar would not allow for.

3        In terms of the access itself, there is a lot of

4    restrictions that Gordon & Partners has proposed in terms of

5    not allowing us to modify or copy or download various files, to

6    not take any action to bypass or exceed the restrictions on the

7    files, to take any action to access any client files for which

8    Werner does not have an operative Form 21-22 alpha.

9        All of these things, like those restrictions, we are

10   willing to agree to.  We don't want access to other clients'

11   files, but as a matter of practicality from a timing

12   perspective, restoring access to ATO as it was, even if it

13   means potentially giving us access to other clients' files, if

14   that is ordered, Gordon & Partners sounds like they will do it.

15   In any event, the order would say don't access those other

16   clients' files.

17       This is the rub that Mr. Atherton is referring to in

18   the client confidentiality concept, that they are trying to

19   navigate.  They don't want to disclose more than is necessary

20   in order to protect the clients.

21       On balance, what we are looking at here is the

22   difference between making sure there's competent representation

23   versus balancing the confidentiality of those clients.

24       We think that what they proposed here on the

25   restriction side has struck that balance, but what has not is

1    the delay in providing this access so that it can manually

2    extract all of these other clients back out.

3            That's where a lot of the rub is in a lot of this,

4    which is why we are still here arguing in front of your Honor.

5    So it seems as if Gordon & Partners acknowledges that this

6    access should be given.  And we hope that they maintain that

7    position.

8            But in terms of where Mr. Werner is at, it's about the

9    timing, it's about the immediacy, and in finding a way to

10   accomplish that.

11           THE COURT:  All right.  Well, you are going to need to

12   figure out -- I will tell you, I am inclined and probably -- I

13   am not going to finally determine at this stage this

14   jurisdiction issue because there hadn't been a motion to

15   dismiss.  I don't think there is a substantial likelihood of

16   success on that issue from what I have looked at.

17           I also think that arbitration is available to the

18   parties and can -- and so I am not -- I think it's unlikely you

19   are going to get the preliminary injunction.

20           My reaction to what both sides have said is, there is

21   a lot of common ground and reasons why both of you may want to

22   try to come to some sort of accommodation to each other.  And

23   one of the things you might want to avoid is spending more

24   money on this case.  I think until somebody moves to dismiss on

25   the jurisdiction issue, I am not going to come to a final

 1    conclusion.

 2            I am pretty sure Congress didn't intend to displace

 3    the bar.  There are some aspects of this that do -- that do

 4    implicate federal interest, although I don't think they are

 5    substantial, but I am not prepared at this point to definitely

 6    decide there is not a federal issue.  I think you are going to

 7    lose on that issue.

 8            But I would want to go through it a lot more carefully

 9    than I have been able to henceforth and get full briefing.

10    Neither side briefed that very much.  You both talked about it

11    but not a lot.  I probably -- I spent a fair amount of time

12    going through the statute and the rules on that question, and I

13    really doubt there's a federal question.

14            So you are likely to lose on the injunction.  I am

15    pretty sure you will.

16            But then the question is whether you all want to

17    continue to litigate this case or whether you want to try to

18    resolve the issue or go quickly to arbitration.

19            Those are, seems to me, the decisions you all need to

20    make.

21            MR. ROY:  Yes, Judge.

22            In terms of evidence, I would posit that the verified

23    complaint and the verified motion with the declaration and

24    other evidence submitted would be enough to establish

25    irreparable harm, likelihood of irreparable harm.

```
 1              THE COURT:  Do you all want to agree that we can
 2    consider this -- I guess this is somewhere in the record, this
 3    form, the exemplar, something that has everything except a
 4    client's name.  Is that in the record somewhere?
 5              MR. ROY:  It is, Judge.  It is attached to our
 6    preliminary injunction motion, as is the fee agreement.
 7              THE COURT:  All right.  Is there agreement I can use
 8    that?
 9              MR. ATHERTON:  Yes, Judge.  The defendant would agree
10    the court can use that.  But we would ask the court also
11    consider Docket Entry 25, which is an affidavit explaining what
12    is actually available by VBMS, and also Docket Entry 31, which
13    is a second submission by the IT professional at
14    Gordon & Partners that explains exactly what the hold-up is
15    with respect to providing this access.
16              Also, Docket Entry 21, page 78, lines 14 through 23,
17    where Mr. Werner explained that this hedge fund concern was not
18    just to buy out Gordon & Partners; it was to raise money to
19    grow the firm or run the firm as well.
20              THE COURT:  I suspect that part -- well, I don't know.
21    I guess that's disputed.  I don't think I need to get into the
22    hedge fund thing on this question.  I mean, the primary things
23    I am looking at are the federal question, which I don't think
24    is there, and arbitration, which I think can give you the
25    relief you seek pretty quickly.
```

1    I am not prepared at this point to try to go down the

2    hedge fund route or the reasons why either side is doing

3    whatever they are doing.

4        Do you have an objection to the other things he

5    mentioned?  And do you have anything you want him to consider

6    allowing us to consider from your side of the table?

7        MR. ROY:  Let me have one moment, Judge.  If I can

8    look at my exhibits.

9        Which exhibits was Mr. Atherton referring to of

10   defendant's exhibits?

11       MR. ATHERTON:  Do you mind if I approach?  Maybe we

12   can discuss it real quick.

13       (Counsel conferring.)

14       MR. ROY:  Judge, in terms of the deposition

15   transcript, it sounds like your Honor will not consider that

16   aspect concerning the hedge fund.  That we would agree with.

17       In terms of the Defendant's Exhibit 25, the

18   declaration of Sherri Stone, we think that there is some

19   conflict between what Ms. Stone is saying versus what

20   Mr. Werner is saying as far as what is available by VBMS.

21       Ms. Stone also makes the conclusion that what is

22   available in VBMS is sufficient to represent the clients, and

23   we dispute that conclusion, of course.

24       THE COURT:  Does she list what is available?  I mean,

25   basically you have said that anything filed with the VA, in the

1    VA's materials, are all available, but things -- I guess

2    client, I guess attorney notes, or anything not filed with the

3    VA would be in the file but not available.

4            Is that what your position is?

5            MR. ROY:  That's right, Judge.

6            THE COURT:  You all, you agree with that?

7            MR. ATHERTON:  We agree that Ms. Sherri Stone, who is

8    the VA attorney who provided that declaration, is here.  What

9    she would further explain, I can proffer to the court, is that

10   these other matters, like attorney notes or the like, it might

11   be more convenient or helpful to have that, but it's not

12   necessary.

13           The VBMS includes not just things that are filed with

14   the VA or information the VA has available.  It even has, for

15   example, the notes of the VA employees who are evaluating the

16   claim, it has their request for information, it has a list of

17   the status of every current and past claim that has been made.

18   So it contains everything a VA lawyer would need to review to

19   determine the status of the case and what needs to be done.

20           It is true that, for example, the medical reports that

21   Gordon & Partners paid for, the ones that Werner, Hoffman &

22   Greig told clients they never had to pay for, those might be in

23   Gordon & Partners' files, but that is not something that these

24   lawyers would necessarily need.  They could get a report on

25   their own, but it would be more efficient for them to get it

1    from Gordon & Partners.

2            I think that is, essentially, what her testimony in

3    addition to that declaration would be.

4            THE COURT:  All right.

5            You agree with that recitation?

6            MR. ROY:  Not entirely, Judge.  We don't believe that

7    what's in VBMS is everything necessary to --

8            THE COURT:  Okay.  But in terms of what's there and

9    what isn't there, you agree?

10           MR. ROY:  I think we do generally agree.  I mean, if

11   the VA created VA's notes, yeah, I think they would be there,

12   but that's not necessarily reliable to rely on your adversary's

13   notes for determining what the case looks like.

14           And then the affidavit of Mr. Dan Osredkar, we know

15   it's in there, and we understand what the explanation is as far

16   as the technical limitations of ATO.  We don't believe that any

17   of that is actually necessary analysis, but we certainly have

18   no reason to dispute that because we don't have any information

19   about ATO other than what Mr. Dan O says.

20           In terms of our exhibits, Judge, we would offer what

21   has already been submitted through the verified complaint, as

22   well as the verified motion for expedited preliminary

23   injunction and the declaration included there.

24           And also, Plaintiff's Exhibit 1, Plaintiff's

25   Exhibit 2, which is -- the first one is the exemplar Form 21-22

1   alpha, and then Plaintiff's Exhibit 2, which is the exemplar

2   fee agreement.

3          Also, Plaintiff's 3 and 4.  Plaintiff's 3 is the

4   letter from Werner, Hoffman & Greig asking for cooperation in

5   transition, and then Plaintiff's 4 is the letter discontinuing

6   emergency access to ATO.

7          There are also exhibits concerning filings made by

8   Gordon & Partners under Mr. Werner's power of attorney after he

9   left.  That's Exhibits 5, 6, 7, and 8.

10          THE COURT:  Any issue as to any of those?

11          MR. ATHERTON:  As long as we can likewise agree to

12   information of counterbalancing information.

13          THE COURT:  That's what we are trying to do.  I will

14   tell you, I don't plan to get in -- I don't think it's

15   necessary to get into what they filed after he left either.

16   Both that and the hedge fund.

17          I think the issue, as I have told you, that I am going

18   to focus on are the federal question and availability of

19   arbitration.

20          MR. ATHERTON:  So if the court were to admit the

21   verified complaint or the verified motion for injunction, we

22   would ask the court also admit the response to those pleadings

23   which likewise contained -- just as Mr. Werner had an affidavit

24   supporting his verified motion, there was a number of verified

25   sworn declarations and affidavits in response.

```
 1            I am not sure if the court wants to admit all of that
 2   or not, but we would ask, if he is putting his pleadings in, we
 3   would put ours in as well.
 4            We do not object to P-1, P-2, P-3, or P-4.
 5            P-4 is a document in the pleadings where Mr. Werner
 6   represented there was no response to a letter.  If the court
 7   were to find that relevant, in response to that, we would
 8   designate my affidavit which set forth facts which are not
 9   disputed but are relevant to that.  That would be Defense 32.
10            And on the assumption he is not designating more, we
11   won't designate more if the court is not admitting the P-5
12   through 8, which are the documents surrounding this controversy
13   of things being filed without authority.
14            THE COURT:  Yes.  Well, I am not going to go down that
15   road in terms of -- frankly, I don't think there's a need in
16   this case to try to argue either side has performed badly.  I
17   think, to me, it's largely a legal issue.
18            MR. ATHERTON:  Very good.  Thank you, Judge.
19            THE COURT:  Okay.  Is that it?
20            MR. ROY:  I will state my objection to 32,
21   Defendant's 32.
22            THE COURT:  What is that?
23            MR. ROY:  That's Mr. Atherton's declaration.  We
24   don't -- I don't think it's relevant.
25            THE COURT:  Apparently he was trying to respond to
```

1    something you said, or somebody said, where they weren't

2    cooperating.

3              Is that right?

4              MR. ATHERTON:  Yes, Judge.

5              MR. ROY:  It was in response to P-3, which was our

6    demand for cooperation, and Mr. Atherton's declaration.

7              THE COURT:  I am not going to probably go down either

8    route.

9              MR. ROY:  I am just stating my objection for the

10   record, Judge.

11             THE COURT:  Fine.  Okay.  If you decide after, as you

12   leave, you both, you have good lawyers on both sides, to try to

13   resolve it and spare me the writing an order on the preliminary

14   injunction, let us know right away.

15             MR. ATHERTON:  We will, Judge.

16             THE COURT:  I urge you to try that.

17             I heard from McCabe you all were fairly close, he

18   thought, and then couldn't quite get there.  So if you can,

19   that would be great.

20             Otherwise, we will enter the order on the injunction,

21   and then we will need -- you need to respond either in an

22   answer or a motion to dismiss.

23             MR. ATHERTON:  Thank you, Judge.  And although U.S.

24   Magistrate Judge McCabe didn't get the case resolved, he is the

25   reason the parties are within striking distance.  So we

 1 │ appreciate your referral to him.

 2 │         THE COURT:  He does a good job.  Thank you, all.

 3 │          (Proceedings adjourned at 3:13 p.m.)

 4 │

 5 │                     C E R T I F I C A T E

 6 │

 7 │      I hereby certify that the foregoing is an accurate

 8 │ transcription of the proceedings in the above-entitled matter.

 9 │

10 │ September 7, 2023        /s/ Jill M. Wells
   │                          Jill M. Wells, RMR, CRR, CSR
11 │                          Federal Official Court Reporter
   │                          400 N. Miami Avenue
12 │                          Miami, FL 33128
   │                          jill_wells@flsd.uscourts.gov

13 │

14 │

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

**MR. ATHERTON: [36]**  3/8 24/6 25/4
25/14 25/20 27/22 28/11 28/13 28/22
31/3 31/20 32/24 33/9 33/13 34/12 36/1
37/21 38/7 39/9 40/7 40/15 40/19 40/21
43/14 45/13 46/6 46/12 67/9 68/11 69/7
71/11 71/20 72/18 73/4 73/15 73/23
**MR. ROY: [83]**
**THE COURT: [115]**

**/**

**/s [1]**  74/10

**1**

**1,000 [2]**  27/9 51/14
**1.6 [1]**  35/1
**10 [1]**  48/15
**100 percent [1]**  56/22
**14 [2]**  19/6 67/16
**14.629 [1]**  19/5 22/3
**14.631 [1]**  19/10
**15 [1]**  47/25
**1500 [1]**  1/14
**15A [2]**  48/16 49/2
**18 [6]**  26/1 39/4 40/5 47/12 48/2 48/9
**19 [1]**  48/25
**1:23 [1]**  3/1
**1:36 [1]**  1/6

**2**

**20 [1]**  48/25
**20 percent [3]**  36/3 56/21 58/5
**2023 [2]**  1/5 74/10
**21 [1]**  67/16
**21-22 [20]**  6/7 6/16 10/19 11/14 11/18
13/17 13/19 20/12 25/25 31/4 32/5 47/17
47/20 47/23 51/21 52/7 57/21 59/21 64/8
70/25
**21-22a [4]**  33/7 39/15 39/22 52/2
**22 [20]**  6/7 6/16 10/19 11/14 11/18
13/17 13/19 20/12 25/25 31/4 32/5 47/17
47/20 47/23 51/21 52/7 57/21 59/21 64/8
70/25
**224 [1]**  1/21
**22a [4]**  33/7 39/15 39/22 52/2
**23 [1]**  67/16
**23-81139 [1]**  3/3
**23-CV-81139 [1]**  1/2
**24 [1]**  61/25
**25 [3]**  63/5 67/11 68/17

**3**

**3,000 [2]**  27/6 51/14
**30 [1]**  15/11
**31 [1]**  67/12
**32 [3]**  72/9 72/20 72/21
**32789 [1]**  1/18
**32801 [1]**  1/14
**329 [1]**  1/17
**33128 [2]**  2/7 74/12
**33401 [2]**  1/22 2/4
**38 [17]**  4/11 4/13 4/17 6/9 12/23 13/11
14/18 19/4 19/5 19/6 19/10 22/1 23/12
23/14 50/20 51/4 58/20
**38 U.S.C [1]**  19/6
**390 [1]**  1/13

**3.15 [1]**  74/5
**3:23 [1]**  1/6

**4**

**4,000 [4]**  32/21 35/14 51/13 51/14
**4,300 [1]**  32/20
**4-1.6 [1]**  35/1
**4-5.8 [7]**  12/6 24/16 38/12 38/14 53/21
54/4 54/16
**400 [2]**  2/6 74/11
**4114 [1]**  48/3

**5**

**5.8 [7]**  12/6 24/16 38/12 38/14 53/21
54/4 54/16
**50 percent [1]**  36/21
**500 [1]**  2/3
**5904 [1]**  19/6

**7**

**777 [1]**  2/3
**78 [1]**  67/16

**8**

**8,700 [5]**  11/11 27/17 30/16 34/21 40/10
**80 percent [1]**  36/4
**81139 [2]**  1/2 3/3
**815 [1]**  1/21
**88 [1]**  1/7

**A**

**AAA [2]**  9/25 45/20
**ABA [2]**  12/25 13/9
**abandoned [1]**  54/24
**ability [12]**  7/1 14/9 18/13 21/18 23/6
23/17 37/23 39/8 50/24 53/12 56/23
61/23
**able [6]**  19/25 21/24 50/16 58/13 59/9
66/9
**about [43]**  5/10 11/24 12/20 16/5 16/15
17/9 18/9 18/22 19/17 20/3 20/4 21/14
21/17 25/2 25/3 25/4 28/9 29/11 31/25
32/20 33/4 34/11 35/2 35/4 40/9 45/25
46/24 47/2 49/18 53/12 53/22 54/18
56/11 57/3 58/25 59/19 60/17 63/20
63/21 65/8 65/9 66/10 70/19
**above [2]**  48/25 74/8
**above-entitled [1]**  74/8
**absolutely [2]**  25/20 63/18
**accept [2]**  47/11 58/24
**acceptable [1]**  63/18
**access [43]**  7/6 7/9 7/12 7/12 7/15 7/17
7/18 7/19 7/25 8/3 8/14 9/6 10/25 11/1
11/5 11/20 21/23 22/21 24/1 42/17 43/1
59/9 59/12 59/15 59/16 59/17 59/19
59/22 62/4 62/14 63/11 63/13 63/18 64/3
64/7 64/10 64/12 64/13 64/15 65/1 65/6
67/15 71/6
**accidentally [1]**  36/10
**accommodation [1]**  65/22
**accomplish [1]**  66/3
**according [2]**  25/15 50/6
**accreditation [3]**  12/1 20/6 59/4
**accredited [15]**  4/15 4/20 6/7 12/2
12/19 49/2 51/22 52/6 52/23 58/16 58/17
58/19 58/21 59/5 59/8

**accurate [1]**  74/7
**achieve [1]**  56/5
**acknowledges [1]**  65/5
**acknowledging [1]**  63/11
**act [12]**  14/21 16/22 21/3 22/14 22/16
22/21 22/21 46/5 46/7 50/10 50/16 53/7
**acting [2]**  23/21 50/4
**action [7]**  6/5 6/19 14/14 14/17 23/4
64/6 64/7
**actions [1]**  14/15
**activities [1]**  12/11
**actually [31]**  7/13 7/14 8/17 10/15 12/18
13/9 13/13 13/17 14/9 14/22 16/3 18/17
21/2 21/8 22/14 22/18 23/18 27/13 28/11
39/12 47/9 51/25 53/1 55/2 60/10 60/19
61/16 61/23 62/1 67/12 70/17
**ad [1]**  7/10
**ADAM [4]**  1/3 3/2 25/22 47/7
**addition [9]**  12/24 27/15 36/9 39/14
39/16 39/24 42/10 53/18 70/3
**additional [7]**  39/15 42/12 53/15 57/15
58/17 59/3 59/6
**address [7]**  24/11 26/3 28/14 37/9 48/2
48/5 63/6
**addressed [6]**  9/16 30/24 38/10 40/25
45/14 46/9
**addressing [1]**  12/22
**adequate [1]**  61/15
**adjourned [1]**  74/3
**administrative [10]**  21/15 45/20 49/4
49/6 49/21 50/8 57/7 57/8 57/10 57/12
**administrator [1]**  57/3
**admission [1]**  12/15
**admit [5]**  10/3 56/10 71/20 71/22 72/1
**admitted [4]**  5/12 5/14 12/16 32/8
**admitting [1]**  72/11
**advantages [1]**  17/25
**adversary's [1]**  70/12
**advertising [2]**  31/19 31/22
**advice [5]**  7/14 8/13 16/13 37/20 38/8
**advise [4]**  8/4 8/19 29/3 29/13
**advisement [1]**  62/23
**Affairs [1]**  48/18
**affidavit [4]**  67/11 70/14 71/23 72/8
**affidavits [1]**  71/25
**affiliated [10]**  7/7 7/13 8/3 8/12 9/7 20/8
20/17 20/19 20/22 21/2
**affiliation [1]**  47/14
**affirmatively [1]**  6/7
**after [9]**  11/5 11/5 36/17 36/22 42/22
43/20 71/8 71/15 73/11
**afternoon [2]**  3/5 3/13
**again [8]**  21/17 36/19 37/12 42/12 45/21
50/18 52/9 53/9
**against [2]**  10/5 47/13
**agent [3]**  19/12 22/6 49/3
**agree [16]**  14/4 26/18 41/11 44/1 51/13
61/7 64/10 67/1 67/9 68/16 69/6 69/7
70/5 70/9 70/10 71/11
**agreed [6]**  9/11 9/11 20/25 21/1 34/14
64/1
**agreement [11]**  3/24 10/2 17/4 17/5
17/7 25/17 36/15 62/25 67/6 67/7 71/2
**agreements [1]**  45/10
**ahead [1]**  54/3
**ahold [1]**  55/9

**A**

**all [56]** 3/16 7/15 7/20 7/24 10/13 10/23 11/1 12/14 15/18 16/10 22/1 22/4 29/24 29/25 31/23 33/5 40/5 40/7 41/4 42/3 42/8 42/23 43/21 43/24 44/25 46/6 46/11 46/14 46/24 47/2 47/6 48/18 48/24 49/25 50/18 51/1 51/18 52/24 53/5 57/7 58/15 61/23 63/21 64/9 65/2 65/11 66/16 66/19 67/1 67/7 69/1 69/6 70/4 72/1 73/17 74/2
**allow [4]** 9/20 9/25 22/20 64/2
**allowing [2]** 64/5 68/6
**allows [3]** 7/13 11/4 39/6
**almost [1]** 17/9
**alpha [18]** 6/7 10/19 11/14 13/17 13/19 20/13 26/1 31/4 32/5 47/17 47/20 47/24 51/21 52/7 57/21 59/21 64/8 71/1
**alphas [1]** 11/18
**already [4]** 10/10 27/6 62/8 70/21
**also [29]** 3/6 3/11 16/7 17/5 17/7 18/2 18/25 32/4 33/21 35/19 36/11 37/6 39/2 45/7 49/16 53/15 55/20 56/1 59/8 61/3 65/17 67/10 67/12 67/16 68/21 70/24 71/3 71/7 71/22
**although [2]** 39/3 66/4 73/23
**always [3]** 18/2 18/6 36/5
**am [29]** 3/17 8/11 17/20 22/3 33/3 40/8 41/17 43/8 47/22 49/10 49/10 50/23 54/2 56/10 58/13 65/12 65/13 65/18 65/25 66/2 66/5 66/14 67/23 68/1 71/17 72/1 72/14 73/7 73/9
**among [2]** 30/16 34/5
**amount [2]** 58/5 66/11
**analogize [1]** 24/21
**analysis [1]** 70/17
**Andrew [1]** 3/5
**another [7]** 4/19 25/25 31/15 35/11 40/24 60/24 62/2
**answer [8]** 26/4 26/6 32/2 38/4 38/6 55/2 58/14 73/22
**any [43]** 5/22 6/4 6/4 6/13 7/21 7/22 7/23 7/24 11/21 12/12 17/19 18/7 18/10 19/1 20/11 21/4 21/11 22/7 22/9 23/10 25/8 29/23 31/17 32/19 35/13 37/9 37/19 37/19 48/18 48/24 50/3 58/11 60/20 61/8 61/9 64/6 64/7 64/7 64/15 70/16 70/18 71/10 71/10
**anybody [1]** 44/19
**anybody's [1]** 35/8
**anymore [2]** 49/11 49/13
**anyone [4]** 32/4 32/8 52/1 52/2
**anything [9]** 3/25 4/3 17/3 24/19 60/6 64/1 68/5 68/25 69/2
**apparently [6]** 3/23 6/23 22/24 35/18 58/24 72/25
**appeal [12]** 5/18 15/24 16/3 34/10 34/15 34/25 35/2 35/11 56/23 56/25 57/18 60/19
**appeals [8]** 15/20 16/3 16/4 22/23 23/7 57/9 60/20 60/23
**appear [4]** 21/13 21/15 26/22 34/19
**appearance [1]** 5/5
**appearances [3]** 1/11 1/23 3/4
**appeared [1]** 14/24
**appears [1]** 24/24
**appellate [2]** 22/23 58/2

application [1] 67/8
**apply [1]** 28/23
**appoint [2]** 48/6 48/15
**appointed [2]** 43/18 49/1
**appointing [3]** 11/15 11/19 13/18
**appointment [3]** 47/24 48/12 48/13
**appoints [2]** 17/6 17/7
**appreciate [1]** 74/1
**approach [1]** 68/11
**appropriate [8]** 7/14 9/16 13/2 22/7 22/9 28/2 37/25 44/17
**approve [1]** 41/23
**approved [1]** 18/10
**approximately [5]** 11/11 27/9 29/21 30/16 40/10
**approximating [1]** 27/16
**arbiter [2]** 3/24 42/21
**arbitration [22]** 3/23 9/11 9/18 10/2 11/4 24/10 43/13 43/14 44/8 44/24 45/1 45/7 45/10 45/17 45/23 46/3 46/4 46/9 65/17 66/18 67/24 71/19
**arbitrator [12]** 9/9 9/10 9/13 34/9 34/12 34/13 37/6 37/13 37/25 43/18 43/23 63/8
**arbitrator's [1]** 34/7
**arbitrators [2]** 43/16 43/17
**are [170]**
**argue [1]** 72/16
**argued [1]** 22/24
**arguing [3]** 50/1 52/9 65/4
**argument [4]** 24/22 34/20 42/22 47/12
**arise [2]** 29/21 42/12
**arising [1]** 39/11
**Arkansas [1]** 55/23
**around [1]** 30/1
**arrangement [1]** 48/21
**articulate [1]** 24/21
**articulating [1]** 25/8
**as [89]**
**aside [1]** 40/25
**ask [6]** 21/14 43/10 45/21 67/10 71/22 72/2
**asked [6]** 24/13 31/25 32/4 35/10 61/8 61/9
**asking [5]** 33/18 43/23 55/11 56/18 71/4
**aspect [1]** 68/16
**aspects [1]** 66/3
**assessment [1]** 18/7
**assist [3]** 20/10 20/13 57/22
**assistance [2]** 34/7 37/23
**associated [8]** 7/22 20/7 20/17 20/19 20/22 21/2 50/15 57/23
**associates [1]** 17/17
**association [1]** 47/14
**assumed [1]** 18/4
**assuming [3]** 6/24 38/5 44/18
**assumption [1]** 72/10
**ATHERTON [7]** 1/19 1/20 3/8 3/8 24/7 64/17 68/9
**Atherton's [2]** 72/23 73/6
**ATKINSON [2]** 2/2 3/9
**ATO [14]** 7/12 7/20 8/14 8/20 60/14 60/15 60/24 61/2 63/13 63/17 64/12 70/16 70/19 71/6
**attached [1]** 67/5
**attempt [1]** 46/21
**attempting [2]** 31/10 34/5

attention [1] 43/10
**attorney [60]** 4/15 4/25 12/1 12/9 12/12 13/14 13/15 13/20 13/21 14/20 15/21 15/23 16/16 16/17 16/19 16/20 16/25 17/6 17/8 19/12 20/6 20/7 20/8 20/9 22/6 22/11 26/13 29/13 30/10 32/15 32/16 38/15 38/16 38/25 47/3 47/5 47/8 49/3 49/8 49/8 50/5 50/12 50/17 51/5 52/7 52/18 52/20 53/7 56/14 58/4 58/21 59/5 59/5 59/12 59/13 59/22 69/2 69/8 69/10 71/8
**attorney-client [4]** 30/10 38/25 47/3 47/5
**attorneys [16]** 6/1 6/4 7/13 8/3 8/13 9/7 20/5 26/6 35/9 51/6 52/25 58/16 58/17 58/19 59/8 61/11
**authority [4]** 10/21 22/14 23/15 72/13
**authorization [1]** 49/3
**authorize [2]** 6/25 48/24
**authorized [13]** 4/12 4/15 4/20 6/4 22/16 22/20 23/21 39/3 39/15 41/17 52/11 53/7 57/21
**authorizes [1]** 9/24
**automatically [2]** 47/12 60/13
**availability [1]** 71/18
**available [10]** 8/19 21/15 65/17 67/12 68/20 68/22 68/24 69/1 69/3 69/14
**avenue [5]** 1/13 1/17 2/6 45/5 74/11
**average [1]** 16/5
**avoid [1]** 65/23
**awarded [2]** 57/4 57/16
**aware [1]** 32/8
**away [1]** 73/14

**B**

**back [9]** 8/21 8/25 12/6 17/20 23/20 46/13 50/18 53/9 65/2
**badly [1]** 72/16
**balance [3]** 18/10 64/21 64/25
**balancing [1]** 64/23
**bar [37]** 4/3 4/10 4/22 5/14 5/16 5/17 5/21 8/23 11/23 12/4 12/15 12/17 12/22 13/10 13/23 14/5 19/9 24/16 24/19 29/4 30/25 33/14 34/16 34/22 37/15 37/20 37/21 38/2 38/22 38/22 44/16 46/19 50/21 53/16 58/24 64/2 66/3
**based [4]** 14/16 48/19 56/15 60/20
**basically [5]** 34/21 44/16 51/19 57/2 68/25
**basis [9]** 7/10 7/10 8/1 8/6 9/6 9/16 21/18 43/25 61/8
**be [100]**
**Beach [4]** 1/4 1/22 2/4 48/4
**because [52]** 4/11 5/8 8/16 8/23 9/14 11/18 13/11 14/17 14/20 15/13 16/24 20/20 21/19 21/22 22/1 22/11 22/12 23/21 26/12 27/11 29/9 29/19 29/19 33/18 34/9 37/24 41/1 41/14 44/1 44/24 47/7 48/20 50/20 51/1 51/4 51/7 52/10 53/10 53/12 53/13 54/23 55/6 55/8 55/17 57/9 57/10 59/4 59/15 61/13 62/7 65/14 70/18
**become [1]** 59/5
**becoming [1]** 52/7
**been [28]** 7/23 11/18 15/11 20/11 32/2 32/25 35/13 35/19 37/19 38/1 41/7 43/1

**B**

**been... [16]** 43/15 43/22 60/6 60/7 60/8 60/9 60/10 61/1 61/15 63/14 63/15 63/20 65/14 66/9 69/17 70/21
**before [15]** 1/9 4/6 6/10 6/18 10/7 10/23 12/10 24/23 24/24 27/12 31/14 34/19 43/14 45/20 61/20
**behalf [7]** 3/6 16/22 20/15 22/17 32/22 50/4 50/10
**behavior [2]** 12/11 13/2
**behind [1]** 9/5
**being [6]** 24/22 32/12 35/10 38/15 63/10 72/13
**belief [1]** 47/3
**believe [25]** 9/15 10/15 26/5 26/14 29/17 31/23 32/24 33/2 33/9 39/9 39/10 40/3 40/17 42/20 43/6 44/4 44/18 46/8 47/1 50/8 52/5 58/16 62/13 70/6 70/16
**believed [1]** 41/9
**believes [3]** 18/19 36/24 56/1
**belongs [1]** 14/17
**benefit [3]** 32/12 56/22 59/10
**benefits [19]** 8/18 15/22 15/25 15/25 16/10 32/22 48/18 56/7 56/9 56/15 56/19 56/21 57/4 57/15 58/1 58/3 58/4 58/5 60/21
**besides [1]** 40/22
**best [5]** 14/21 22/19 42/18 43/16 45/2
**better [3]** 45/8 60/23 62/18
**between [11]** 4/25 12/3 13/23 14/18 53/23 54/7 54/9 54/9 54/14 64/22 68/19
**beyond [2]** 54/17 57/10
**bifurcated [1]** 47/4
**bit [8]** 11/20 24/8 35/14 36/18 41/14 51/17 56/11 62/23
**Blind [1]** 19/19
**blocks [1]** 41/8
**board [3]** 16/2 16/4 57/9
**Bob [1]** 3/12
**bodies [1]** 23/5
**body [1]** 22/23
**bono [1]** 57/24
**both [24]** 3/16 4/6 9/11 25/7 25/9 26/14 29/2 35/14 35/15 35/21 37/14 40/14 40/15 41/12 42/10 44/10 46/8 49/8 65/20 65/21 66/10 71/16 73/12 73/12
**bothered [1]** 42/5
**box [10]** 20/12 26/1 39/4 40/5 47/12 47/25 48/2 48/3 48/5 48/11
**branch [1]** 60/11
**briefed [2]** 4/13 66/10
**briefing [2]** 42/22 66/9
**brings [1]** 22/12
**BRITTANY [1]** 1/20
**broader [2]** 42/1 42/25
**buddy [2]** 7/24 61/3
**buy [1]** 67/18
**buying [1]** 63/22
**bypass [1]** 64/6

**C**

**calculate [1]** 61/25
**calculus [1]** 37/1
**call [8]** 16/7 26/10 28/19 28/20 28/20 30/2 46/3 55/4
**called [5]** 3/1 16/2 28/22 28/23 57/1

**calling [3]** 29/22 39/20 42/5
**calls [7]** 8/2 8/9 8/11 16/12 28/16 37/8 52/17
**came [4]** 9/14 30/21 31/17 52/12
**Campos [1]** 49/12
**can [54]** 5/4 6/13 8/5 8/9 8/13 13/12 14/21 14/21 15/19 16/4 16/22 19/20 20/13 21/3 22/21 24/11 28/1 29/19 31/7 32/5 33/2 37/13 37/24 38/4 38/8 39/17 41/18 41/19 41/21 43/16 46/5 46/7 47/22 48/23 56/13 56/18 57/19 58/9 59/22 60/19 61/11 62/4 62/23 65/1 65/18 67/1 67/7 67/10 67/24 68/7 68/12 69/9 71/11 73/18
**can't [7]** 13/16 15/6 19/21 45/24 48/7 59/24 60/4
**candid [1]** 38/21
**candidly [2]** 32/8 34/5
**candor [1]** 46/6
**cannot [2]** 6/5 19/24 20/19
**cap [1]** 18/21
**capacity [1]** 53/4
**card [2]** 59/11 59/13
**carefully [1]** 66/8
**case [55]** 1/2 3/1 3/2 3/3 5/6 5/15 7/10 7/10 8/1 8/1 15/16 15/20 16/4 16/8 16/16 18/17 19/3 20/11 22/13 22/13 22/22 24/23 26/19 27/12 29/11 31/14 31/23 32/6 32/11 33/18 33/20 35/15 37/6 37/25 38/3 39/1 39/3 39/7 39/11 40/17 41/18 43/6 43/15 44/17 46/5 60/14 60/25 62/3 62/18 65/24 66/17 69/19 70/13 72/16 73/24
**cases [19]** 6/5 9/19 9/20 14/15 15/9 15/17 15/18 22/14 24/22 27/25 32/3 35/25 36/1 36/11 37/2 50/23 52/22 54/25 56/2
**centered [1]** 30/1
**certain [1]** 44/3
**certainly [5]** 34/13 37/13 47/15 55/21 70/17
**certification [1]** 28/2
**certify [1]** 74/7
**cetera [2]** 41/9 41/9
**CFR [3]** 19/5 19/6 19/10
**challenge [1]** 30/24
**challenges [1]** 40/25
**challenging [1]** 23/12
**chance [1]** 15/10
**change [5]** 22/7 22/9 31/7 39/18 51/25
**changed [1]** 11/17
**changes [1]** 4/14
**charge [2]** 19/24 19/25
**choice [12]** 10/15 13/4 28/4 29/14 29/14 29/24 44/12 46/25 51/2 51/2 51/23 55/7
**choices [1]** 62/15
**choose [1]** 29/5
**chooses [4]** 5/2 6/6 10/18 20/23
**choosing [1]** 10/16
**chose [1]** 9/17
**chosen [1]** 51/20
**CHRISTOPHER [1]** 1/12
**circumstance [3]** 9/1 15/7 16/24
**circumstances [2]** 35/5 39/11
**cite [1]** 9/20
**cited [1]** 18/18

**claim [16]** 18/2 22/4 44/12 54/24 55/12 56/13 56/13 56/14 56/15 56/18 56/20 57/22 57/25 61/5 69/16 69/17
**claimant [5]** 12/10 20/4 20/6 20/7 20/10
**claimant's [2]** 20/8 47/24
**claimed [1]** 17/15
**claiming [1]** 17/25
**claims [10]** 10/23 15/18 20/15 21/3 33/5 48/17 51/9 53/14 56/8 57/19
**CLE [2]** 59/1 59/6
**clear [7]** 3/16 26/8 34/22 38/12 38/17 38/23 56/4
**client [119]**
**client's [7]** 23/5 30/1 39/19 40/2 47/2 59/23 67/4
**clients [88]**
**clients' [19]** 22/10 22/18 22/20 26/23 31/9 31/12 34/18 41/13 41/15 42/1 42/2 42/8 42/23 47/21 51/8 62/15 64/10 64/13 64/16
**close [1]** 73/17
**co [2]** 3/9 24/7
**co-counsel [2]** 3/9 24/7
**code [1]** 46/3
**coercive [2]** 14/14 14/16
**collect [1]** 51/18
**collude [1]** 34/17
**come [8]** 17/2 26/7 28/12 31/17 31/21 43/9 65/22 66/15
**comes [7]** 13/2 23/20 27/19 28/13 50/18 51/20 54/13
**coming [2]** 8/1 8/21 16/12 53/9
**commenced [1]** 43/15
**committed [1]** 45/22
**common [2]** 36/6 65/21
**communicated [2]** 7/20 29/23
**compel [3]** 44/8 44/23 45/17
**compels [1]** 45/23
**compensable [1]** 58/1
**compensation [3]** 8/7 57/23 58/4
**competent [2]** 33/8 64/22
**competently [2]** 53/17 53/20
**complaint [7]** 5/13 5/18 44/7 44/22 66/23 70/21 71/21
**complete [2]** 15/24 32/10
**complicated [4]** 30/7 33/17 34/4 36/18
**comply [3]** 12/2 14/5 14/12
**conceded [2]** 30/15 31/4
**concept [9]** 4/9 8/21 9/18 12/1 12/5 13/3 13/5 19/10 64/18
**concepts [1]** 18/20
**concern [3]** 33/13 42/13 67/17
**concerning [4]** 22/2 22/4 68/16 71/7
**concerns [3]** 29/25 42/12 57/2
**conclusion [3]** 66/1 68/21 68/23
**conditions [2]** 48/12 48/13
**conduct [3]** 3/19 12/12 13/5
**conducted [1]** 22/5
**conducting [1]** 8/8
**conference [1]** 45/20
**conferring [1]** 68/13
**confidentiality [6]** 34/18 34/21 35/8 53/11 64/18 64/23
**confirmation [1]** 62/15
**confirmed [4]** 27/7 27/9 27/11 63/8
**confirming [1]** 30/22

**C**

**conflict [12]** 12/3 13/23 14/18 24/14 26/11 26/15 26/16 29/18 38/21 38/22 50/21 68/19
**conflicts [1]** 24/19
**conformance [1]** 29/3
**conformity [1]** 27/12
**Congress [7]** 18/4 18/14 18/19 44/12 44/14 46/17 66/2
**Congress's [1]** 44/12
**congressionally [1]** 18/10
**connected [4]** 56/16 56/17 56/22 60/22
**connection [2]** 21/3 63/23
**consent [4]** 10/7 25/15 31/9 42/9
**consents [2]** 20/7 26/25
**consider [7]** 30/9 37/6 67/2 67/11 68/5 68/6 68/15
**consideration [1]** 42/23
**consistent [4]** 14/3 31/12 33/24 35/7
**constant [1]** 17/22
**constituency [1]** 15/14
**constitutionality [1]** 23/12
**consulted [1]** 31/15
**contact [3]** 29/9 32/19 38/1
**contained [1]** 71/23
**contains [1]** 69/18
**contemplated [1]** 27/2
**contemplates [1]** 26/22
**contested [1]** 17/23
**context [5]** 18/18 22/13 24/22 50/22 58/15
**contingency [1]** 36/1
**contingent [1]** 36/11
**continue [11]** 4/24 5/4 5/6 21/3 23/18 23/25 24/2 39/8 39/10 55/12 66/17
**continued [2]** 2/1 7/8
**continues [2]** 9/3 22/10
**continuing [1]** 21/18
**contract [2]** 36/21 54/8
**contractual [2]** 53/22 54/6
**contrary [2]** 37/11 42/7
**controversy [1]** 72/12
**conundrum [8]** 29/19 30/6 30/7 30/18 33/17 39/25 39/25 53/10
**conundrums [5]** 24/9 26/17 26/18 29/21 33/18
**convenient [1]** 69/11
**cooperating [1]** 73/2
**cooperation [2]** 71/4 73/6
**copy [1]** 64/5
**corporate [1]** 3/11
**correct [9]** 6/15 11/14 11/25 12/21 13/25 14/2 19/22 27/22 52/21
**correctly [1]** 42/20
**correspondence [4]** 7/21 60/4 60/5 60/17
**cost [1]** 63/23
**costs [8]** 36/11 36/12 36/13 36/18 37/4 37/4 37/9 37/11
**could [22]** 3/4 3/24 4/24 8/17 9/10 21/14 23/1 26/12 26/15 35/6 39/11 44/19 44/23 45/3 45/7 45/9 45/16 45/25 55/1 57/11 59/18 69/24
**couldn't [2]** 9/9 73/18
**counsel [20]** 3/9 3/11 21/5 24/7 24/20 26/1 26/19 26/21 29/5 29/8 29/16 33/2

37/22 40/4 41/5 44/7 46/8 46/23 51/23 68/13
**counterbalancing [1]** 71/12
**couple [1]** 3/15
**course [7]** 32/2 38/2 45/9 47/21 49/22 61/5 68/23
**court [31]** 1/1 2/6 3/1 5/17 5/19 9/14 23/7 24/9 24/12 24/13 24/23 24/24 25/9 34/20 43/20 43/23 44/15 44/17 45/15 45/23 50/25 63/8 67/10 67/10 69/9 71/20 71/22 72/1 72/6 72/11 74/11
**courts [3]** 18/15 45/9 46/18
**covered [1]** 62/17
**create [1]** 29/25
**created [2]** 60/8 70/11
**creates [3]** 54/5 54/8 54/12
**credentials [1]** 59/9
**criminal [6]** 15/1 16/16 16/16 16/17 16/19 22/13
**CRR [2]** 2/5 74/10
**CSR [2]** 2/5 74/10
**curious [1]** 20/2
**current [1]** 69/17
**currently [1]** 8/2
**CV [1]** 1/2

**D**

**Dan [2]** 70/14 70/19
**date [1]** 11/10
**Datura [1]** 1/21
**day [3]** 46/7 61/20 61/25
**days [4]** 15/11 45/19 46/2 61/19
**deadline [2]** 16/12 61/14
**deal [6]** 4/3 5/21 28/10 37/15 45/3 45/25
**dealing [8]** 3/20 12/1 12/4 14/15 41/7 53/11 56/9 63/22
**deals [2]** 6/22 48/21
**dec [1]** 14/15
**decent [1]** 15/10
**decide [4]** 37/13 37/24 66/6 73/11
**decision [2]** 56/12 56/24
**decisions [1]** 66/19
**declaration [2]** 66/23 68/18 69/8 70/3 70/23 72/23 73/6
**declarations [1]** 71/25
**deemed [1]** 8/24
**default [13]** 12/4 13/3 13/10 13/24 15/5 15/6 37/16 37/17 46/17 51/3 54/18 54/19 62/6
**defaulted [1]** 8/24
**defaults [1]** 12/6
**defendant [9]** 1/7 1/19 2/2 15/2 16/18 16/19 24/7 24/15 67/9
**defendant's [5]** 38/20 43/7 68/10 68/17 72/21
**Defendant's 32 [1]** 72/21
**defendants [1]** 24/4
**defense [5]** 14/16 16/16 22/13 46/23 72/9
**defense's [1]** 50/6
**defer [1]** 12/14
**defines [2]** 54/5 54/12
**definitely [1]** 66/5
**delay [1]** 65/1
**delivered [1]** 32/13
**demand [1]** 73/6

**demands [1]** 17/23
**demonstrates [1]** 63/4
**denial [1]** 15/24
**denies [1]** 56/21
**depart [1]** 54/16
**departed [4]** 4/19 11/10 36/18 38/16
**departing [4]** 4/25 5/21 23/17 38/15
**Department [2]** 48/18 60/12
**departs [2]** 20/18 24/17 26/20
**departure [1]** 29/4
**deposition [4]** 30/15 31/5 32/1 68/14
**described [2]** 24/14 35/1
**designate [3]** 23/6 72/8 72/11
**designated [3]** 11/13 19/21 35/19
**designates [1]** 20/13
**designating [1]** 72/10
**Despite [1]** 20/25
**determination [3]** 15/22 15/23 35/12
**determinations [1]** 44/16
**determine [5]** 32/12 43/24 45/15 65/13 69/19
**determined [1]** 46/8
**determining [2]** 57/15 70/13
**detriment [1]** 13/16
**developments [1]** 37/5
**did [12]** 11/7 13/6 17/18 18/21 31/16 31/17 31/18 38/21 40/5 45/12 45/15 61/24
**didn't [5]** 47/21 52/13 53/25 66/2 73/24
**difference [4]** 6/3 25/1 39/4 64/22
**different [15]** 4/21 5/7 5/10 8/22 16/1 16/23 19/5 19/16 34/15 41/14 46/24 48/11 60/21 60/21 60/22
**differently [2]** 13/21 41/15
**difficult [3]** 37/2 55/9 61/20
**diligence [1]** 33/23
**direct [4]** 29/19 32/18 38/9 53/1
**directive [2]** 30/1 42/9
**directives [2]** 7/21 60/17
**directly [5]** 8/9 24/11 26/4 41/19 42/11
**disability [8]** 56/9 56/16 56/16 56/18 56/19 56/22 60/22 61/4
**disabled [1]** 15/14
**disclose [2]** 35/10 64/19
**disclosures [1]** 34/1
**discontinuing [1]** 71/5
**discuss [2]** 41/21 68/12
**discussion [7]** 46/23 47/2 47/7 53/10 57/2 63/20 63/21
**discussions [2]** 50/19 50/20
**dismiss [4]** 44/21 65/15 65/24 73/22
**displace [1]** 66/2
**dispositive [1]** 18/6
**dispute [4]** 21/25 51/23 68/23 70/18
**disputed [3]** 18/4 67/21 72/9
**disputes [1]** 45/21
**disruptive [1]** 18/7
**distance [1]** 73/25
**distinction [1]** 25/7
**DISTRICT [5]** 1/1 1/1 1/10 5/11 5/12
**disturbing [1]** 18/10
**do [66]** 4/3 6/12 13/10 13/15 14/8 14/21 15/8 15/9 15/17 15/18 21/10 22/19 23/10 23/21 26/4 27/18 28/1 28/5 28/10 31/10 32/13 33/22 35/23 37/3 37/3 38/8 39/8 41/3 42/4 42/7 42/20 42/20 45/1 45/2

**D**

**do... [32]**  45/9 46/14 46/14 46/14 48/23 50/11 53/7 55/19 56/4 58/9 58/11 58/21 58/25 59/1 59/1 61/7 62/11 62/16 62/16 62/16 62/18 64/1 64/14 66/3 66/3 67/1 68/4 68/5 68/11 70/10 71/13 72/4

**docket [5]**  43/23 63/5 67/11 67/12 67/16

**document [6]**  31/5 39/17 39/18 43/22 54/1 72/5

**documentation [1]**  30/22

**documents [6]**  25/23 25/25 31/3 35/17 41/4 72/12

**does [39]**  7/18 7/19 10/6 15/6 21/14 23/13 23/14 23/17 25/21 27/20 28/12 32/4 32/14 33/9 33/10 33/11 34/3 34/13 35/7 38/15 38/16 39/8 39/8 39/10 40/18 40/20 41/20 48/3 48/5 50/21 51/12 52/21 54/15 54/16 54/25 57/6 64/8 68/24 74/2

**doesn't [21]**  6/25 10/18 11/20 14/22 15/21 21/13 25/3 27/3 34/3 34/9 34/12 34/13 36/5 41/17 44/13 44/14 44/22 54/14 55/7 58/7 59/16

**doing [6]**  33/20 41/14 42/8 45/22 68/2 68/3

**don't [72]**  4/3 5/10 5/15 5/20 5/23 8/3 8/23 9/2 10/15 10/17 12/6 12/16 12/18 13/3 13/7 13/9 14/22 14/24 15/5 17/2 18/21 21/10 21/11 23/10 23/11 26/19 29/17 30/20 31/23 33/2 34/17 35/22 37/10 38/8 38/9 39/9 41/24 42/12 44/23 45/3 45/8 46/6 46/7 51/2 51/23 52/18 54/19 54/22 55/1 55/6 56/6 56/14 59/12 60/12 62/10 62/21 63/15 64/10 64/15 64/19 65/15 66/4 67/20 67/21 67/23 70/6 70/16 70/18 71/14 71/14 72/15 72/24 72/24

**DONALD [1]**  1/9

**done [6]**  16/8 20/11 37/1 53/3 63/7 69/19

**doubt [1]**  66/13

**down [7]**  21/8 35/21 47/25 51/13 68/1 72/14 73/7

**download [1]**  64/5

**drafts [1]**  61/6

**drawn [1]**  18/3

**Drive [1]**  2/3

**driven [2]**  37/12 58/15

**due [1]**  58/3

**during [7]**  15/16 16/7 25/24 26/8 27/17 28/4 55/17

**duty [5]**  33/25 34/22 35/3 35/10 53/17

**dwindled [1]**  11/20

**E**

**each [7]**  4/12 4/15 4/21 40/12 52/22 62/15 65/22

**earlier [1]**  15/1

**easy [2]**  26/21 28/14

**effectively [2]**  63/5 63/10

**efficient [1]**  69/25

**effort [1]**  37/19

**efforts [1]**  35/5

**eight [1]**  52/18

**either [13]**  5/13 9/21 33/2 37/19 56/21 59/13 60/9 62/10 68/2 71/15 72/16 73/7 73/21

elements [1] 6/22

**else [6]**  3/25 14/3 18/25 21/22 52/2 59/16

**email [1]**  61/11

**emails [2]**  29/23 41/8

**emergency [1]**  71/6

**emergent [1]**  39/11

**employed [4]**  20/8 49/11 49/12 49/14

**employee [2]**  50/9 57/6

**employees [8]**  17/12 17/15 49/4 49/6 49/21 49/24 50/1 69/15

**employment [2]**  9/25 9/25

**end [1]**  35/24

**ends [1]**  20/23

**engage [1]**  12/10

**engagement [6]**  16/21 17/1 25/19 25/20 37/11 41/5

**engaging [1]**  10/14

**enough [1]**  66/24

**ensure [1]**  42/22

**enter [2]**  9/14 73/20

**entered [2]**  34/24 35/6

**entertain [1]**  18/9

**entirely [4]**  15/15 49/10 58/13 70/6

**entitled [1]**  74/8

**entrenched [2]**  51/10 51/11

**Entry [4]**  63/5 67/11 67/12 67/16

**escaped [1]**  43/11

**especially [2]**  14/9 16/12

**Esquire [1]**  49/14

**essentially [5]**  34/16 35/5 35/11 46/19 70/2

**establish [3]**  13/1 13/6 66/24

**established [1]**  47/4

**et [2]**  41/9 41/9

**et cetera [1]**  41/9

**ethical [11]**  24/9 29/18 29/25 30/18 33/15 39/25 40/25 42/19 43/21 46/19 53/10

**ethics [9]**  26/17 29/25 30/4 34/4 36/24 37/21 38/2 39/25 54/2

**ethnics [1]**  35/12

**evaluating [1]**  69/15

**even [25]**  4/24 6/10 8/10 9/6 12/18 15/16 16/11 18/19 21/25 23/23 26/1 29/17 29/18 30/7 32/7 40/16 44/23 49/11 50/24 53/9 57/8 58/16 61/24 64/12 69/14

**event [2]**  50/3 64/15

**eventually [3]**  7/8 52/19 52/19

**ever [3]**  25/12 32/8 52/2

**every [3]**  24/23 40/12 69/17

**everybody [1]**  59/16

**everyone [1]**  33/14

**everything [5]**  14/3 36/7 67/3 69/18 70/7

**evidence [9]**  4/7 16/10 33/21 35/13 61/4 62/17 62/23 66/22 66/24

**evidentiary [1]**  8/6

**exactly [2]**  28/15 67/14

**exam [8]**  8/7 8/12 8/16 8/17 28/6 60/25 61/1

**example [16]**  14/25 16/15 19/23 26/10 26/11 27/1 28/6 28/22 29/6 29/13 30/2 31/25 34/19 61/18 69/15 69/20

**examples [3]**  8/5 8/6 15/1

**exams [1]**  7/22

exceed [1] 64/6

**except [1]**  67/3

**exclude [1]**  38/16

**exclusive [1]**  23/15

**exclusively [1]**  22/5

**exclusivity [1]**  41/20

**executed [1]**  51/24

**exemplar [5]**  26/9 47/20 67/3 70/25 71/1

**exercising [1]**  18/7

**exhaust [1]**  21/11

**exhaustion [1]**  57/11

**Exhibit [5]**  47/23 68/17 70/24 70/25 71/1

**Exhibit 1 [1]**  70/24

**Exhibit 2 [2]**  70/25 71/1

**Exhibit P-1 [1]**  47/23

**exhibits [6]**  68/8 68/9 68/10 70/20 71/7 71/9

**existence [2]**  6/10 22/1

**existing [1]**  33/1

**expectation [2]**  31/13 41/2

**expected [1]**  12/2

**expedite [2]**  43/15 45/21

**expedited [3]**  9/16 43/25 70/22

**expeditiously [1]**  44/2

**expert [1]**  56/10

**explain [2]**  30/4 69/9

**explained [3]**  30/14 42/3 67/17

**explaining [1]**  67/11

**explains [1]**  67/14

**explanation [1]**  70/15

**explore [1]**  38/21

**exposure [3]**  35/15 35/22 42/16

**express [1]**  24/9

**extent [2]**  48/22 49/18

**extract [1]**  65/2

**F**

**face [1]**  30/18

**fact [7]**  19/23 20/25 22/3 24/8 29/18 39/10 61/15

**facts [1]**  72/8

**factual [1]**  37/5

**fair [1]**  66/11

**fairly [1]**  73/17

**falls [1]**  4/10

**Fanning [3]**  49/14 52/24 53/5

**far [6]**  35/21 38/14 41/20 44/14 68/20 70/15

**fashion [1]**  45/9

**fault [1]**  41/25

**federal [63]**  3/17 3/18 4/9 5/24 5/25 8/21 9/15 12/4 12/8 14/6 14/13 14/16 16/24 17/22 17/23 17/24 17/25 18/3 18/5 18/5 18/7 18/9 18/11 18/15 19/14 21/19 22/11 22/11 23/25 24/2 24/14 26/12 26/17 27/4 29/18 34/2 34/3 41/1 44/12 44/15 44/17 44/22 45/9 46/16 46/18 47/8 47/10 51/8 51/10 51/12 51/24 52/10 53/13 55/20 55/21 55/25 62/7 66/4 66/6 66/13 67/23 71/18 74/11

**fee [13]**  17/4 17/4 17/7 19/24 20/1 25/16 35/23 35/24 36/1 36/14 48/21 67/6 71/2

**feel [1]**  56/11

**fees [7]**  18/21 18/22 35/23 36/9 36/10

**F**

fees... [2]  36/17 36/22
few [2]  48/20 56/24
figure [1]  65/12
figured [1]  43/21
figuring [1]  27/18
file [27]  5/13 5/18 5/18 8/3 14/25 20/20
26/24 28/1 29/16 30/3 39/22 41/23 51/21
56/12 56/13 56/14 56/18 58/7 59/21
59/23 61/8 61/9 61/13 61/17 61/18 61/19
69/3
filed [24]  7/23 11/16 11/18 13/18 23/4
27/12 32/22 32/25 33/7 37/22 41/22
43/14 43/22 43/22 44/7 44/7 60/7 60/10
61/1 68/25 69/2 69/13 71/15 72/13
files [38]  5/21 7/3 7/7 7/24 16/13 21/23
22/18 22/21 23/21 23/24 26/23 27/13
30/19 31/8 32/7 33/19 33/23 42/3 42/7
42/14 43/2 51/1 51/8 54/11 60/3 61/24
62/1 62/5 63/12 63/20 64/1 64/5 64/7
64/7 64/11 64/13 64/16 69/23
filing [9]  5/5 9/5 13/14 16/9 57/18 57/20
57/22 57/25 63/3
filings [2]  17/14 71/7
filled [2]  50/1 52/1
final [1]  65/25
finally [2]  43/16 65/13
financing [1]  63/22
find [4]  45/5 62/20 62/25 72/7
finding [1]  65/9
Fine [1]  73/11
firm [84]
firms [8]  4/14 29/2 29/22 31/7 41/12
42/10 46/19 53/23
first [9]  3/21 15/22 23/9 24/13 26/2
30/18 45/19 51/2 70/25
fit [1]  27/3
FL [6]  1/14 1/18 1/22 2/4 2/7 74/12
Flagler [1]  2/3
flipped [1]  51/4
flips [1]  5/8
Floor [1]  1/17
FLORIDA [26]  1/1 1/4 4/10 4/21 5/11
5/13 5/16 5/20 8/23 12/4 13/6 13/10
13/23 14/5 14/18 14/20 19/16 29/4 30/25
37/21 38/2 50/21 53/16 53/18 54/17 64/2
flsd.uscourts.gov [2]  2/7 74/12
focus [1]  71/18
focused [1]  41/24
folks [9]  15/12 15/14 17/17 17/17 20/18
33/4 50/3 51/20 60/2
follow [2]  36/7 53/25
following [2]  48/13 49/3
forces [1]  46/9
foregoing [1]  74/7
forge [1]  46/14
form [30]  6/7 6/16 6/23 6/24 6/24 10/19
11/14 11/18 13/17 13/19 20/12 21/9 26/1
31/4 31/6 32/5 39/14 40/2 40/11 40/12
40/13 47/17 47/20 47/23 50/12 51/21
59/21 64/8 67/3 70/25
forms [4]  11/8 35/19 37/18 52/2
forth [1]  72/8
forum [3]  18/1 18/5 18/9
forward [5]  11/4 36/16 45/2 46/15 62/21
four [1]  37/22

**F**

frankly [2]  7/11 72/15
Friday [2]  43/17 45/19
front [2]  10/20 65/4
full [3]  16/3 42/22 66/9
full-on [1]  16/3
fully [1]  44/4
fund [8]  33/23 63/21 63/21 67/17 67/22
68/2 68/16 71/16
fundamental [1]  12/3
funny [1]  54/22
further [6]  27/23 33/25 39/24 42/16
54/18 69/9
furtherance [1]  42/15
future [1]  54/21

**G**

Galardi [2]  1/20 3/8
gap [1]  37/15
Gardens [1]  48/4
gave [2]  10/22 19/23
General [1]  21/5
generally [2]  36/14 70/10
get [27]  4/6 9/6 15/21 15/23 34/17 35/23
37/19 44/15 45/1 46/18 52/8 52/9 55/9 56/3
56/7 59/13 60/4 62/4 62/4 65/19 66/9
67/21 69/24 69/25 71/14 71/15 73/18
73/24
gets [2]  8/8 56/25
getting [3]  18/15 43/5 61/17
give [11]  7/14 7/19 8/5 8/13 33/14 38/8
42/13 45/12 45/13 61/18 67/24
given [8]  7/11 11/2 19/1 60/20 61/19
63/12 63/13 65/6
giving [3]  28/1 42/2 64/13
go [22]  5/2 8/11 8/16 8/17 10/17 11/4
23/8 27/10 44/14 47/13 50/24 53/1 54/3
59/3 59/6 59/8 61/21 66/8 66/18 68/1
72/14 73/7
goes [4]  38/14 41/20 47/16 54/17
going [22]  13/7 15/8 17/20 22/3 28/7
29/5 35/21 36/16 43/18 50/10 55/14
62/19 62/22 65/11 65/13 65/19 65/25
66/6 66/12 71/17 72/14 73/7
Golan [3]  49/15 52/24 53/5
gone [1]  4/19
good [8]  3/5 3/13 10/13 12/17 31/21
72/18 73/12 74/2
GORDON [97]
got [6]  3/15 5/12 5/13 10/10 19/7 28/17
govern [1]  54/14
governs [1]  54/15
Grable [1]  17/21 24/15
grant [4]  9/10 10/4 10/21 23/15
granted [3]  7/6 8/1 11/5
great [2]  24/21 73/19
greater [1]  57/3
Greig [5]  37/9 58/18 61/11 69/22 71/4
ground [2]  62/17 65/21
grounds [1]  13/1
group [1]  23/7
groups [1]  23/2
grow [1]  67/19
guess [21]  3/15 4/2 5/23 14/24 15/13
17/20 18/12 23/1 23/4 25/12 33/6 37/14
37/15 44/10 45/3 50/2 55/11 67/2 67/21
69/1 69/2

guys [1]  17/2

**H**

had [12]  7/6 11/12 11/13 24/12 37/7
38/18 41/5 43/8 43/9 52/2 69/22 71/23
hadn't [1]  65/14
Haines [2]  1/12 1/16
half [5]  15/11 15/12 27/16 29/21 32/21
hand [3]  26/2 35/18 44/18
handle [2]  39/3 41/18
handled [1]  44/2 58/6
handling [4]  24/8 24/10 32/18 35/24
happen [6]  8/10 13/8 28/7 44/4 54/25
63/16
happens [2]  14/19 39/2
hard [4]  18/14 44/16 46/16 46/17
harm [2]  66/25 66/25
harmed [1]  42/2
harmful [1]  23/5
Hartley [3]  49/8 52/24 53/5
has [67]  4/19 6/17 6/19 6/23 6/24 7/1
7/17 11/19 20/11 22/14 22/18 23/23
27/12 29/1 30/15 32/17 32/21 32/25 33/7
35/13 36/7 36/12 37/1 37/5 37/7 37/19
40/3 41/20 41/22 41/24 42/11 43/1 43/22
45/23 51/7 51/23 52/1 53/3 56/23 57/21
58/17 58/18 59/15 59/17 60/6 60/7 60/8
60/9 60/9 60/10 61/1 61/14 61/15 61/16
63/15 63/23 64/4 64/25 64/25 67/3 69/14
69/14 69/16 69/16 69/17 70/21 72/16
have [134]
haven't [2]  27/21 32/21
having [8]  10/23 32/18 33/20 38/17 47/7
50/19 50/20 53/10
he [70]  6/23 6/23 7/1 7/17 7/18 9/3 10/6
10/12 11/12 11/13 14/4 20/17 20/23
21/19 22/21 25/18 28/1 28/6 28/20 30/17
30/17 31/1 31/3 31/4 31/4 31/7 31/8
32/6 32/8 32/8 32/16 32/17 33/7 33/9
36/22 39/5 39/5 40/11 41/17 41/18 41/20
41/22 41/24 42/4 42/4 42/5 42/6 47/13
48/1 48/1 48/8 49/22 51/6 51/7 51/13
52/22 55/24 59/18 59/22 60/4 61/8 68/4
71/8 71/15 72/2 72/10 72/25 73/17 73/24
74/2
he's [8]  10/10 21/21 33/7 36/25 39/2
42/8 49/11 53/3
head [2]  5/9 51/4
heads [1]  51/18
hear [14]  4/5 8/24 9/2 10/17 13/3 13/7
15/11 15/15 24/4 54/19 54/23 55/6 55/13
55/14
heard [9]  15/12 29/24 31/7 34/8 42/14
51/15 55/3 55/13 73/17
hearing [12]  1/9 3/14 8/1 16/9 28/18
29/10 43/24 57/5 57/13 61/14 61/19
61/20
hearings [2]  32/18 53/2
heart [1]  43/6
Heather [1]  49/8
hedge [8]  33/23 63/21 63/21 67/17
67/22 68/2 68/16 71/16
help [4]  21/4 28/6 56/25 61/4
helpful [2]  28/25 69/11
henceforth [1]  66/9

**H**

**her** [1] 70/2

**here** [36] 3/9 3/17 5/8 6/9 9/21 11/3
12/20 13/16 14/17 16/23 16/24 21/7
21/19 22/19 23/10 25/7 26/16 27/3 27/5
27/8 29/17 30/6 30/14 38/12 40/25 42/19
47/25 48/22 49/20 50/15 51/4 51/12
64/21 64/24 65/4 65/8 69/8

**hereby** [2] 44/18 74/7

**herring** [1] 63/25

**hey** [3] 28/17 60/18 61/12

**high** [1] 43/5

**higher** [4] 16/2 57/1 57/2 57/14

**higher-level** [4] 16/2 57/1 57/2 57/14

**him** [22] 6/17 7/7 7/9 7/20 10/7 11/15
17/8 20/19 21/23 23/6 23/16 25/15 31/8
32/6 32/7 41/25 52/4 52/23 56/6 57/22
68/5 74/1

**hired** [2] 42/4 58/17

**hires** [1] 30/11

**hiring** [2] 30/22 31/13

**his** [27] 6/2 6/2 7/1 7/13 8/12 17/10
20/20 21/22 23/17 23/25 28/14 28/16
30/15 31/5 31/6 31/11 31/25 32/16 41/16
42/24 43/17 53/13 53/17 53/20 59/19
71/24 72/2

**historically** [1] 57/20

**HLR** [1] 57/1 57/13

**hoc** [2] 5/14 7/10

**Hoffman** [12] 17/16 27/10 27/14 29/9
37/9 47/7 52/24 53/4 58/18 61/11 69/21
71/4

**hold** [2] 62/12 67/14

**hold-up** [2] 62/12 67/14

**Honestly** [1] 55/1

**honor** [13] 3/5 4/8 11/23 12/23 41/11
42/11 45/10 46/24 51/12 62/19 62/22
65/4 68/15

**Honor's** [1] 26/4

**HONORABLE** [1] 1/9

**honors** [1] 29/15

**hook** [2] 33/12 33/14

**hope** [1] 65/6

**hoping** [1] 56/5

**hospital** [1] 56/8

**hotline** [2] 38/2 38/7

**hours** [2] 59/1 61/25

**housed** [1] 17/10

**how** [39] 5/15 5/21 8/18 11/7 11/7 15/5
15/8 15/9 18/9 18/22 23/14 24/23 25/8
27/1 28/5 28/10 28/15 30/5 31/16 35/23
36/14 36/17 37/15 37/17 44/17 45/3
45/11 45/25 46/5 46/7 46/17 47/3 50/21
54/25 57/6 58/4 61/21 63/2 63/6

**hundreds** [2] 30/17 32/2

**hypothetical** [3] 28/15 28/16 28/18

**I**

**I'd** [1] 48/12

**I'm** [1] 55/22

**idea** [4] 10/13 36/17 38/22 58/11

**identified** [3] 31/1 31/3 31/4

**identify** [1] 28/5

**idiosyncrasies** [1] 26/20

**illustrate** [1] 62/24

**illustrated** [1] 28/15

**imagine** [3] 15/6 18/1 39/11

**IME** [1] 60/25

**immediacy** [1] 65/9

**immediate** [6] 16/11 27/19 27/25 28/6
43/23 59/17

**immediately** [1] 14/23

**imminent** [2] 29/10 29/10

**imminently** [1] 43/19

**impact** [1] 44/19

**implicate** [3] 34/3 34/3 66/4

**implicates** [1] 34/2

**importance** [4] 18/5 20/16 21/23 40/1

**important** [4] 39/19 49/20 53/23 63/16

**importantly** [1] 23/23

**impose** [1] 53/16

**impractical** [1] 7/11

**inappropriate** [1] 43/4

**incentivized** [1] 41/12

**inclinations** [1] 46/15

**inclined** [1] 65/12

**included** [1] 70/23

**includes** [2] 49/3 69/13

**including** [2] 6/14 54/10

**inconsistent** [1] 10/1

**incorporate** [1] 12/25

**incorporated** [1] 53/18

**incorporating** [1] 12/22

**incorporation** [1] 9/24

**incorrectly** [1] 50/2

**increase** [4] 15/25 16/10 58/1 58/3

**increased** [1] 58/5

**incurred** [1] 63/23

**independent** [3] 42/21 53/16 61/1

**indicated** [3] 6/16 27/14 37/9

**indicates** [1] 36/21

**indicating** [2] 17/24 27/23

**indication** [1] 19/8

**individual** [20] 4/15 6/8 13/18 16/25
19/1 19/15 21/20 22/2 23/6 23/15 25/16
25/17 47/24 48/1 48/16 49/1 49/2 54/10
58/22 61/8

**individually** [3] 17/5 17/7 49/4

**individuals** [2] 20/13 48/23

**information** [12] 8/19 9/8 28/17 35/10
42/6 59/19 60/16 69/14 69/16 70/18
71/12 71/12

**inherent** [2] 17/25 24/18

**initial** [5] 3/15 4/5 57/13 57/17 57/18

**initially** [2] 7/6 31/17

**injunction** [13] 3/15 6/21 43/5 44/9
51/11 62/2 65/19 66/14 67/6 70/23 71/21
73/14 73/20

**injunctive** [2] 9/21 43/4

**injury** [3] 4/23 50/23 52/17

**instance** [10] 10/18 23/3 28/25 52/23
56/23 57/20 60/12 60/18

**instances** [5] 29/8 29/12 29/19 36/6
55/2

**instead** [1] 56/22

**instruction** [1] 33/19

**instructions** [1] 27/24

**intake** [10] 25/24 26/8 32/1 32/11 32/23
33/4 41/4 52/14 52/18 60/16

**intend** [4] 33/22 44/13 45/21 66/2

**intended** [3] 12/24 18/19 44/15

**intends** [1] 42/7

**interaction** [2] 23/16 59/4

**interest** [6] 14/21 17/19 17/24 39/13
41/16 66/4

**interests** [8] 22/20 41/13 41/15 42/1
42/2 42/23 42/24 42/25

**interfered** [1] 7/1

**interferes** [1] 10/16

**interfering** [1] 18/13

**interim** [8] 5/4 9/14 9/24 10/4 11/3 11/5
15/16 16/14

**invalid** [1] 36/25

**invalidates** [1] 5/20

**involve** [2] 36/19 47/21

**involved** [11] 15/21 15/24 18/16 32/1
44/15 46/18 53/12 56/25 57/10 57/17
57/19

**involvement** [1] 52/22

**involves** [1] 32/11

**involving** [1] 21/8

**irreparable** [2] 66/25 66/25

**is** [431]

**isn't** [3] 9/21 15/2 70/9

**issue** [29] 3/18 3/21 17/23 18/5 21/19
23/14 27/8 27/11 30/14 37/12 44/11
44/19 45/4 45/6 46/16 47/14 55/17 56/17
63/6 63/25 65/14 65/16 65/25 66/6 66/7
66/18 71/10 71/17 72/17

**issues** [12] 4/6 21/7 24/4 24/8 36/20
37/25 38/11 43/24 44/3 45/14 46/24 63/3

**it** [175]

**it's** [57] 3/16 9/13 9/17 10/1 10/25 10/25
13/5 17/9 17/22 18/14 19/23 22/8 26/21
28/14 33/18 33/19 34/2 35/1 35/3 36/2
40/17 43/4 43/5 46/9 46/17 51/13 53/12
53/23 54/18 55/22 56/9 56/21 57/1 57/2
57/9 57/23 58/1 58/5 58/20 59/4 59/15
60/5 60/5 60/6 61/9 61/21 63/14 63/25
63/25 65/8 65/9 65/18 69/11 70/15 71/14
72/17 72/24

**Item** [4] 48/15 48/16 48/19 49/2

**Item 1** [2] 48/15 48/19

**Item 15A** [2] 48/16 49/2

**Items** [1] 48/25

**its** [8] 5/9 6/4 22/1 23/13 23/14 23/16
50/20 51/4

**itself** [4] 12/24 19/21 57/25 64/3

**J**

**jill** [5] 2/5 2/7 74/10 74/10 74/12

**job** [1] 74/2

**join** [1] 46/9

**joint** [1] 5/1

**judge** [68] 1/10 6/15 7/3 7/18 8/21 9/13
9/23 10/3 10/9 11/4 11/14 11/25 12/18
13/9 13/25 14/2 14/8 15/10 16/15 18/17
18/24 19/4 19/22 20/12 20/24 21/6 21/14
23/11 24/5 24/6 24/6 24/9 29/6 34/17 37/24
46/12 46/21 47/17 47/22 50/3 50/19
51/18 52/5 53/15 53/21 54/2 55/1 56/10
58/9 59/2 59/20 60/5 62/9 62/19 63/9
66/21 67/5 67/9 68/7 68/14 69/5 70/6
70/20 72/18 73/4 73/10 73/15 73/23
73/24

**judgment** [1] 35/9

**judicial** [1] 18/11

**July** [1] 52/6

**J**

**June [1]** 52/6
**jurisdiction [13]** 3/17 12/12 17/23 18/8 24/10 38/10 44/24 45/4 45/16 45/23 62/20 65/14 65/25
**just [41]** 5/23 6/1 8/22 9/6 10/25 12/16 13/5 13/15 16/20 18/12 19/1 19/7 24/1 24/20 25/2 28/1 28/17 31/18 33/4 35/21 38/17 40/20 42/2 42/24 43/24 48/2 48/5 55/6 55/8 57/14 57/25 58/17 59/3 59/4 59/15 60/5 62/24 67/18 69/13 71/23 73/9

**K**

**keep [1]** 37/16
**KILEY [2]** 1/15 3/7
**kind [9]** 5/8 19/20 21/4 38/4 48/21 50/2 51/18 60/6 63/4
**know [26]** 8/18 14/25 15/5 19/18 26/19 28/9 28/20 30/10 30/12 30/20 32/22 35/3 35/22 42/4 43/12 43/20 45/13 46/7 50/25 52/9 55/4 59/15 60/18 67/20 70/14 73/14
**knowledge [3]** 31/9 42/8 49/18
**knows [1]** 10/12

**L**

**landmines [1]** 43/22
**language [3]** 9/22 14/14 20/16
**largely [1]** 72/17
**last [4]** 15/9 46/21 48/22 48/22
**latest [1]** 63/3
**Lattimore [1]** 49/16
**law [99]**
**laws [1]** 26/17
**lawsuit [1]** 51/11
**lawyer [49]** 4/14 4/24 5/15 5/20 7/1 7/2 11/13 12/17 12/19 13/11 14/25 14/25 15/1 15/2 15/2 23/1 23/3 24/16 24/24 24/24 25/16 25/17 26/20 26/22 28/3 30/11 30/12 30/19 31/1 31/17 31/24 32/11 32/13 33/18 33/20 35/20 36/7 38/13 38/15 42/14 47/15 54/11 54/14 54/16 56/24 57/19 58/7 58/9 69/18
**lawyer's [1]** 30/12
**lawyers [22]** 3/19 5/21 11/8 12/20 13/2 31/22 34/17 34/19 34/22 36/6 36/17 39/6 40/14 40/15 41/12 46/19 48/9 57/17 58/6 58/12 69/24 73/12
**learned [1]** 56/11
**least [9]** 18/4 29/6 30/8 32/19 34/2 37/22 38/23 45/8 45/8
**leave [4]** 5/19 20/23 32/6 73/12
**leaves [6]** 14/20 15/2 36/22 38/13 39/5 47/13
**leaving [2]** 7/9 46/19
**left [8]** 4/25 6/11 17/17 26/2 51/19 52/3 71/9 71/15
**left-hand [1]** 26/2
**legal [6]** 20/9 38/8 54/8 54/8 54/21 72/17
**legally [1]** 9/1
**length [1]** 15/19
**less [2]** 11/21 15/12
**let [4]** 4/5 24/4 43/20 46/13 54/5 68/7 73/14
**let's [1]** 40/22
**letter [10]** 5/1 5/1 16/21 25/19 25/21

**letterhead [2]** 25/21 41/5
**letters [1]** 17/1
**level [5]** 16/2 57/1 57/2 57/8 57/14
**liability [2]** 42/10 42/12
**licensed [2]** 12/12 59/4
**like [32]** 3/24 6/14 9/10 11/22 12/14 12/16 15/21 16/4 19/18 19/22 22/18 28/3 34/24 36/6 39/12 42/21 48/12 50/25 53/21 54/23 56/11 57/13 57/13 58/7 59/15 60/25 64/9 64/14 68/15 69/10 69/10 70/13
**likelihood [5]** 32/12 44/20 45/5 65/15 66/25
**likely [1]** 66/14
**likewise [3]** 29/8 71/11 71/23
**liking [1]** 61/6
**limitations [1]** 70/16
**limited [2]** 9/6 37/23
**line [1]** 18/3
**lines [1]** 67/16
**list [7]** 10/6 40/22 43/16 43/17 43/18 68/24 69/16
**listed [3]** 40/12 50/15 52/2
**lists [3]** 26/2 39/15 39/22
**litany [1]** 60/6
**litigate [1]** 66/17
**litigation [2]** 37/22 38/5
**little [1]** 11/20 32/21 33/17 51/17 62/23
**live [2]** 7/12 55/23
**loaded [1]** 60/24
**local [1]** 12/15
**logical [2]** 50/14 55/8
**long [2]** 15/9 71/11
**longer [5]** 13/12 20/19 20/20 50/14 61/16
**look [4]** 12/23 48/3 58/7 68/8
**looked [1]** 11/22 65/16
**looking [13]** 11/1 11/24 17/20 21/7 24/1 41/15 41/16 41/25 53/25 54/2 55/9 64/21 67/23
**looks [5]** 3/24 9/10 12/14 12/15 70/13
**lose [3]** 33/11 66/7 66/14
**lot [10]** 9/20 30/22 42/19 62/17 64/3 65/3 65/3 65/21 66/8 66/11
**lower [2]** 26/2 57/8

**M**

**made [6]** 35/9 51/23 63/6 63/15 69/17 71/7
**Magistrate [1]** 73/24
**maintain [1]** 65/6
**maintained [1]** 54/11
**major [1]** 27/5
**majority [1]** 32/18
**make [14]** 11/20 28/3 29/14 34/16 34/20 34/22 39/4 41/13 46/9 51/1 51/2 60/18 61/12 66/20
**makes [6]** 26/8 38/12 38/17 38/23 61/20 68/21
**making [2]** 37/8 64/22
**management [3]** 59/10 60/15 62/3
**mandamus [1]** 23/8
**mandating [1]** 62/14
**mandatory [2]** 35/3 43/5
**manner [1]** 27/10

**manual [1]** 61/24
**manually [1]** 65/1
**many [5]** 11/7 11/7 15/8 36/11 43/3
**Marielena [1]** 49/17
**match [1]** 43/17
**material [1]** 32/19
**materials [1]** 69/1
**matter [11]** 24/10 24/25 26/21 35/3 45/16 45/18 46/8 51/8 62/20 64/11 74/8
**matters [7]** 7/8 24/12 24/23 26/13 41/21 44/2 69/10
**may [20]** 8/16 18/9 20/6 20/10 25/9 27/9 28/17 34/6 35/2 39/1 39/4 39/12 40/2 46/21 47/1 47/17 51/17 55/8 62/24 65/21
**maybe [6]** 30/17 32/2 40/16 47/4 62/23 68/11
**McCabe [2]** 73/17 73/24
**me [22]** 3/7 3/16 4/5 11/22 18/14 19/7 24/4 25/2 33/3 43/9 43/11 43/11 44/16 45/5 45/7 46/13 54/5 62/18 66/19 68/7 72/17 73/13
**mean [26]** 9/9 12/14 15/6 18/21 18/22 23/17 25/1 27/20 31/16 33/10 34/12 35/13 38/5 41/17 41/20 49/25 51/22 52/12 54/22 55/7 56/6 58/25 59/16 67/22 68/24 70/10
**meaningful [1]** 23/18
**means [8]** 5/15 22/10 32/5 37/1 41/11 41/18 41/22 64/13
**meant [2]** 45/16 46/17
**mechanism [1]** 34/16
**medical [7]** 7/22 8/16 8/17 60/11 60/25 61/1 69/20
**meet [2]** 31/24 52/13
**member [3]** 5/14 5/17 6/13
**members [1]** 54/10
**membership [1]** 58/24
**mentioned [2]** 48/8 68/5
**merits [2]** 44/20 45/6
**meruit [1]** 37/1
**met [3]** 31/16 33/20 52/14
**Metal [1]** 17/21
**Miami [4]** 2/6 2/7 74/11 74/12
**Michael [1]** 49/7
**MIDDLEBROOKS [1]** 1/9
**might [14]** 18/23 21/8 21/11 28/8 31/22 36/9 50/7 55/13 55/20 60/4 60/22 65/23 69/10 69/22
**mind [3]** 29/6 43/8 68/11
**mishandled [1]** 35/16
**mismatch [1]** 22/19
**model [5]** 12/25 12/25 13/9 54/17 54/19
**modify [1]** 64/5
**moment [3]** 39/21 62/24 68/7
**momentarily [1]** 43/11
**money [2]** 65/24 67/18
**months [1]** 62/1
**more [17]** 7/10 23/23 25/3 27/9 30/7 33/17 36/6 37/23 51/17 62/24 64/19 65/23 66/8 69/11 69/25 72/10 72/11
**most [5]** 15/14 45/4 58/6 58/25 59/8
**motion [12]** 1/9 44/7 44/8 44/21 44/23 65/14 66/23 67/6 70/22 71/21 71/24 73/22
**move [1]** 27/14
**moves [4]** 26/23 26/24 31/14 65/24

## M

Mr [4] 4/11 17/16 52/6 52/10
Mr. [113]
Mr. Atherton [2] 64/17 68/9
Mr. Atherton's [2] 72/23 73/6
Mr. Bob [1] 3/12
Mr. Dan [2] 70/14 70/19
Mr. Fanning [2] 52/24 53/5
Mr. Golan [3] 49/15 52/24 53/5
Mr. Gordon [1] 52/14
Mr. Hoffman [3] 17/16 52/24 53/4
Mr. Pierre [1] 50/13
Mr. Stratton [1] 49/10
Mr. Werner [78]
Mr. Werner's [17] 6/1 9/2 14/9 21/17
25/22 28/16 40/1 41/6 42/24 47/25 48/2
48/5 50/5 50/11 53/6 56/4 71/8
Ms. [6] 49/12 52/24 53/5 68/19 68/21
69/7
Ms. Campos [1] 49/12
Ms. Hartley [2] 52/24 53/5
Ms. Sherri [1] 69/7
Ms. Stone [2] 68/19 68/21
much [2] 57/24 66/10
Mullen [1] 1/20 3/9
multiple [2] 16/1 60/20
must [1] 18/6
my [26] 3/7 3/9 3/21 4/2 4/5 14/25 18/12
24/7 24/19 29/6 30/3 35/13 43/8 48/16
48/17 48/22 49/4 49/7 49/18 49/21 59/20
65/20 68/8 72/8 72/20 73/9

## N

name [12] 17/18 25/22 30/12 30/20
31/11 31/12 32/16 40/18 40/21 41/6 48/1
67/4
named [6] 40/18 40/21 48/15 48/16
48/19 49/4
names [2] 47/21 48/8
narrow [1] 41/16
narrowed [1] 46/16
narrowly [2] 35/7 41/24
nature [2] 15/13 52/16
navigate [3] 43/21 63/3 64/19
Navy [1] 60/12
nearly [1] 44/14
neatly [1] 27/3
necessarily [9] 10/16 12/19 13/5 18/6
23/12 55/7 59/16 69/24 70/12
necessary [16] 4/1 5/2 7/4 10/24 11/21
14/11 23/24 39/12 43/4 58/20 61/16
64/19 69/12 72/17 22/25 71/15
need [25] 4/2 7/14 9/8 13/6 21/22 23/8
23/10 27/25 28/5 29/10 34/6 40/25 50/25
51/18 61/13 61/13 62/21 65/11 66/19
67/21 69/18 69/24 72/15 73/21 73/21
needed [2] 14/10 16/13
needle [3] 34/4 34/6 42/19
needs [2] 63/11 69/19
Neither [1] 66/10
never [10] 18/6 26/23 26/24 30/19 33/20
42/5 42/14 45/13 55/3 69/22
new [13] 6/7 10/19 11/18 11/19 13/17
13/18 13/19 13/20 16/9 26/21 26/24 30/4
42/24
next [2] 48/9 55/8

NICOLE [2] 2/23 3/9

## no

no [22] 1/2 4/16 13/12 17/1 19/14 20/19
20/20 21/6 22/14 26/15 32/2 32/8 40/21
41/21 45/5 50/14 51/1 54/2 58/20 62/9
70/18 72/6
nobody [1] 33/10
non [1] 48/21
non-fee [1] 48/21
none [1] 34/2
nonprofits [1] 19/23
normal [1] 45/4
normally [2] 3/19 25/8
North [2] 1/13 1/17
Northlake [1] 48/4
not [154]
note [1] 53/23
notes [9] 7/21 35/4 60/17 60/25 69/2
69/10 69/15 70/11 70/13
nothing [4] 24/18 31/5 54/4 54/12
notice [5] 5/5 8/8 22/6 22/8 55/10
now [14] 25/2 32/15 36/5 36/18 39/20
40/4 40/17 43/3 43/22 44/6 45/19 49/14
53/4 53/5
number [4] 3/3 11/19 37/7 71/24
numbers [1] 11/17

## O

object [1] 72/4
objection [3] 68/4 72/20 73/9
objective [3] 41/2 42/21 47/3
objectively [1] 47/1
obligated [2] 13/12 24/18 55/25
obligation [5] 34/9 34/15 34/25 35/3
36/12
obligations [5] 6/2 23/25 38/17 46/20
53/13
obliged [1] 45/10
obtaining [2] 10/14 59/9
occur [1] 32/14
off [1] 14/16
offer [1] 70/20
office [5] 3/7 20/9 21/5 22/7 22/9
officer [2] 57/5 57/14
Official [1] 2/6 74/11
often [2] 48/8 54/25
okay [7] 24/3 34/20 44/6 46/13 70/8
72/19 73/11
old [1] 13/20
once [2] 12/25 20/17 32/10 37/22
one [42] 4/14 8/2 8/6 11/24 13/13 13/20
17/14 17/24 19/1 19/11 19/12 19/15
19/19 22/2 22/17 22/25 23/25 25/25
26/17 29/2 30/9 30/24 32/17 33/15 35/1
35/19 37/7 40/12 41/21 44/1 46/2 46/21
59/6 60/20 60/23 60/23 60/24 62/24
65/23 68/7 70/25
ones [1] 69/21
only [28] 8/8 8/12 8/18 13/10 13/11
13/22 14/1 16/24 17/6 17/23 19/11 21/25
22/2 22/16 33/18 33/20 39/3 41/18 41/19
47/6 50/19 57/18 58/1 59/18 60/3 61/2
62/4 63/13
operation [1] 39/10
operative [3] 24/16 39/22 64/8
opinions [3] 30/4 38/9 46/2
opportune [1] 29/3

opportunity [1] 29/5
opposing [2] 24/19 44/1
Orange [1] 1/13
order [18] 3/1 3/24 7/4 8/4 9/8 13/1
14/11 22/19 24/1 34/17 34/24 35/6 51/8
58/21 64/15 64/20 73/13 73/20
ordered [1] 64/14
ordinary [5] 4/10 4/23 8/22 22/13 50/23
organization [8] 19/11 19/19 19/20
19/22 19/24 19/25 22/5 58/23
organizational [1] 23/5
organizations [3] 11/23 19/18 22/25
originally [1] 38/18
Orlando [1] 1/14
Osredkar [1] 70/14
ostensible [1] 18/5
other [26] 4/2 6/25 8/2 20/2 20/13 31/22
35/18 38/9 39/6 40/16 43/3 44/18 45/12
48/25 49/19 52/2 60/10 64/10 64/13
64/15 65/2 65/22 66/24 68/4 69/10 70/19
others [2] 31/22 38/10
Otherwise [1] 73/20
our [16] 3/11 14/8 24/7 30/15 33/13
33/25 34/3 42/13 42/18 43/17 47/22
51/18 55/16 67/5 70/20 73/5
ours [1] 72/3
out [20] 5/1 13/4 20/16 22/12 27/18
29/2 32/15 33/11 42/11 43/21 48/12 50/2
52/1 53/21 55/9 61/19 63/22 65/2 65/12
67/18
outside [2] 4/10 9/24
over [8] 32/2 32/21 42/3 42/13 51/1
61/24 62/1 63/14
own [4] 17/10 31/6 56/13 69/25
ownership [3] 10/25 17/19 54/11

## P

P-1 [1] 72/4
P-2 [1] 72/4
P-3 [2] 72/4 73/5
P-4 [2] 72/4 72/5
P-5 [1] 72/11
P.A [4] 1/6 1/13 1/16 1/20
p.m [4] 1/6 1/6 3/1 74/3
page [4] 26/2 48/10 48/13 67/16
page 78 [1] 67/16
Pages [1] 1/7
paid [5] 35/23 36/10 37/4 58/4 69/21
Palm [4] 1/4 1/22 2/4 48/4
papers [5] 7/15 14/8 30/15 31/24 38/9
paperwork [2] 26/8 32/17
paralegal [3] 49/16 49/17 50/9
paralegals [6] 6/14 20/5 39/6 40/14
40/15 48/9
paramount [1] 21/23
Park [1] 1/17 1/18
part [7] 6/20 15/13 22/8 26/18 35/23
49/20 67/20
particular [2] 56/15 60/19
parties [8] 6/2 10/14 34/5 34/13 37/3
63/2 65/18 73/25
partners [85]
Partners' [10] 25/21 25/24 26/3 31/12
36/23 37/11 41/7 41/8 41/10 69/23
passed [1] 18/14
past [3] 43/17 58/3 69/17

**P**
**pay [3]** 36/4 37/10 69/22
**payable [2]** 36/3 36/23
**paying [1]** 43/10
**pays [2]** 35/24 36/7
**pending [6]** 15/17 15/19 16/6 16/11 33/5 44/21
**pension [1]** 8/7
**people [22]** 6/23 6/25 15/8 25/12 31/16 32/21 33/11 35/14 39/22 40/12 41/3 41/9 49/19 50/15 51/13 52/3 52/3 52/12 52/14 52/22 52/25 60/1
**percent [6]** 36/3 36/4 36/21 56/21 56/22 58/5
**percentage [1]** 58/11
**perfect [1]** 61/21
**performed [1]** 72/16
**perhaps [2]** 37/14 39/3
**period [4]** 16/6 28/4 55/18 61/24
**permanent [1]** 62/5
**permission [1]** 6/13
**person [11]** 19/2 22/16 22/20 39/3 41/18 41/19 48/15 50/10 52/18 61/11 61/12
**personal [3]** 4/23 50/23 52/17
**personally [1]** 38/1
**perspective [4]** 42/1 43/7 45/17 64/12
**pertinent [1]** 5/16
**phone [1]** 55/4
**PI [1]** 22/13
**PI-type [1]** 22/13
**picked [2]** 51/14 51/14
**piece [1]** 62/22
**Pierre [2]** 50/7 50/13
**PIV [2]** 59/11 59/13
**place [2]** 13/22 39/13
**plainly [1]** 31/5
**plaintiff [5]** 1/4 1/12 3/6 25/8 46/13
**plaintiff's [7]** 47/15 70/24 70/24 71/1 71/3 71/3 71/5
**plan [2]** 42/20 71/14
**plea [1]** 61/12
**pleadings [4]** 61/6 71/22 72/2 72/5
**please [2]** 3/4 47/18
**point [22]** 20/16 27/5 31/20 37/24 38/5 38/12 38/21 39/19 40/9 41/24 43/1 43/6 48/12 53/21 54/23 55/5 55/13 55/14 55/16 62/4 66/5 68/1
**pointed [1]** 37/14
**pointing [1]** 42/11
**policies [1]** 22/1
**populate [1]** 60/13
**population [2]** 29/22 33/3
**portal [3]** 59/11 59/14 59/17
**portent [1]** 18/7
**portion [1]** 31/21
**posit [1]** 66/22
**position [3]** 50/6 65/7 69/4
**possibility [1]** 18/3
**possible [6]** 9/1 9/13 12/7 15/15 44/5 46/10
**potential [1]** 63/22
**potentially [3]** 17/18 57/11 64/13
**power [10]** 13/14 13/20 13/20 17/6 50/5 50/11 50/17 53/6 59/22 71/8
**practicable [1]** 63/14

**practical [1]** 49/17
**practicality [1]** 64/11
**practice [3]** 5/11 12/13 18/13
**practices [1]** 12/15
**preclude [1]** 38/15
**prejudice [1]** 34/18
**preliminary [12]** 3/14 3/25 9/10 44/9 44/20 46/1 51/11 62/2 65/19 67/6 70/22 73/13
**preparation [2]** 20/14 61/21
**prepare [4]** 10/22 48/17 51/9 53/14
**prepared [2]** 66/5 68/1
**preparing [3]** 16/8 16/9 16/9
**presence [1]** 18/4
**present [7]** 10/22 44/22 48/17 51/9 53/14 56/25 62/23
**presentation [2]** 20/14 24/8
**presented [6]** 24/22 33/16 33/22 43/24 63/10 63/17
**presenting [1]** 56/20
**pretty [5]** 55/22 57/23 66/2 66/15 67/25
**previously [2]** 11/2 24/17
**primarily [12]** 9/5 11/25 12/21 19/6 19/23 21/7 21/17 23/20 24/10 36/19 53/3 58/15
**primary [2]** 43/1 67/22
**prime [1]** 29/12
**Prior [1]** 43/20
**private [2]** 7/22 60/25
**pro [2]** 5/14 57/24
**probably [9]** 30/20 37/8 45/4 46/15 55/19 57/8 65/12 66/11 73/7
**problem [1]** 45/8
**procedure [3]** 30/5 51/24 54/15
**procedures [4]** 3/20 16/1 32/11 59/6
**proceed [2]** 45/11 62/21
**proceeding [2]** 25/9
**proceedings [2]** 74/3 74/8
**process [15]** 10/15 25/24 26/8 27/17 32/1 32/10 32/23 33/1 33/23 56/20 57/20 59/9 60/10 61/10 61/14
**product [1]** 61/5
**Products [1]** 17/21
**professional [2]** 12/11 67/13
**professionals [3]** 39/15 40/16 40/22
**proffer [1]** 69/9
**progress [1]** 45/18
**prohibited [2]** 9/17 12/11
**prohibition [1]** 10/5
**promise [1]** 63/12
**proper [1]** 8/13
**properly [2]** 8/4 8/18
**proposal [1]** 63/6
**proposed [2]** 64/4 64/24
**prosecute [6]** 10/22 48/17 51/9 53/2 53/14 60/23
**prosecuting [1]** 60/19
**prosecution [1]** 20/14
**protect [4]** 22/19 33/25 39/12 64/20
**protected [3]** 28/4 41/13 42/24
**provide [5]** 29/4 37/23 54/17 62/14 62/14
**provided [7]** 26/9 27/13 43/16 48/25 60/7 60/9 69/8
**provides [2]** 4/13 29/16
**providing [1]** 12/10 30/19 33/8 42/16

**provision [3]** 12/22 39/6 41/21
**provisions [1]** 9/20
**purportedly [1]** 42/5
**purpose [2]** 9/4 42/15
**purposes [1]** 9/3
**pursue [1]** 19/25
**purview [1]** 4/10
**put [3]** 42/19 62/17 72/3
**puts [1]** 32/16
**putting [1]** 72/2

**Q**
**quantum [1]** 37/1
**question [28]** 3/22 4/2 4/9 5/24 5/25 8/21 9/15 14/7 14/16 24/13 25/12 26/4 29/2 38/4 41/1 43/8 43/10 44/22 51/12 55/2 55/20 58/14 66/12 66/13 66/16 67/22 67/23 71/18
**questions [5]** 3/15 4/5 24/11 29/11 46/25
**quick [1]** 68/12
**quickly [9]** 44/3 44/4 45/22 46/1 46/5 46/7 46/10 66/18 67/25
**quintessential [3]** 3/21 27/1 30/10
**quite [2]** 56/11 73/18
**quote [1]** 22/3

**R**
**raise [1]** 67/18
**raised [1]** 46/25
**raises [1]** 18/2
**Rana [1]** 49/16
**reach [1]** 44/23
**reached [1]** 29/2
**reaction [4]** 18/12 35/14 45/11 65/20
**read [3]** 6/12 25/2 54/6
**real [4]** 7/12 44/10 44/11 68/12
**real-time [1]** 7/12
**really [5]** 10/24 11/3 12/23 55/9 66/13
**reason [6]** 4/9 5/8 6/20 8/22 9/5 21/25 26/18 29/24 34/24 40/24 47/6 50/19 53/9 55/17 70/18 73/25
**reasonable [4]** 31/13 35/5 40/2 41/2
**reasonably [5]** 26/14 41/9 44/5 46/10 63/13
**reasons [6]** 27/3 30/8 42/3 43/3 65/21 68/2
**recall [2]** 13/9 46/6
**received [2]** 22/7 22/9
**receiving [1]** 41/7
**recitation [1]** 70/5
**recognition [3]** 19/1 22/2 23/4
**recognized [4]** 16/25 19/12 22/5 50/4
**recognizes [1]** 24/2
**recognizing [1]** 6/10
**record [10]** 20/8 20/9 22/6 26/13 32/17 33/21 38/16 67/2 67/4 73/10
**recorded [1]** 26/10
**records [10]** 9/6 10/23 10/25 11/6 11/21 14/10 14/11 24/1 48/24 60/11
**recovered [2]** 36/12 36/22
**recovery [2]** 36/3 36/13
**red [1]** 63/25
**reduction [1]** 8/18
**Reeder [2]** 1/20 3/9

Case 9:23-cv-81139-DMM   Document 38   Entered on FLSD Docket 09/08/2023   Page 85 of 88

**R**

**refer [1]** 40/20
**referral [1]** 74/1
**referrals [1]** 31/22
**referred [1]** 26/1
**referring [5]** 29/15 39/14 40/8 64/17 68/9
**refrain [1]** 17/22
**regard [1]** 39/24
**regardless [8]** 4/14 4/18 21/21 40/1 45/22 47/9 51/6 55/25
**regulate [2]** 18/13 18/22
**regulations [5]** 12/15 12/24 13/19 19/5 53/15
**reimburse [1]** 36/12
**reimbursement [1]** 36/10
**related [2]** 27/4 56/19
**relates [1]** 55/24
**relationship [9]** 30/11 30/13 38/25 47/3 47/5 47/5 53/22 54/7 54/14
**relationships [4]** 30/10 54/5 54/9 54/12
**relatively [1]** 26/21
**release [1]** 48/24
**relevant [3]** 72/7 72/9 72/24
**reliable [1]** 70/12
**relief [12]** 3/25 9/10 9/14 9/21 9/24 10/1 10/4 11/3 11/5 43/4 46/1 67/25
**relieved [1]** 13/12
**rely [1]** 70/12
**remain [10]** 7/4 7/25 20/18 25/9 25/10 25/11 38/24 39/13 50/16 63/24
**remains [12]** 4/20 9/2 10/19 21/20 24/18 25/5 38/13 38/18 47/8 51/5 55/18 55/24
**remedies [1]** 21/11
**remedy [2]** 21/14 21/15
**remember [1]** 43/9
**replace [1]** 13/20
**report [1]** 69/24
**REPORTED [1]** 2/5
**Reporter [2]** 2/6 74/11
**reports [1]** 49/20
**represent [20]** 4/24 5/5 5/6 6/2 6/4 6/20 7/4 9/3 9/8 10/7 13/13 14/10 20/6 21/18 23/6 23/18 53/17 53/20 58/22 68/22
**representation [14]** 11/9 12/10 14/12 18/18 18/20 19/15 20/10 23/13 25/3 25/5 33/8 50/22 62/7 64/22
**representations [1]** 20/4
**representative [23]** 3/11 4/12 4/20 11/15 13/18 16/17 17/8 19/12 21/20 22/6 23/16 41/17 47/25 48/1 48/6 48/17 49/1 49/5 49/7 49/21 51/22 52/11 57/22
**represented [4]** 25/16 42/6 56/1 72/6
**representing [6]** 6/18 10/20 15/1 16/25 31/2 42/15
**represents [1]** 4/15
**request [5]** 30/6 44/9 45/25 62/3 69/16
**requested [3]** 60/11 61/18 63/7
**requesting [1]** 16/13
**requests [2]** 13/4 58/8
**require [2]** 28/2 53/19
**required [1]** 56/14
**requirements [1]** 59/3
**requires [1]** 39/18
**resigned [1]** 40/10

**resolve [4]** 29/1 45/12 66/18 73/13
**resolved [1]** 73/24
**respect [13]** 4/9 6/1 14/9 14/18 24/12 26/23 33/23 37/4 45/20 46/20 52/9 55/7 67/15
**respectfully [1]** 24/15 26/6 33/24
**respective [2]** 11/23 46/20
**respond [6]** 12/6 15/7 15/9 31/18 72/25 73/21
**responded [3]** 27/21 27/23 32/21
**responding [1]** 29/23
**response [5]** 71/22 71/25 72/6 72/7 73/5
**responsibilities [1]** 18/11
**responsibility [5]** 10/21 13/12 33/7 35/22 40/3
**responsible [7]** 10/20 15/3 24/25 33/6 47/8 51/5 55/18
**rest [3]** 48/20 54/13 54/13
**restoring [3]** 11/1 62/3 64/12
**restriction [1]** 64/25
**restrictions [5]** 63/17 63/18 64/4 64/6 64/9
**result [1]** 8/17
**resulted [1]** 56/17
**results [1]** 34/20
**retained [1]** 57/21
**retaining [2]** 16/20 16/20
**retains [2]** 8/25 16/19
**return [1]** 55/3
**review [4]** 16/2 42/21 57/1 69/18
**reviewing [1]** 32/11
**revokes [1]** 13/13
**right [25]** 7/17 17/12 17/16 18/24 26/21 36/25 39/20 39/21 46/11 50/13 51/7 51/16 52/16 55/5 58/9 59/2 59/20 59/25 63/1 65/11 67/7 69/5 70/4 73/3 73/14
**rights [7]** 6/1 6/2 33/11 34/18 35/8 44/3 57/12
**RMR [2]** 2/5 74/10
**road [2]** 35/21 72/15
**Robert [1]** 49/14
**roughly [1]** 27/16
**route [3]** 9/17 68/2 73/8
**ROY [2]** 1/12 3/5
**rub [3]** 13/11 64/17 65/3
**rule [27]** 6/22 13/7 13/10 13/24 15/6 20/2 24/16 24/19 25/2 26/22 30/25 35/1 35/4 38/12 38/14 38/23 44/14 46/4 46/7 46/17 54/6 54/13 54/14 54/18 54/19 54/19 54/22
**rules [45]** 4/3 4/11 4/22 5/16 5/21 6/12 8/23 9/25 9/25 11/23 12/3 12/4 12/11 12/14 12/23 12/25 12/25 13/9 13/10 13/23 14/5 19/7 27/2 29/4 29/25 30/4 33/14 33/24 34/4 34/16 34/22 36/25 37/15 38/9 42/8 46/4 46/19 50/22 53/16 53/19 54/2 54/5 54/12 54/17 66/12
**run [1]** 67/19

**S**

**safeguard [1]** 34/23
**said [12]** 17/11 23/8 23/8 24/20 25/18 29/8 32/20 51/14 65/20 68/25 73/1 73/1
**same [4]** 16/23 20/9 24/4 58/18
**saw [5]** 18/22 22/22 34/8 46/1 46/2

**say [20]** 6/12 16/18 18/2 30/3 33/13 37/16 39/2 40/22 44/14 45/8 48/3 50/7 52/21 52/23 59/14 60/9 60/12 61/9 62/19 64/15
**saying [9]** 9/19 23/4 27/20 34/20 43/11 50/2 60/18 68/19 68/20
**says [18]** 8/11 10/1 12/9 13/6 13/21 17/22 20/6 22/12 23/13 25/22 26/19 28/17 39/5 47/10 54/4 54/19 56/21 70/19
**schedules [1]** 8/9
**SCOTT [1]** 1/19 3/8 24/6
**seated [1]** 3/6
**second [3]** 1/17 3/23 67/13
**see [9]** 3/17 5/10 5/15 5/23 44/17 45/3 46/17 47/22 62/21
**seeing [2]** 46/6 46/16
**seek [5]** 9/21 11/4 32/22 36/9 67/25
**seeking [1]** 10/4
**seem [2]** 12/14 33/14
**seems [9]** 3/20 18/12 22/18 39/2 45/7 54/23 55/12 65/5 66/19
**segregate [1]** 36/2
**send [1]** 5/1
**sending [1]** 13/4
**sense [3]** 7/3 21/1 57/14
**sent [2]** 28/8 62/8
**sentence [1]** 48/22
**sentences [1]** 48/20
**separated [1]** 30/17
**separations [1]** 29/13
**September [2]** 1/5 74/10
**serious [1]** 17/24
**served [1]** 24/17
**service [10]** 21/24 24/2 48/19 56/16 56/17 56/22 58/19 60/11 60/22 61/23
**service-connected [4]** 56/16 56/17 56/22 60/22
**services [3]** 20/9 54/8 54/21
**set [4]** 3/14 43/23 61/10 72/8
**sets [1]** 15/20
**setting [1]** 37/17
**seven [2]** 58/18 61/19
**several [3]** 24/11 25/23 38/2
**severed [1]** 38/25
**shall [1]** 12/9
**shape [1]** 21/9
**share [1]** 42/10
**sharing [1]** 63/20
**she [3]** 24/9 68/24 69/9
**Sherri [2]** 68/18 69/7
**should [10]** 8/16 15/25 28/15 44/2 44/4 45/11 50/16 57/3 57/15 65/6
**shouldn't [1]** 23/20
**show [2]** 44/20 47/17
**shown [2]** 31/5 32/17
**side [12]** 5/7 8/23 9/21 26/2 33/2 37/19 45/12 64/25 66/10 68/2 68/6 72/16
**sides [7]** 3/16 4/6 9/11 35/14 44/10 65/20 73/12
**sign [11]** 10/18 17/2 26/7 31/18 31/23 32/5 34/17 35/17 36/15 40/5 40/6
**signature [2]** 39/19 41/8
**signed [21]** 6/23 6/24 10/7 11/8 11/13 11/15 11/18 13/17 25/24 25/25 30/22 35/19 40/6 40/7 40/11 40/11 41/4 41/4 49/22 52/14 52/19

**S**

**signing [1]** 52/8
**signs [1]** 6/7
**similar [1]** 38/10
**simple [1]** 29/6
**since [2]** 11/17 41/16
**single [3]** 59/11 59/14 59/17
**single-portal [3]** 59/11 59/14 59/17
**situations [1]** 4/4
**six [1]** 62/1
**size [1]** 56/2
**skip [1]** 48/20
**slow [2]** 21/8 45/18
**so [111]**
**solely [2]** 51/5 53/11
**solution [2]** 62/5 63/15
**solve [1]** 45/7
**some [45]** 7/25 8/5 9/19 11/17 11/18
13/1 13/6 16/3 18/17 19/8 21/8 27/9
28/6 33/5 33/7 33/11 33/14 34/24 35/15
35/17 35/22 40/5 40/6 42/2 46/15 47/4
47/5 52/14 53/15 54/23 55/4 55/13 55/14
56/17 57/6 58/17 59/2 59/5 60/4 60/10
61/15 62/17 65/22 66/3 68/18
**somebody [2]** 6/17 7/1 11/19 15/6
22/24 22/25 50/1 50/7 52/17 55/14 65/24
73/1
**somebody's [1]** 35/15
**somehow [7]** 5/15 5/20 6/17 20/23 23/5
31/18 44/15
**something [33]** 5/18 9/23 12/7 13/5
14/11 14/15 16/2 17/11 17/14 18/22
18/25 27/18 27/19 28/7 31/19 32/22
32/25 33/11 34/8 34/11 34/15 39/2 41/22
45/25 46/2 47/16 56/7 58/25 60/24 61/25
67/3 69/23 73/1
**sometimes [1]** 61/15
**somewhere [6]** 21/22 22/22 38/6 46/1
67/2 67/4
**Sons [2]** 17/21 24/15
**soon [1]** 63/14
**sooner [1]** 8/10
**sort [5]** 27/1 28/6 34/1 34/4 65/22
**sought [4]** 6/21 10/1 21/4 23/8
**sounds [2]** 64/14 68/15
**SOUTHERN [3]** 1/1 5/11 5/12
**spare [1]** 73/13
**speak [2]** 32/13 32/16
**special [2]** 18/18 59/11
**specific [3]** 9/23 40/8 40/22
**specifically [3]** 10/3 10/4 53/19
**spending [1]** 65/23
**spent [1]** 66/11
**split [1]** 24/7
**spoke [3]** 30/17 30/20 33/21
**spoken [1]** 37/21
**sponte [1]** 45/3
**spot [1]** 14/1
**staff [2]** 37/8 41/7
**stage [4]** 15/19 33/5 58/2 65/13
**stages [2]** 32/25 57/18
**stake [2]** 27/6 35/15
**stand [1]** 63/2
**standard [2]** 4/22 43/5
**standing [1]** 12/17
**standpoint [1]** 35/17

**started [1]** 52/6
**starting [1]** 52/5
**state [27]** 3/21 4/11 8/22 18/2 18/3
18/11 18/20 18/23 18/25 19/9 26/17
29/25 30/18 33/15 35/12 36/19 36/24
37/1 37/12 39/25 39/25 42/13 50/24
55/21 55/22 63/8 72/20
**state's [1]** 18/13
**state-federal [1]** 18/3
**state-law-driven [1]** 37/12
**stated [1]** 14/8
**statement [2]** 26/9 48/14
**statements [4]** 7/23 7/24 61/3 61/4
**states [4]** 1/1 1/10 24/16 25/5
**stating [1]** 73/9
**status [4]** 29/11 60/25 69/17 69/19
**statute [3]** 44/13 44/13 66/12
**stay [3]** 27/7 44/8 62/6
**staying [1]** 54/20
**stems [2]** 5/25 6/9
**step [3]** 46/18 54/17 55/8
**Stewart [1]** 2/2
**still [17]** 5/19 10/14 12/2 14/21 14/21
15/3 16/11 32/23 34/25 38/18 39/23 40/2
50/8 51/18 58/25 63/15 65/4
**Stone [4]** 68/18 68/19 68/21 69/7
**stopped [1]** 6/17
**strategies [1]** 60/21
**Stratton [1]** 49/10
**Street [1]** 1/21
**strictly [2]** 49/24 57/7
**striking [1]** 73/25
**strong [1]** 46/15
**struck [1]** 64/25
**structure [2]** 14/12 23/13
**students [1]** 20/5
**stuff [2]** 31/18 60/15
**sua [1]** 45/3
**subject [3]** 24/10 45/16 62/20
**submission [1]** 67/13
**submit [3]** 16/9 26/6 33/24
**submits [1]** 24/15
**submitted [2]** 66/24 70/21
**Subparagraph [1]** 35/2
**Subsection [1]** 53/22
**subsequent [1]** 32/10
**substantial [15]** 3/17 5/23 5/25 9/15
14/6 14/16 17/24 24/14 26/11 29/17
44/11 51/12 56/3 65/15 66/5
**substantially [1]** 27/3
**substituted [1]** 7/10
**success [3]** 44/20 45/5 65/16
**such [4]** 4/16 6/6 19/14 21/21
**sue [1]** 47/16
**suffice [2]** 4/3 9/12
**sufficient [1]** 68/22
**suggest [1]** 26/16
**suggestion [1]** 63/15
**suggests [1]** 42/6
**suing [1]** 56/7
**Suite [3]** 1/14 1/21 2/3
**supersede [2]** 18/19 18/23
**supersedes [1]** 18/25
**supervises [1]** 52/22
**supervising [1]** 50/12
**supervision [1]** 20/21

**supervisory [1]** 53/4
**supplant [1]** 19/8
**support [2]** 33/15 61/4
**supporting [1]** 71/24
**supports [1]** 34/14
**supposed [4]** 8/11 14/5 36/2 36/2
**Supreme [2]** 5/17 5/19
**sure [18]** 3/17 28/3 34/16 41/13 46/9
46/22 47/19 47/22 49/10 49/11 50/24
55/22 58/13 60/18 64/22 66/2 66/15 72/1
**surrounding [1]** 72/12
**suspect [1]** 67/20
**sworn [1]** 71/25
**system [9]** 7/16 59/10 59/11 59/14
59/17 60/15 61/21 61/25 62/3

**T**

**table [2]** 3/11 68/6
**tailored [1]** 35/7
**take [10]** 6/5 16/4 31/8 32/6 32/7 46/21
62/1 62/22 64/6 64/7
**taken [2]** 6/19 61/16
**taking [2]** 4/6 35/4
**talk [7]** 17/9 18/9 19/17 30/11 52/18
52/18 52/19
**talked [2]** 16/15 66/10
**talking [5]** 12/20 21/17 33/4 40/9 53/12
**talks [9]** 11/24 20/4 25/2 25/3 25/4 35/2
35/4 53/22 54/18
**TARAZONA [1]** 1/20
**technical [1]** 70/16
**tell [7]** 8/15 19/7 32/4 33/2 62/18 65/12
71/14
**telling [2]** 32/7 32/8
**tells [1]** 31/6
**ten [1]** 40/22
**tension [3]** 27/5 43/1 43/6
**terminated [2]** 7/9 39/7
**terminates [2]** 39/9 47/12
**terms [22]** 11/8 15/19 16/8 23/13 44/25
46/25 47/14 56/3 60/14 61/23 62/3 62/25
63/2 64/3 64/4 65/8 66/22 68/14 68/17
70/8 70/20 72/15
**test [1]** 28/7
**testimony [1]** 70/2
**than [14]** 8/10 8/22 15/12 19/16 33/17
36/6 48/25 51/17 52/3 57/8 61/16 64/19
66/9 70/19
**thank [8]** 4/8 24/5 24/6 46/11 46/12
72/18 73/23 74/2
**that [474]**
**that's [69]** 3/21 4/21 5/1 5/7 6/15 6/20
6/22 8/19 11/3 11/14 11/25 12/21 12/21
13/4 13/10 14/2 14/6 14/11 15/16 15/23
16/3 16/13 16/23 17/16 18/24 19/4 19/4
19/22 22/11 22/12 23/25 27/1 27/22
30/24 38/14 44/16 44/18 45/1 47/9 47/10
48/16 48/25 49/1 49/7 49/7 49/18 51/10
52/16 52/16 54/16 54/22 55/11 56/24
57/11 58/4 58/9 59/2 59/20 59/25 60/24
62/2 63/5 65/3 67/21 69/5 70/12 71/9
71/13 72/23
**their [31]** 6/12 8/3 16/22 17/8 26/5
27/23 28/22 29/5 29/11 31/8 31/14 32/7
32/11 32/22 35/20 37/22 41/3 41/5 44/22
46/4 46/20 51/2 51/9 51/23 51/25 54/24

**T**

**their... [5]** 56/7 56/13 60/3 69/16 69/25
**them [32]** 8/4 8/13 8/15 9/3 10/7 10/20
11/24 15/11 15/15 15/18 21/2 29/14
30/17 31/2 33/8 36/8 37/7 40/3 40/5
42/5 42/6 45/21 47/8 47/16 49/8 51/14
52/24 55/13 55/14 55/15 55/18 69/25
**themselves [1]** 14/11
**then [30]** 3/23 4/25 5/2 5/4 8/9 8/24
16/1 18/2 21/2 32/13 33/6 35/9 36/25
37/3 42/16 43/10 44/8 47/11 56/17 56/23
57/10 61/5 62/20 63/8 66/16 70/14 71/1
71/5 73/18 73/21
**there [123]**
**there's [30]** 3/16 3/23 8/1 8/5 9/19
15/20 16/1 16/1 16/7 16/11 17/11 19/8
36/3 36/13 39/1 43/3 44/10 49/18 53/15
55/4 56/16 57/10 58/25 60/16 60/17 61/5
63/20 64/22 66/13 72/15
**these [113]**
**they [171]**
**thing [9]** 4/16 19/14 22/19 44/1 50/1
57/24 60/3 62/2 67/22
**things [22]** 5/7 7/19 8/23 14/21 16/4
16/6 16/7 16/11 21/8 27/2 42/7 59/7
60/6 60/12 61/6 64/9 65/23 67/22 68/4
69/1 69/13 72/13
**think [60]** 5/20 13/22 14/4 14/6 15/8
15/12 20/22 21/10 21/11 22/24 23/10
23/11 24/11 27/16 28/14 31/20 33/4
35/22 36/19 37/13 38/22 39/8 40/10
40/24 41/1 41/3 42/1 43/3 43/18 43/21
44/10 44/16 44/23 46/23 47/13 51/8
55/1 55/2 55/15 55/22 61/25 64/24 65/15
65/17 65/18 65/24 66/4 66/6 67/21 67/23
67/24 68/18 70/2 70/10 70/11 71/4
71/17 72/15 72/17 72/24
**thinks [1]** 47/9
**third [1]** 13/17
**this [145]**
**those [57]** 4/5 4/6 6/23 7/7 7/7 7/8 7/20
7/24 8/6 10/6 10/12 10/13 11/12 11/17
14/15 16/4 16/10 19/7 24/1 24/12 26/15
27/8 27/11 27/17 27/25 28/5 29/12 29/24
32/24 34/1 36/13 36/19 40/12 51/8 52/10
52/11 52/25 53/5 54/5 54/12 59/6 59/12
60/1 60/2 60/12 62/5 62/5 62/10 62/11
63/18 64/9 64/15 64/23 66/19 69/22
71/10 71/22
**though [1]** 25/10
**thought [6]** 17/25 19/19 34/8 45/24 46/1
73/18
**thousand [1]** 62/8
**thousands [5]** 32/3 37/2 37/8 39/20
42/13
**thread [2]** 34/5 42/18
**threading [1]** 34/6
**three [3]** 46/2 46/7 59/1
**three-day [1]** 46/7
**threshold [2]** 3/21 44/19
**through [14]** 8/19 11/24 13/14 52/13
58/2 59/6 59/8 60/10 63/7 66/8 66/12
67/16 70/7 72/2
**throughout [1]** 38/2
**Tim [1]** 3/7
**time [20]** 6/6 7/12 10/19 11/17 15/19

16/8 18/7 19/1 19/13 29/3 30/18 31/23
40/9 46/16 55/18 60/20 61/13 61/21
61/24 66/11
**timely [1]** 45/9
**times [3]** 32/2 37/22 38/2
**timing [3]** 63/16 64/11 65/9
**TIMOTHY [1]** 1/15
**title [15]** 4/11 4/13 4/17 6/9 12/23 13/11
14/18 19/4 22/1 23/12 23/14 47/23 50/20
51/4 58/20
**Title 38 [14]** 4/11 4/13 4/17 6/9 12/23
13/11 14/18 19/4 22/1 23/12 23/14 50/20
51/4 58/20
**today [2]** 24/22 31/7
**together [1]** 41/12
**told [4]** 44/10 46/15 69/22 71/17
**tons [1]** 41/8
**too [6]** 16/22 28/12 29/12 31/11 36/18
47/16
**trampled [1]** 44/3
**transact [1]** 41/19
**transactions [1]** 22/4
**transcript [1]** 68/15
**transcription [1]** 74/8
**transfer [3]** 14/23 62/1 62/5
**transferred [1]** 30/3
**transfers [1]** 27/13
**transition [1]** 71/5
**treat [1]** 13/19
**treated [1]** 54/20
**tried [1]** 63/3
**tries [1]** 11/22
**triggered [1]** 35/11
**triggers [1]** 33/25
**true [7]** 25/9 26/12 26/15 43/6 52/12
52/23 69/20
**truly [1]** 57/10
**try [7]** 33/25 65/22 66/17 68/1 72/16
73/12 73/16
**trying [12]** 19/8 42/18 42/19 43/9 43/15
45/1 45/12 56/3 62/25 64/18 71/13 72/25
**turn [3]** 45/16 46/13 51/1
**turns [1]** 32/15
**two [6]** 17/17 30/8 31/3 35/1 43/17
45/19
**type [9]** 10/1 13/1 13/6 22/13 47/4 48/21
55/10 56/17 60/22
**types [5]** 7/24 60/21 60/21
**typical [2]** 26/19 30/9
**typically [1]** 37/4

**U**

**U.S [1]** 73/23
**U.S.C [1]** 19/6
**ultimately [5]** 5/2 34/6 62/6 63/8 63/24
**unclear [1]** 37/18
**undecided [5]** 27/15 27/17 27/20 29/1
39/21
**under [38]** 4/16 8/23 12/7 14/12 14/20
18/20 19/10 19/14 20/20 22/11 23/25
23/25 35/2 35/5 36/24 42/13 46/2 47/7
48/13 50/5 50/11 50/12 50/17 51/24
52/10 52/23 53/6 53/13 53/18 53/21
53/21 54/4 54/6 54/18 55/25 58/20 62/22
71/8
**understand [5]** 27/8 38/5 44/7 62/18

**understandably [1]** 37/23
**understanding [2]** 30/20 59/20
**understood [1]** 25/17
**undoubtedly [1]** 26/6
**Unfortunately [1]** 38/7
**unilateral [1]** 5/1
**unilaterally [1]** 39/18
**unique [4]** 14/17 21/19 33/18 62/7
**uniqueness [3]** 6/9 21/22 50/21
**UNITED [2]** 1/1 1/10
**unless [6]** 13/20 15/21 26/24 54/24
55/23 58/22
**unlike [1]** 30/14
**unlikely [1]** 65/18
**unnecessarily [1]** 35/8
**unreachable [1]** 29/1
**until [10]** 6/6 10/19 22/6 22/8 38/24
39/2 45/13 57/9 61/20 65/24
**up [14]** 8/1 16/12 24/7 27/19 36/8 45/12
45/13 52/8 52/14 52/19 57/14 61/10
62/12 67/14
**upon [2]** 20/6 53/17
**upsetting [1]** 18/3
**urge [1]** 73/16
**Urie [1]** 50/7
**us [5]** 62/4 64/5 64/13 68/6 73/14
**use [5]** 25/10 46/4 59/12 67/7 67/10
**used [2]** 28/6 42/14
**using [1]** 14/14
**usually [7]** 15/21 52/17 52/25 56/13
56/25 57/25 61/10

**V**

**VA [101]**
**VA's [5]** 12/14 20/15 23/4 69/1 70/11
**VA-accredited [12]** 4/20 6/7 12/19
51/22 52/6 52/25 58/16 58/17 58/19
58/21 59/5 59/8
**various [6]** 15/20 31/21 32/25 52/13
56/24 64/5
**vary [1]** 15/19
**VBMS [13]** 7/16 8/15 59/9 59/23 60/7
60/13 60/14 60/15 67/12 68/20 68/22
69/13 70/7
**verified [8]** 66/22 66/23 70/21 70/22
71/21 71/21 71/24 71/24
**versus [5]** 7/15 60/14 60/23 64/23 68/19
**very [4]** 10/13 29/6 66/10 72/18
**veteran [8]** 16/3 16/4 22/23 36/4 36/7
36/10 48/19 57/9
**veteran's [1]** 39/13
**veterans [7]** 19/18 19/18 19/19 22/23
48/18 56/7 59/10
**veterans' [2]** 23/1 23/7
**vetted [1]** 44/4
**vice [1]** 5/14
**view [5]** 34/3 38/20 39/5 40/1 40/2
**violate [1]** 35/8
**volume [1]** 7/11
**vs [1]** 1/5

**W**

**waived [1]** 34/21
**want [30]** 5/11 10/16 27/7 27/10 27/18
28/3 30/3 40/7 44/25 45/1 45/8 46/14

**W**

**want... [18]** 46/14 47/15 47/21 55/12
56/4 60/18 62/16 62/16 62/18 64/10
64/19 65/21 65/23 66/8 66/16 66/17 67/1
68/5
**wanted [2]** 18/15 27/14
**wants [3]** 31/8 32/6 72/1
**Ward [2]** 1/13 1/16
**was [50]** 3/14 4/23 9/5 9/15 9/15 9/17
11/1 11/13 11/23 12/24 15/24 17/14
19/19 20/2 21/25 22/22 22/24 23/5 24/8
24/9 26/9 27/12 28/7 31/1 32/2 39/4
40/10 40/15 41/6 43/9 43/10 43/12 43/15
44/7 45/24 46/8 55/11 61/18 61/19 61/19
63/21 64/12 67/17 67/18 68/9 71/24 72/6
72/25 73/5 73/5
**way [21]** 8/12 8/18 13/11 13/15 21/9
23/19 24/21 31/20 32/19 36/2 36/5 36/15
38/7 41/14 43/21 45/2 50/2 53/4 58/18
61/10 65/9
**ways [5]** 31/21 35/1 52/13 56/24 61/15
**we [155]**
**week [5]** 7/9 8/10 28/7 28/18 63/14
**well [30]** 3/14 6/12 6/19 9/19 17/11
17/13 17/20 23/8 24/6 25/1 25/10 28/11
31/20 33/10 34/12 34/21 37/15 39/1
44/13 47/11 49/19 53/3 53/8 61/5 65/11
67/19 67/20 70/22 72/3 72/14
**wells [5]** 2/5 2/7 74/10 74/10 74/12
**went [1]** 49/9
**were [22]** 17/12 17/15 17/17 17/18
18/15 19/24 22/24 30/2 30/22 33/4 34/19
34/24 36/23 43/11 45/15 47/15 49/23
50/23 52/7 71/20 72/7 73/17
**weren't [5]** 17/12 49/22 49/24 49/25
73/1
**WERNER [93]**
**Werner's [17]** 6/1 9/2 14/9 21/17 25/22
28/16 40/1 41/6 42/24 47/25 48/2 48/5
50/5 50/11 53/6 56/4 71/8
**West [3]** 1/4 1/22 2/4
**what [91]**
**what's [11]** 5/10 8/14 8/15 13/7 39/5
45/2 45/11 60/7 62/12 70/7 70/8
**whatever [4]** 46/3 46/3 58/3 68/3
**when [32]** 13/2 13/3 15/23 16/19 16/24
17/1 17/9 18/14 20/23 24/16 24/24 25/2
26/7 26/20 30/21 31/17 32/4 35/23 38/13
39/5 40/4 47/12 48/2 49/22 51/20 52/17
54/13 56/24 57/11 57/18 60/9 63/16
**whenever [2]** 31/8 32/6
**where [43]** 11/13 12/3 13/3 13/11 16/13
19/3 19/8 20/2 21/19 22/14 22/19 23/25
24/8 26/19 27/13 28/25 29/8 29/19 32/24
33/18 33/20 35/2 36/6 36/9 39/12 39/25
40/9 40/11 43/1 43/12 55/3 57/9 61/10
62/4 62/24 63/2 63/4 63/5 65/3 65/8
67/17 72/5 73/1
**wherein [1]** 18/18
**whether [20]** 4/14 4/18 8/15 14/15
15/24 15/25 21/21 24/13 28/23 44/11
44/12 44/19 44/25 45/22 51/6 53/11
55/25 57/15 66/16 66/17
**WHG [5]** 29/14 49/9 49/14 49/16 49/17
**which [36]** 7/11 9/20 10/23 12/12 19/11
27/15 27/17 31/7 31/9 32/11 33/23 37/2

37/11 39/6 41/14 41/17 43/22 43/16
55/16 59/10 61/4 61/20 64/7 65/4 67/11
67/12 67/23 67/24 68/9 70/25 71/1 71/23
72/8 72/12 72/12 73/5
**while [1]** 7/25
**white [1]** 38/9
**who [56]** 3/6 4/15 5/2 10/7 10/12 10/13
10/16 11/13 12/1 12/6 17/17 17/17 19/2
20/13 20/18 22/25 27/6 28/19 28/20
28/20 29/1 29/5 29/22 29/22 29/23 31/1
32/16 32/18 32/21 33/4 33/6 33/11 35/9
35/24 37/24 38/16 39/15 41/3 41/3 41/19
42/4 49/8 49/10 50/7 51/19 51/20 52/3
52/6 52/7 52/23 52/25 58/19 62/6 69/7
69/8 69/15
**whole [4]** 5/8 9/5 53/9 54/6
**whom [2]** 6/23 10/7
**whose [1]** 30/20
**why [25]** 3/16 3/25 4/2 5/8 6/21 8/22 9/9
9/11 10/23 21/25 25/15 40/24 42/18 43/3
47/6 50/19 51/10 51/12 53/9 55/11 55/17
57/3 65/4 65/21 68/2
**will [35]** 8/7 8/15 15/10 15/23 16/7
19/12 22/4 24/9 33/13 36/17 37/9 42/2
42/16 43/9 45/13 55/3 56/10 56/12 57/22
59/14 61/18 61/21 63/13 63/16 63/24
64/1 64/14 65/12 66/15 68/15 71/13
72/20 73/15 73/20 73/21
**willing [1]** 64/10
**Winderweedle [2]** 1/12 1/16
**Winter [1]** 1/18
**withdraw [1]** 13/16
**withdrawal [1]** 55/4
**withdrawing [1]** 3/19
**withdraws [1]** 13/15
**within [5]** 7/8 8/10 17/10 46/1 73/25
**without [6]** 18/10 31/8 32/7 33/19 42/8
72/13
**won't [2]** 15/15 72/11
**wonder [1]** 44/25
**Woodman [2]** 1/13 1/16
**word [1]** 25/10
**work [21]** 6/13 6/25 7/8 20/20 25/8 27/2
28/15 34/9 34/13 36/2 36/5 36/16 36/17
37/17 39/7 39/23 41/12 42/19 52/23 57/6
61/5
**worked [2]** 22/25 61/14
**working [4]** 21/21 23/1 53/6 61/22
**works [5]** 24/23 30/5 35/23 36/14 38/8
**world [1]** 52/17
**would [72]** 6/15 7/20 10/3 13/16 14/4
15/4 20/16 21/13 21/15 25/8 27/2 28/8
28/19 28/20 28/20 28/23 29/12 30/9 31/1
31/15 34/18 34/25 35/9 35/22 36/6 36/15
36/19 37/6 37/17 41/11 42/21 44/13
44/19 45/5 45/17 46/9 47/11 47/13 47/15
50/2 50/24 53/21 55/15 59/12 60/24 61/1
61/9 61/16 62/1 62/19 64/2 64/15 66/8
66/22 66/24 67/9 67/10 68/16 69/3 69/9
69/18 69/24 69/25 70/3 70/11 70/20
71/22 72/2 72/3 72/7 72/9 73/19
**wouldn't [5]** 9/12 15/7 19/25 44/24
58/13
**writing [4]** 20/7 27/7 27/23 73/13
**written [2]** 28/2 62/14
**wrong [2]** 33/3 47/16

**Y**

**yeah [1]** 70/11
**year [1]** 52/6
**years [2]** 16/5 42/5
**yes [17]** 7/3 10/9 10/11 12/18 20/12
20/24 26/7 31/3 31/11 33/9 38/1 41/5
52/5 66/21 67/9 72/14 73/4
**yet [5]** 7/23 27/21 27/23 51/15 55/14
**Yoakley [1]** 2/2
**you [143]**
**You've [1]** 46/16
**your [24]** 3/5 4/8 5/19 12/23 16/15 26/4
38/5 39/5 41/11 42/11 44/23 45/11 46/24
47/12 51/12 51/14 62/19 62/22 65/4 68/6
68/15 69/4 70/12 74/1